# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKLID-KUNZ, | § § § § | Civ. Act. No. 6:09-CV-1002-ORL-31DAB |
| Plaintiff, | § § § | JUDGE Gregory A. Presnell |
| v. | § § | |
| HALIFAX HOSP. MED. CTR, et al. | § § | |
| Defendant. | § § | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT IN INTERVENTION

In its Complaint in Intervention, the United States alleges claims against defendants Halifax Hospital Medical Center and Halifax Staffing, Inc. ("Defendants") for violations of the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"), and multiple common law causes of action by submitting or causing to be submitted claims for reimbursement in violation of the Stark statute, 42 U.S.C. § 1395nn. Defendants, having previously lost their Motion to Dismiss Relator's Second Amended Complaint (*see* Docket No. 46), now ask the Court to dismiss the United States' Complaint in Intervention based on the same factual and legal arguments.

As set forth in the Complaint in Intervention, Defendants paid millions of dollars in compensation to ten physicians with whom it had improper financial relationships under the Stark statute. These physicians in turn made referrals for "designated health services" worth

tens of millions of dollars to Halifax Hospital Medical Center ("Halifax Hospital").  Based on the structure and amount of compensation paid by Defendants, these arrangements violate the Stark statute, and render the resulting claims false under the FCA.

The Complaint in Intervention meets or exceeds every element of Federal Rule of Civil Procedure 8(a)(2) and 9(b) as articulated by the Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and this Court.  The Complaint in Intervention describes the entities that engaged in the fraudulent activities, describes the substance of the fraud, and the time, place, and duration of the fraudulent conduct.  By setting forth these allegations, the United States provides Defendants with the requisite level of notice envisioned in Rules 8(a)(2) and 9(b).

Rather than address the sufficiency of the facts as alleged by the United States, Defendants' Memorandum in Support of Motion to Dismiss Complaint in Intervention ("Defendants' Mem.") instead questions the accuracy of the factual allegations in the Complaint in Intervention and applies heightened pleading burdens that bear no relationship to the FCA's or the Stark statute's language, or the requirements of the Federal Rules of Civil Procedure.  The United States therefore requests, consistent with previous decisions by the Court in this matter and based on the arguments below, that Defendants' Motion to Dismiss be denied.

I.      LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court shall accept as true all factual allegations set forth in the complaint.  *See Grossman v.*

*Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  The court must accept the allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d. 1271, 1274 n.1 (11th Cir. 1999).

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief, thereby giving the defendant fair notice of the basis for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Supreme Court has clarified that in order to satisfy Rule 8(a)(2) at the motion to dismiss stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Aschcroft v. Iqbal*, 559 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S., at 556-57).

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud and mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Thus, allegations that a defendant violated the FCA must meet the heightened pleading standard of Rule 9(b) in order to satisfy the rule's purpose of putting defendants on notice of the "precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

II.     THE COMPLAINT IN INTERVENTION PROPERLY ALLEGES VIOLATIONS
        OF THE STARK LAW

Defendants argument that the Complaint in Intervention does not properly allege a violation of the Stark statute is based on a misunderstanding of the legal requirements of the statute and a selective reading of the allegations made in the Complaint in Intervention. Primarily, Defendants fail to recognize the breadth of the term "financial relationship" and wrongly conclude that the United States must disprove the applicability of all statutory and regulatory exceptions to the Stark statute in its complaint.  Even if Defendants' statutory construction were correct, the United States has both alleged that Defendants maintain a financial relationship with the physicians at issue and fail to meet the requirements of each Stark statute exception they claim applies.

        A.     The Stark Statute

The Stark statute prohibits a hospital from submitting claims for payment to the Medicare program based on patient referrals from physicians that have improper  "financial relationships" with the hospital.  The purpose of the Stark statute is to protect the integrity of the Medicare program by preventing a doctor's personal financial interests from influencing the medical decision-making process, thereby ensuring that medical decisions are based solely on the best interests of the patient and not the financial interests of the physician.

Pursuant to the Stark statute, the United States will not pay for items or services ordered by physicians who have improper financial relationships with a hospital.  *See United States v. Rogan*, 459 F. Supp. 2d 692, 711 (N.D. Ill. 2006), *aff'd* 517 F.3d 449 (7th Cir. 2008).

4

Violations of the Stark statute may also subject the entity billing the service to exclusion from participation in federal health care programs and other financial penalties.  *See* 42 U.S.C. §§ 1395nn(g)(3), 1320a-7a(a).

In pertinent part, the Stark statute provides:

> Except as provided in subsection (b) of this section, if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then –
>> (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and
>> (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C. § 1395nn (a)(1).  "Designated health services" ("DHS") are defined in section (h) of the statute and include, among other things, inpatient and outpatient hospital services. *See* 42 U.S.C. § 1395nn(h)(6).

In addition to prohibiting hospitals from submitting claims for DHS under these circumstances, the Stark statute also prohibits payment by the Medicare program of such claims.  "No payment may be made under this subchapter for a designated health service which is provided in violation of subsection (a)(1) of this section."   42 U.S.C. § 1395nn(g)(1).

The Stark statute defines a prohibited financial relationship to include "compensation arrangements" in which any "remuneration" is paid "directly or indirectly, in cash or in

kind," by a hospital to a referring physician.  *See* 42 U.S.C. §§ 1395nn(a)(2)(B), (h)(1); 42

C.F.R. § 411.354(c).  A "referral" is defined as "the request or establishment of a plan of care

by a physician which includes the provision of designated health services."  42 U.S.C.

§ 1395nn(h)(5)(A).  The accompanying regulations interpreting the statute also broadly

define "referral" as, among other things, "a request by a physician that includes the provision

of any designated health service for which payment may be made under Medicare, the

establishment of a plan of care by a physician that includes the provision of such a

designated health service, or the certifying or recertifying of the need for such a designated

health service . . . ."  42 C.F.R § 411.351.  A referring physician is defined in the same

regulation as "a physician who makes a referral as defined in this section or who directs

another person or entity to make a referral or who controls referrals made to another person

or entity."  *Id.*

      B.      <u>The United States Properly Alleges Violation of the Stark Statute</u>

      Under the Stark statute, the United States has the burden of establishing a financial

relationship between the physician making referrals and the entity performing the DHS.  *See*

*United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 95 (3d. Cir. 2009).

Defendants' assertion that the United States has failed to meet this burden (*see* Defendants'

Mem., at 13, 19) places an unnecessary pleading burden on the United States and ignores

clear factual allegations in the Complaint in Intervention.

      Defendants wrongly contend that the United States must affirmatively state whether

the financial relationship at issue is a direct financial arrangement or an indirect financial

arrangement.  *See* Defendants' Mem., at 10-11.  The regulations implementing the Stark

statute define financial relationships as ownership interests, investment interests,

compensation arrangements, and landlord-tenants relationships.  *See* 42 C.F.R.

§§ 411.354(b)(1), (b)(1)(2), (c)(1), and (c)(2).  The regulations further clarify that these

financial interests can be direct or indirect in nature.  *See, e.g.,* 42 C.F.R. §§ 411.354(b), (c).

Most relevant to the allegations in the Complaint in Intervention, a direct compensation

arrangement exists "if remuneration passes between the referring physician (or member of

his or her immediate family) and the entity furnishing DHS without any intervening persons

or entities."  42 C.F.R. § 411.354(c)(1)(i).  An indirect compensation arrangement exists if:

1) there is an unbroken chain of financial relationships between the entity furnishing DHS

and the referring physician; 2) the referring physician receives compensation from the chain

of financial relationships that varies with, or takes into consideration, the volume or value of

referrals or other business generated for the entity furnishing DHS by the referring physician;

and 3) the entity furnishing DHS had actual knowledge, or acts in reckless disregard or

deliberate ignorance of, the fact that the compensation varies with, or takes into

consideration, the volume or value of referrals or other business generated for the entity

furnishing DHS by the referring physician.  *See* 42 C.F.R. § 411.354(c)(2).

　　　　For purposes of establishing a violation of the Stark Statute, neither the statute nor the

regulations require the United States to identify the particular type of financial arrangement,

let alone characterize the relationship as indirect or direct in nature.  Nor do Defendants offer

any legal support for the proposition that under the Stark statute the United States must plead

the particular type of financial arrangement between a physician and the entity furnishing

DHS.  The United States therefore need only allege that a prohibited financial relationship

exists and the facts to support that allegation.

Moreover, the Complaint in Intervention alleges facts sufficient to support the

conclusion that either a direct or indirect prohibited compensation arrangement exists

between Defendants and the ten physicians named in the Complaint in Intervention.  With

respect to neurosurgeons Dr. Rohit Khanna, Dr. William Kuhn, and Dr. Federico Vinas; and

oncologists Dr. Boon Chew, Dr. Ruby Anne Deveras, Dr. Walter Durkin, Dr. Greg Favis,

Dr. Kelly Molpus, Dr. Abdul Sorathia, and Dr. Richard Weiss, the United States alleges that:

1) each physician is employed by defendant Halifax Staffing (*see* Complaint in Intervention,

at ¶¶ 61, 89); 2) each physician has an employment contract with Halifax Staffing and

receives compensation from Halifax Staffing pursuant to their respective employment

agreements (*see* Complaint in Intervention, at ¶¶ 62-74, 90-102); 3) "Halifax Staffing

provides staffing services to defendant Halifax Hospital in exchange for payments from

Halifax Hospital to cover the cost of employee salaries and benefits and administrative

costs." (Complaint in Intervention, at ¶ 11); 4) the compensation paid to each of these

physicians takes into account the volume or value of referral services or other business

generated because for DHS performed at Halifax Hospital by each one of the ten physicians

named in the Complaint in Intervention, there is a corresponding facility fee that is paid to

the hospital (*see* Complaint in Intervention, at ¶¶ 80-87, 106-108; *see also* 66 Fed. Reg. 941

(Jan. 4, 2001) ("[I]n the context of inpatient and outpatient hospital services, there would still

be a referral of any hospital service, technical component or facility fee billed by the hospital in connection with the personally performed service.").); and 5) Halifax Hospital had actual knowledge, or acted with reckless disregard or deliberate ignorance of the fact that the referring physicians received compensation that takes into account the volume or value of referral services or other business generated.  *See* Complaint in Intervention, at ¶¶ 82-87, 108-111.  Thus, the United States has alleged a financial relationship involving each of the physicians that at least meets the definition of an indirect relationship, if not a direct relationship.[1]

C.    <u>Defendants, Not the United States, Must Prove They Meet An Exception to the Stark Statute</u>

Despite citing case law directly to the contrary, Defendants argue that the Complaint in Intervention should be dismissed because it does not allege facts that preclude them from claiming the protection of the Stark exception for *bona fide* employment relationships or indirect compensation arrangements.  *See* Defendants' Mem., at 13-26.  Given the lack of legal support for this position, Defendants' argument should be rejected.

As Defendants note, "Once the plaintiff or the government has established proof of each element of a violation under the [Stark] Act, the burden shifts to the defendant to establish that the conduct was protected by an exception."  Defendants' Mot., at 11 (*citing*

---

[1]  Defendants wrongly classify the ten physicians named in the Complaint in Intervention as employees of Halifax Hospital.  *See* Defendants' Mem., at 10 n.3.  The Complaint in Intervention specifically alleges that three neurosurgeons and seven oncologists at issue are employees of Halifax <u>Staffing</u>, not Halifax <u>Hospital</u>.  *See* Complaint in Intervention, at ¶¶ 61-62, 89-90.

*United States ex rel. Kosenke*, 554 F.3d at 95; *see also Rogan*, 459 F. Supp. 2d at 716.  As

discussed above, the United States has satisfied its obligation to allege a violation of the

Stark statute.  It is now Defendants' obligation to allege, by way of its answer, any applicable

affirmative defenses, including any applicable exceptions to the Stark statute.[2]

If the Court does conclude the United States must allege the inapplicability of each

exception to the Stark statute, the United States has met this burden.  With respect to all the

named neurosurgeons and oncologists, the United States affirmatively alleges that "none of

the statutory or regulatory exceptions to the Stark statute apply."  Complaint in Intervention,

at ¶¶ 88, 112.

Moreover, with respect to the exceptions that Defendants suggest they will, at a

future time, plead are applicable to them, the United States also has set forth particularized

facts to demonstrate why each exception does not apply to Defendants.  For example,

Defendants do not meet all of the requirements of the *bona fide* employment exception, 42

C.F.R. § 411.357(c), because the ten named physicians have a *bona fide* employment

relationship with Halifax Staffing, not Halifax Hospital (*see* Complaint in Intervention, at

---

[2]  Given that Defendants have not yet filed an answer, it would seem counterintuitive to require the United States to allege Defendants fail to meet all the elements of one or more exceptions to the Stark statute that Defendants' may (or may not) ultimately assert. The Stark statute and regulations contain approximately 35 exceptions that remove financial relationships that fit certain enumerated criteria from the statutory prohibition on making referrals.  If Defendants' argument is correct, the United States would, as an initial matter, have to plead that a defendant fails to meet each element of each exception to the Stark statute in order to satisfy the requirements of Rule 12(b)(6).  Given the requirement of Rule 8 for a short and plain statements of the fact, Defendants' argument to the contrary would turn the pleading standard on its head.

¶¶ 61-627, 89-90), the remuneration paid to the physicians at issue is not consistent with fair market value (*see* Complaint in Intervention, at ¶¶ 64-67, 70-72, 92-95, 109), directly or indirectly takes into account the volume or value of referrals or other business generated (*see* Complaint in Intervention, at ¶¶ 82-84, 105, 110),[3] and is not commercially reasonable absent the referrals made to Defendants.  *See* Complaint in Intervention, at ¶¶ 78-80, 96, 101-02, 107-08.

Similarly, the Complaint in Intervention contains numerous allegations to refute Defendants assertion that the exception for indirect compensation arrangements applies.  The United States has alleged the compensation received by the physicians is not fair market value (*see* Complaint in Intervention, at ¶¶ 64-67, 70-72, 92-95, 109), is determined in a manner that takes into consideration the volume or value of referrals or other business generated (*see* Complaint in Intervention, at ¶¶ 82-84, 105, 110), is not for identifiable services (*see* Complaint in Intervention, at ¶¶ 67-68, 72, 97), and is not commercially reasonable absent the referrals made to Defendants.  *See* Complaint in Intervention, at ¶¶ 78-80, 96, 101-02, 107-08.

---

[3]  Defendants wrongly characterize as a "legal impossibility" the allegations that the physicians named in the Complaint in Intervention who receive compensation based on a percentage of collections, receive compensation that varies with or takes into consideration the volume or value of referrals or other business generated.  *See* Defendants' Mem., at 14.  Given that the majority of the services performed by the named physicians generates a corresponding facility fee for Halifax Hospital, the facility fee constitutes a DHS referral under the Stark statute.  *See* 42 C.F.R. § 411.351.  Thus, compensation paid by Defendants varies with or otherwise reflects the volume or value of inpatient or outpatient facility fees generated by the physicians.

D.     <u>The Stark Statute Prohibits Physician Compensation Based on Services Performed by Another and Precludes Unit-Based Compensation That Fails to Meet Specified Criteria</u>

Defendants' argument that the three neurosurgeons named in the Complaint in Intervention may receive compensation based on services performed by other individuals (*see* Defendants' Mem., at 15) is simply wrong.  The exceptions to the Stark statute that allow for bonuses based on personally performed services do not apply to situations where a physician receives compensation based on services performed by another.  *See, e.g.,* 42 C.F.R. § 411.357(c)(4)(stating that a productivity bonus based on personally performed services will not be deemed to take into account the volume or value of referrals).  In arguing to the contrary, Defendants are confusing the issue of the type of referrals to which the Stark statute applies, with the source of the compensation paid to the doctors for these referrals.  While the Stark statute only applies to referrals of DHS, it prohibits doctors from receiving excessive compensation for these referrals, regardless of the source of that compensation (and particularly if the compensation is divorced from the physician's own labor).

Defendants' reliance on the exclusion of unit-based compensation from compensation that varies or takes into account the volume or value of referrals (*see* Defendants' Mem., at 15-16) is similarly erroneous.  Defendants fail to note that 42 C.F.R. § 411.354(d)(2) only excludes unit-based compensation if the compensation is fair market value for services provided and does not vary in any manner that takes into account referrals of DHS.  *See id.* The United States specifically alleges that the compensation paid by Defendants to the ten physicians named in the Complaint in Intervention fail both of these requirements.  *See* Complaint in Intervention, at ¶¶ 64-67, 70-72, 82-84, 92-95, 105, 109-110.  Taking the

United States' allegations as true, the incentive compensation paid by Defendants therefore may not take into account volume or value of referrals.

E.     The Stark Statute's Prohibitions on Referrals Extend to Medicaid

Under the Medicaid statute, the federal government provides money directly to state Medicaid programs in order to assist in paying for the cost of medical care for program beneficiaries such as the poor and the disabled. *See* 42 U.S.C. § 1396b.  The federal government does not pay Medicaid providers directly, but provides each state with a monetary advance on a quarterly basis to pay a portion of the program's quarterly costs. Individual states then use these federal funds, along with their own funds, to reimburse providers directly for providing such care. *See generally* 42 U.S.C. § 1395b.

The Medicaid statute specifically prohibits any state from using federal funds to pay for Medicaid services furnished in violation of the Stark statute. *See* 42 U.S.C. § 1396(s). Thus, federal program funds may not be used to pay a provider for DHS performed in violation of the Stark statute.  Defendants' argument that the Stark law does not extend to Medicaid providers (*see* Defendants' Mem., at 8) because providers submit requests for payment to state Medicaid programs rather than directly to the federal government misses the point - the statute specifically precludes the federal government from issuing payment for claims made in violation of the Stark statute.

Defendants' argument completely ignores that, under the FCA, a defendant may be liable not only for submitting a false claim, but also for causing another to submit a false claim. *See* 31 U.S.C. § 3729(a)(1).  Thus, Halifax Hospital, by causing the state of Florida to reimburse claims made in violation of the Stark statute, caused the United States to pay funds

to the state of Florida for services rendered in violation of that statute.  Thus, even if the

Stark statute prohibition on referrals to entities with whom a physician has a prohibited

financial relationship does not apply directly to Medicaid providers, it nevertheless may

serve as the basis for a violation of the FCA.

III.    THE COMPLAINT IN INTERVENTION ALLEGES THAT DEFENDANTS
        ACTED WITH THE REQUISITE KNOWLEDGE UNDER THE FCA TO SATISFY
        THE PLEADING REQUIREMENTS OF RULE 12(b)(6)

    With respect to the United States' three FCA claims (Counts I through III),

Defendants' additionally seek dismissal of these claims based on the argument that the

Complaint in Intervention fails to allege that Defendants acted "knowingly."  *See*

Defendants' Mem., at 29.  Knowledge under the FCA is defined as: 1) actual knowledge of

the information; 2) acting in deliberate ignorance of the truth or falsity of the information; or

3) acting in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C.

3729(b)(1).  Under the FCA, no proof of specific intent is required.  *See id.*, 3729(b)(1)(B).

In defining knowledge for FCA purposes, "Congress adopted 'the concept that individuals

and contractors receiving public funds have some duty to make a limited inquiry so as to be

reasonably certain they are entitled to the money they seek.'"  *United States v. Kaman*

*Precision Products, Inc.*, No. 6:09-cv-1911-Orl-31GJK, at *4, 2011 WL 3841569 (M.D. Fla.

Aug. 30, 2011 (*quoting* S. Rep. No. 99-345, at 20 (1986); *see also Heckler v. Community*

*Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 63-64 (1984) (finding that participant in

the Medicare program was required to act with "scrupulous regard for the requirements of

law").

    The Complaint in Intervention alleges multiple facts that support the allegation that

Defendants knew or should have known they were submitting or causing to be submitted false claims for reimbursement.  For example, the United States alleges that the plain language of the employment agreements with the ten named physicians violated the Stark Statute and established knowledge under the FCA.  *See* Complaint in Intervention, at ¶¶ 68, 72, 96-97, 101).  In addition, the fact that Defendants tracked referral business generated by these physicians establishes both that Defendants knew they were taking into consideration the volume or value or referrals or other business generated in setting compensation and establishes Defendants' motive for entering into the prohibited relationships.  *See* Complaint in Intervention, at ¶¶ 82-84, 108.  These facts support the United States' contention that Defendants knowingly violated the FCA.  *See* Complaint in Intervention, at ¶¶ 114-117, 119.[4]

IV.   THE UNITED STATES HAS PLED A VIOLATION OF THE FALSE CLAIMS ACT WITH SUFFICIENT PARTICULARITY TO MEET FEDERAL RULE OF CIVIL PROCEDURE 9(b)

Defendants' Motion to Dismiss overreaches by failing to acknowledge that Federal Rule of Civil procedure 9(b) does not apply to all of the allegations in the Complaint in Intervention, but only those alleging fraud.  *See* Fed. R. Civ. P. 9(b).  Thus, Rule 9(b) does not apply to alleged violations of the Stark statute, which is a strict liability statute, or the common law, but only applies to alleged violations of the FCA.  *See United States ex rel. Clausen*, 290 F.3d. at 1309.

---

[4]  Defendants' argument that the Complaint in Intervention must allege that they knowingly violated the Stark statute conflates the statutory language of the FCA and the Stark statute. The Stark law is a strict liability statute that does not require a showing of knowledge.  *See United States ex rel. Villafane v. Solinger*, 543 F. Supp. 2d 678, 686 (W.D. Ky. 2008).

With respect to the United States' FCA allegations, case law in this Circuit interprets Rule 9(b) to require that "some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the government." *United States ex rel. Clausen*, 290 F.3d at 1311 (emphasis in original).  *See also United States ex rel. Grubbs v. Kanneganti et al.*, 565 F.3d 180, 190 (5th Cir. 2009) ("the 'time, place, contents and identity' standard is not a straightjacket for Rule 9(b)").  This Circuit has ruled that in cases involving a corporate insider with particularized information regarding the alleged fraudulent schemes, Rule 9(b) can be satisfied without identifying any individual false claims.  *See United States ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005), *cert. denied sub nom.*, *R & F Properties of Lake County, Inc. v. Walker*, 549 U.S. 1027 (2006) (affirming denial of motion to dismiss arguing failure to plead fraud with particularity in FCA case where relator set forth basis for allegation that defendants submitted false claims).

Similarly, this Court has found a defendant can satisfy the heightened pleading standard set forth in Rule 9(b) without providing every conceivable detail regarding the allegedly fraudulent acts.  In *United States ex rel. Longest v. Dyncorp*, No. 6:03-cv-816 Orl. 31JGG, 2006 WL 47791 (M.D. Fla. Jan. 9, 2006), the relator, a former employee of the defendant, alleged that the defendant defrauded the United States by double billing travel expenses, inflating payroll costs, and seeking reimbursement for various unallowable costs. *See id.*, at \*3.  In applying the *Clausen* standard, this Court determined that a plaintiff need not plead with particularity all of the information identified in *Clausen*, but stated that only "'*some* of this information for at least *some* of the claims must be pleaded in order to satisfy

16

Rule 9(b).'" *Id.*, at *4 (quoting *United States ex rel. Clausen*, 290 F.3d at 1312 n.21 (emphasis in original).  This Court ruled that the relator satisfied the Rule 9(b) standard by explaining how every one of the fraud schemes operated and providing "far more than mere conclusory allegations of fraudulent schemes or false claims for payment." *Id.*, at *4.  "Rule 9(b) exists to prevent spurious charges and provide notice to defendants of their alleged misconduct, not to require plaintiffs to meet a summary judgment standard before proceeding to discovery." *Id.*

Moreover, other courts have found that plaintiffs alleging FCA violations predicated on a violation of the Stark law do not have to specifically identify the claims at issue. *See, e.g., United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998); *United States ex rel. Villafane v. Solinger*, 457 F. Supp. 2d 743, 754-55 (W.D. Ky. 2006); *United States ex rel. Singh v. Bradford Reg. Med. Ctr, et al.*, No. 04-186 ERIE, 2006 WL 2642518 (Sept. 13, 2006 W.D. Penn.), at *7-8.  That is because in such cases the falsity of the claims at issue does not depend on any information on the face of the claim, but rather arises from the existence of the prohibited financial arrangement and resulting Stark statute violation. *See United States ex rel. Singh*, 2006 WL 2642518 at *7. Thus, in *Solinger*, for example, the court determined that although identifying specific improper referrals and the dates of the referrals were essential elements of the FCA claims, Rule 9(b) should not be interpreted to require such detail at the motion to dismiss stage because it is unnecessary to alert defendants to the nature of the fraud. *See Solinger*, 457 F. Supp. 2d, at 755.  The relator met the burden established by Rule 9(b) by identifying who

17

committed the fraud, describing how the fraud was committed, describing how the claims were fraudulent, describing the time period at issue, and the years physicians made improper referrals. *See id.*

Here, the United States' Complaint in Intervention has satisfied these pleading requirements with respect to its FCA claims. Specifically, the United States alleges: 1) beginning in February 2000 and continuing until at least December 2010, Defendants entered into contracts that violated the Stark law and submitted and/or caused to be submitted false or fraudulent claims for reimbursement by the United States for inpatient and outpatient hospital services performed in violation of the Stark statute (*see* Complaint in Intervention, at ¶ 60); 2) the identifies of the ten physicians who entered into agreements that violate the Stark Statute (*see* Complaint in Intervention, at ¶¶ 61, 89); 3) the certifications made from 2000 to 2010 to the United States regarding compliance with federal law were false (*see* Complaint in Intervention, at ¶¶ 30-42); 4) the total value of the false claims at issue from 2004 through 2010 (*see* Complaint in Intervention, at ¶¶ 81, 107); and 5) how each claim or certification was false. *See* Complaint in Intervention, at ¶¶ 114-119. Requiring a plaintiff to satisfy every element of Rule 9(b) for every single false claim alleged in the complaint "would undermine the False Claims Act's goal of encouraging people with knowledge of undisclosed fraud to come forward," *see Dyncorp*, 2006 WL 47791, at *4, particularly where, as here, each claim is false for the very same reason – because of the prohibited financial relationships that are clearly identified in the Government's Complaint in Intervention.

V.      HALIFAX HOSPITAL IS NOT ENTITLED TO SOVEREIGN IMMUNITY
        UNDER THE ELEVENTH AMENDMENT

Defendants previously argued in their Motion to Dismiss Relator's Amended

Complaint that Halifax Hospital is immune from suit under the Eleventh Amendment to the

United States Constitution, and despite this Court's ruling to the contrary, Defendants'

motion again raises this argument.  *See* Defendants' Mem., at 32-35.  Although it is not an

agency or department of the state of Florida, Defendants nevertheless contend that Halifax

Hospital acts as an arm of the state in providing medical care to private individuals in the

Daytona Beach area.  For the same reasons the Court set forth in its June 6, 2011 Order

denying Defendants Motion to Dismiss Relator's Second Amended Complaint (*see* Docket

No. 46), the United States submits Defendants are not entitled to sovereign immunity from

suit.

The Eleventh Circuit applies a four factor test to determine whether an entity is an

arm of the state for Eleventh Amendment purposes.  The individual factors are: 1) how state

law defines the entity; 2) the degree of control the state maintains over the entity; 3) the

entity's source of funds; and 4) whether the entity or the state would be responsible for

judgments against the entity.  *See Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003).

None of these factors weigh in favor of granting Defendants immunity from suit under the

Eleventh Amendment.

1.      Defendants are Akin to a Municipality Under State Law

In arguing they are instrumentalities of the State of Florida, Defendants fail to

19

acknowledge that both state and federal courts have determined that a Florida special taxing district is akin to a local governmental entity, similar to school districts, counties, and municipalities.  *See Eldred v. North Broward Hospital District*, 498 So.2d 911, 913-14 (Fla. 1986) (finding special taxing district to be a local government entity); *Bolt v. Halifax Hosp. Med. Ctr.*, 980 F.2d 1381, 1384 (11th Cir. 1993) (finding Defendants the functional equivalent of a municipality); *Magula v. Broward General Med. Ctr.*, 742 F. Supp. 645, 649 (S.D. Fla. 1990) (hospital district deemed a municipality not entitled to Eleventh Amendment immunity under federal law).  Although this status may provide Halifax Hospital with limited immunity under Florida state law, *see* Fl. Sta. 768.28(2), it does not confer Eleventh Amendment immunity under federal law.   *See Magula*, 742 F. Supp. at 649.

      2.       The State of Florida Does Not Exercise Significant Control Over Defendants

Contrary to Defendants' assertion that the State of Florida exercises significant control over its operations through a governor appointed Board of Commissioners, Halifax Hospital's enabling statute vests it with complete authority to fund its operations through *ad valorem* taxes or bonds, and it maintains sole discretion regarding the employment of individuals to carry out its operations.  *See* 1979 Fla. Laws 577 §§ 3, 8(1).  In addition, Halifax Hospital is free to purchase or sell land or personal property without the approval of the state.  *See id.*, at § 3.  Therefore, the level of independent control Halifax Hospital exercises over the functions at issue here – physician contracting and patient admission decisions– weigh against granting it immunity pursuant to the Eleventh Amendment.

3.      The State of Florida Does Not Control Defendants' Fiscal Activities

Halifax Hospital's argument that its fiscal life is controlled by the State of Florida is similarly unconvincing.  *See* Defendants' Mot., at 34.  The Hospital maintains financial independence from the state of Florida by virtue of its independent sources of income.  Like private hospitals, Halifax Hospital charges patients for the health care services it provides. In addition, because it is responsible for providing indigent care to patients who are unable to pay, Halifax Hospital may levy *ad valorem* taxes on district residents or issue bonds to pay indigent care costs.  *See* 1979 Fla. Laws 577, § 8(1).  Halifax Hospital does not receive funds from state general revenues.  These independent sources of income provide sufficient fiscal independence to operate without funds from the state treasury.  *See Magula*, 742 F. Supp. at 649.  Although Halifax Hospital is required to make annual reports to various entities within the Florida Department of Community Affairs, these requirements are ministerial in nature and cannot be characterized as establishing state control over the Hospital's fiscal life.

4.      Defendants are Solely Responsible for Judgments Against Them

Defendants concede that under Florida law Halifax Hospital is solely responsible for paying the cost of any judgment rendered against it.  *See* Defendants' Memo., at 34-35. Since the state is not obligated to pay the cost of a judgment against Halifax Hospital or Halifax Staffing, the sovereignty of the state is not implicated and extending immunity under the Eleventh Amendment is not necessary.  If the state is not responsible for a judgment against an entity, then the rationale for extending Eleventh Amendment immunity is not present given that the main purpose of the Eleventh Amendment is to protect states from

monetary judgments against them.  *See Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994).

Defendants' contention that the state and its taxpayers would ultimately be obligated to pay the cost of a judgment in this matter is unsupported by fact or law.  *See* Defendants' Memo., at 35.  Defendants offer no explanation as to how the state or its taxpayers would be obligated to pay for a judgment against Halifax Hospital, which receives no operational funds from the state of Florida.  Sovereign immunity under the Eleventh Amendment is meant to protect the state treasury, not individual taxpayers, who possess no characteristics of a sovereign state.  The Court's prior decision rejecting Defendants' sovereign immunity argument was therefore correct and should be reaffirmed.

## VI.   THE FALSE CLAIMS ACT'S STATUTE OF LIMITATIONS PERMITS THE UNITED STATES TO RECOVER DAMAGES UP TO TEN YEARS PRIOR TO THE FILING DATE OF A COMPLAINT

While Defendants have correctly noted that 31 U.S.C. § 3731(b) addresses the date by which an FCA claim must be brought, they have failed to recognize that there are two applicable provisions within that section.  Defendants rely on section 3731(b)(1) of the FCA for the proposition that claims must be brought within six years of "the date on which the violation of section 3729 is committed," but fail to note that section 3731(b)(2) provides for an alternative calculation of the statute of limitations.  Under section 3731(b)(2), an FCA cause of action may not be brought

> more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the

date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b)(2).  Given that Relator's complaint was filed on June 16, 2009, the

United States may allege FCA violations and recover FCA damages in this matter as far back

as June 16, 1999 provided that it did not know, or have reason to know, of the FCA

violations committed by Defendants prior to Relator filing her complaint.

VII.     THE UNITED STATES PROPERLY PLED ITS COMMON LAW CLAIMS

The United States' common law claim for unjust enrichment is governed by federal

common law.  *See, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979);

*United States v. Lahey Clinic Hospital*, 399 F.3d 1, 15-18 (1st Cir. 2005); *United States v.*

*Vernon Home Health*, 21 F.3d 693, 695 (5th Cir. 1994) ("[F]ederal law governs cases

involving the rights of the United States arising under a nationwide federal program . . . ").

Under federal common law, the United States must show: 1) it would be unreasonable for the

Government to pay under the circumstances; and 2) defendants reasonably should not have

expected payment under the circumstances; or 3) society's reasonable expectation of person

and property would be defeated by payment.  *See United States ex rel. Roberts v. Aging Care*

*Home Health, Inc. et al.*, 474 F. Supp.2d 810, 820 (W.D. La. 2007) (internal citations

omitted).

The United States' Complaint in Intervention sets forth each of these elements and

therefore states a claim for relief under the theory of unjust enrichment.  The Complaint in

Intervention provides a detailed analysis of applicable Medicare and Medicaid rules and

regulations and the conditions under which the United States will make payment.  *See*

Complaint in Intervention, at ¶¶ 30-33, 40, 42, 45-46, 51, and 59.  In addition, the

Defendants' alleged failure to comply with these rules and regulations would make it

unreasonable for Defendants to expect payment from the United States.  *See id.*, at 61-62, 68,

70, 72-74, 77-88, 89-90, 93-102, 105-112.  Because Defendants were unjustly enriched at the

expense of the United States, their motion to dismiss this cause of action should be denied.

Furthermore, Defendants do not argue that the United States failed to adequately

plead the elements of the common law claims of payment by mistake of fact, disgorgement,

creation of a constructive trust and an accounting of revenues.  Their sole basis for requesting

dismissal of these claims rests on the argument that both the FCA and Stark statute claims

are not well-founded.  See Defendants' Mem., at 31-32.  The United States' common law

claims are predicated solely on Defendants' violation of the Stark statute, and do not require

a showing that Defendants violated the FCA.  Indeed, the United States may recover on these

claims even in the absence of any FCA violation.  Therefore, for the reasons set forth in the

preceding sections, the United States has properly alleged violations of the Stark statute by

alleging that Defendants had improper financial relationships with various physicians who

referred patients to Halifax Hospital for designated health services.  That is sufficient to

sustain the Government's common law claims.

VIII.   ORAL ARGUMENT REGARDING DEFENDANTS' MOTION TO DISMISS
        COMPLAINT IN INTERVENTION IS UNNECESSARY

While the United States recognizes that the factual and legal issues raised in its

Complaint in Intervention are complex, we do not believe oral argument is necessary to the

adjudication of Defendants' Motion to Dismiss.  Most of the issues raised in Defendants'

Motion were the subject of extensive briefing by Defendants and Relator in the context of

Defendants' Motion to Dismiss the Relator's Second Amended Complaint, which the Court

denied on June 6, 2011.  *See* Docket No. 46.  However, should the Court decide oral

argument is necessary, the United States will be prepared to respond to any issues the Court

would like to address.

IX.    CONCLUSION

The United States has set forth specific allegations establishing that Defendants

knowingly entered into improper financial relationships with ten physicians in violation of

the Stark statute and violated both the False Claims Act and the common law by submitting

or causing to be submitted Medicare and Medicaid claims for payment that resulted from

their violation of the Stark statute.  Defendants' arguments that the United States failed to

meet its pleading burden are therefore incorrect, and Defendants' Motion to Dismiss the

United States' Complaint in Intervention should be denied in its entirety.

Respectfully submitted,

TONY WEST
ASSISTANT ATTORNEY GENERAL

ROBERT E. O'NEILL
UNITED STATES ATTORNEY
RALPH E. HOPKINS
Assistant United States Attorney
501 W. Church Street, Suite 800
Orlando, FL 32805
(407) 648-7562
Fla. Bar # 0972436
Email: ralph.hopkins@usdoj.gov

Dated:  December 16, 2011          By:      /s/ Adam J. Schwartz
                                        JOYCE R. BRANDA
                                        MICHAEL D. GRANSTON
                                        ADAM J. SCHWARTZ
                                        Attorneys, Civil Division
                                        United States Department of Justice
                                        P.O. Box 261, Ben Franklin Station
                                        Washington, D.C. 20044
                                        (202) 514-6831
                                        Email: adam.schwartz2@usdoj.gov

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2011, I caused a true and accurate copy of the foregoing to be filed using the Court's CM/ECF system, which will send an electronic notice of filing to all counsel of record.


_____/s/ Adam J. Schwartz_____
ADAM J. SCHWARTZZ
Trial Attorney