**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex.rel.* ELIN BAKLID-KUNZ <br><br> Relator <br><br> vs. <br><br> HALIFAX HOSPITAL MEDICAL CENTER d/b/a HALIFAX HEALTH a/k/a HALIFAX COMMUNITY HEALTH SYSTEM a/k/a HALIFAX MEDICAL CENTER and HALIFAX STAFFING, INC. <br><br> Defendants | CASE NO.: 6-09-CV-1002 <br><br> [FALSE CLAIMS ACT – QUI TAM] |

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN INTERVENTION**

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), Defendants Halifax Hospital Medical Center d/b/a Halifax Health a/k/a Halifax Community Health System a/k/a Halifax Medical Center and Halifax Staffing, Inc. (collectively "Halifax") by its undersigned counsel, respectfully submit this Reply to the Department of Justice's ("DOJ") Opposition to Defendants' Motion to Dismiss Complaint in Intervention ("DOJ Opp.").[1]

---

[1] Halifax is a statutory governmental subdivision of the State of Florida, located in Daytona Beach, Florida. More specifically, Halifax is organized under the laws of the State of Florida as a special taxing district created pursuant to an act of the Florida Legislature. Halifax Staffing is the instrumentality by which Halifax employs the individuals who work at Halifax facilities. Pursuant to an agreement between Halifax Staffing and Halifax (commencing March 6, 1994), Halifax Staffing assumed the employment of the individuals who had up to that time been employed by the Halifax district, and became the entity used by Halifax to staff its facilities. Halifax pays its employees through a Halifax Staffing "sweep" account.

I. **THE DOJ'S COMPLAINT IS DEFICIENT UNDER RULES 9(B) AND 12(B)(6) IN FAILING TO ASSERT FACTS FROM WHICH THE ELEMENTS OF A STARK LAW VIOLATION COULD BE PLAUSIBLY ESTABLISHED**

The DOJ fails to provide evidence sufficient for its claims that Halifax knowingly provided compensation to the various physicians identified in the Complaint (the "Physicians") that took into account the volume or value of referrals in violation of the Stark Law. First, while the DOJ refers to the "plain language" of the employment agreements with the Physicians as evidence of a Stark violation, the DOJ fails to cite to any provisions in any of the agreements that demonstrate the purported payment of compensation based on the volume or value of referrals. *See* DOJ Opp. at 14-15; and Compl. ¶¶ 68, 72, 82-84, 96-97, 101, and 108. Second, the DOJ merely references information regarding compensation paid to the neurosurgeons in 2007 and 2008 and medical oncologists in 2009 without providing any support for allegations in the full 2000 through 2010 timeframe contemplated in the Complaint. *See* Compl. ¶¶ 76 and 104. Third, the DOJ refers in isolation to "evidence" that Halifax tracked referral business generated by Physicians without articulating *how* its sparse allegations could plausibly establish that Halifax paid compensation to the Physicians that took into account the volume or value of referrals for each of the years implicated in the Complaint. *See* DOJ Opp. at 14-15; and Compl. ¶¶ 68, 72, 82-84, 96-97, 101, and 108.

With regard to the alleged "tracking" of referrals by Halifax, the DOJ does not allege how vaguely described events in two isolated emails, originating in 2009 and 2010, constitute tracking of referrals or any connection to physician compensation paid by Halifax at any time, let alone for the 2000 through 2010 time period. *See United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, No. 99-C-8287, 2005 U.S. Dist. LEXIS 17724,

at *8 (N.D. Ill. Aug. 19, 2005) (dismissing the relator's claims under Stark and the Anti-Kickback Statute because allegation that physicians were paid for illegal referrals failed to "distinguish in sufficient detail between bonuses paid for productivity which are likely non-violative under § 1320a-7b(3), and those paid in return for illegal referrals").[2] The Complaint should be dismissed for failing to meet the pleading requirements under either Rule 9(b) or Rule 12(b)(6).

## II. THE DOJ'S FAILURE TO ALLEGE FACTS SUPPORTING THE EXISTENCE OF A STARK FINANCIAL RELATIONSHIP RENDERS THE COMPLAINT INSUFFICIENT UNDER RULES 9(B) AND 12(B)(6)

To establish the existence of a Stark financial relationship, the DOJ (1) argues in the alternative that the relationship must be either direct or indirect; (2) concedes there is no direct relationship by failing to allege any relevant facts in support; and (3) fails to establish an indirect relationship because the "corresponding facility fee" cannot alone establish that compensation paid to the Physicians took into consideration the volume or value or referrals. The plain language of the Stark Law regulations unequivocally states that the Stark prohibitions apply only when a physician has either "a *direct or indirect* financial relationship with an entity" furnishing designated health services ("DHS"). 42 CFR § 411.353 (emphasis added). In the absence of a direct or indirect financial relationship, the Stark Law does not apply. The regulations also clearly state that the term "financial relationship" means a "direct or indirect ownership or investment interest" or a "direct or indirect compensation arrangement." 42 CFR § 411.354(a). Generic references to the term

---

[2] *See also United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1050-51 (N.D. Ill. 2002) (dismissing relator's claim that physician compensation was based on referrals where the physician contracts specifically dictated that physicians were compensated based on personally-performed services only, and not on referrals).

"financial relationship" have no real meaning under the Stark Law without a further clarification of the direct or indirect nature of the relationship.  The regulations go on to define a compensation arrangement as "any arrangement involving remuneration, *direct or indirect*, between a physician . . . and an entity [furnishing DHS]" and provide detailed, technical definitions for what constitutes a direct or an indirect compensation arrangement. 42 CFR § 411.354(c) (emphasis added).  The articulation of either a direct or indirect financial relationship between the physician and a DHS entity is a condition precedent to the applicability of Stark to that relationship.  *See* 42 CFR § 411.353.  If it refuses to elect a choice, either direct or indirect, the DOJ cannot allege facts necessary to establish financial relationship that implicates the Stark Law.

By ignoring the fact that not all financial relationships between physicians and hospitals are "financial relationships" subject to the Stark Law, the DOJ has failed to meet its burdens under either Rules 9(b) or 12(b)(6) to allege sufficient facts to support the existence of a Stark financial relationship between Halifax and the Physicians.  *See Obert-Hong*, 211 F. Supp. at 1050 ("The Stark and Anti-Kickback statutes are designed to remove economic incentives from medical referrals, not to regulate typical hospital-physician employment relationships" and "[b]oth statutes explicitly include employee exceptions.").  Instead, the DOJ obfuscates the pleading requirements for stating a Stark claim by asserting that it is merely obligated to generally reference a "financial relationship" without specifying the particular nature of the relationship.  DOJ Opp. at 7-8.  The DOJ's evasion is unjustifiable and impermissibly impedes Halifax's ability to defend itself.

In response to this pleading deficiency identified in Halifax's motion to dismiss, the

DOJ now attempts to amend its Complaint through assertions in its opposition brief that suggest that the Halifax physician agreements can be concurrently considered both direct and indirect. DOJ Opp. at 8. By belatedly alleging facts intended to satisfy the criteria for both direct and indirect compensation arrangements, the DOJ's pleading satisfies neither standard. The DOJ asserts that Halifax's relationship with the Physicians "*at least* meets the definition of an indirect relationship, *if not* a direct relationship." DOJ Opp. at 9 (emphasis added). The DOJ further argues that Halifax "wrongly classif[ies] the ten physicians named in the Complaint in Intervention as employees of Halifax Hospital," asserting instead that "[t]he Complaint in Intervention specifically alleges that [the] three neurosurgeons and seven oncologists at issue are employees of Halifax <u>Staffing</u>, not Halifax <u>Hospital</u>." DOJ Brief at 9, n.1 (emphasis in original) (internal citations omitted).

In further support of its indirect compensation theory, the DOJ alleges that compensation paid to the Physicians "takes into account the volume or value of referral services or other business generated *because* for DHS performed at Halifax Hospital . . . *there is a corresponding facility fee that is paid to the hospital*." DOJ Opp. at 8 (emphasis added). Even if accepted as true, this allegation of fact cannot alone establish an indirect compensation arrangement that took into account the volume or value of referrals. The Phase II Preamble to the Stark II regulations makes clear that a "corresponding facility fee" does not automatically render a productivity bonus based on personally performed services as having "take[n] into account" the volume or value of referrals (as alleged by the DOJ):

> Comment: A commenter presented the following scenario. A hospital employs a physician at an outpatient clinic and pays the physician for each patient seen at the clinic. The physician reassigns his or her right to payment to the hospital, and the hospital bills for the Part B physician service (with a site of service reduction).

> The hospital also bills for the hospital outpatient services, which may include some procedures furnished as "incident to" services in a hospital setting. The commenter's concern is that the payment to the physician is inevitably linked to a facility fee, which is a designated health service (that is, a hospital service). Accordingly, the commenter wondered whether the payment to the physician would be considered an improper productivity bonus based on a DHS referral (that is, the facility fee).
>
> Response: The fact that *corresponding hospital services are billed would not invalidate an employed physician's personally performed work*, for which the physician may be paid a productivity bonus (subject to the fair market value requirement).

69 Fed. Reg. 16054, 16088-16089 (March 26, 2004) (emphasis added).[3]

Halifax, moreover, has no reasonable opportunity to defend itself if the DOJ refuses to specify the nature of the financial relationship between the Physicians and Halifax. Halifax's articulation of the applicable defenses, including relevant Stark Law exceptions, is dependent on a clear statement of the DOJ's allegations as to these relationships.  The DOJ's Complaint should accordingly be dismissed in its entirety under Rules 9(b) and 12(b)(6).

### III.  THE DOJ'S CLAIMS REGARDING ALLEGED FALSE MEDICAID CLAIMS FAIL UNDER RULE 12(B)(6)

The DOJ fails to provide any basis for its Medicaid-based False Claims Act ("FCA") claims.  The DOJ alleges that Halifax, "by causing the state of Florida to reimburse claims made in violation of the Stark statute, caused the United States to pay funds to the state of Florida for services rendered in violation of that statute."  DOJ Opp. at 13-14; *See* Compl. ¶¶ 60(b), 113-114, 117, and 118.  The DOJ fails to cite any authority for its proposition that the Stark Law prohibits referrals within the Medicaid program or that, consequently, any of

---

[3] Courts regularly consider the Stark Law preamble in determining Congressional intent.  *See, e.g., United States ex rel. Villafane v. Solinger*, 543 F. Supp. 2d 678, 692-693 (W.D. Ky. 2008) (relying on Stark II, Phases I, II, and III preamble to clarify the nature of a compensation arrangement); and *United States ex rel Singh v. Bradford Reg'l Med. Ctr.,* 752 F. Supp. 2d 602, 627-632 (W.D. Pa. 2010) (relying on Stark Law preamble to address the definition of fair market value).

these Medicaid claims can violate the FCA.  A plain reading of the Medicaid regulations, moreover, reveals that these regulations do not incorporate the Stark Law prohibitions on either physician referrals or the resulting billing of DHS services.  *See* 42 U.S.C. § 1396b(s).

Instead, the DOJ insists that it can establish Medicaid-based FCA damages without any underlying violations of the Stark Law, blithely asserting "even if the Stark statute prohibition on referrals to entities with whom a physician has a prohibited financial relationship *does not apply directly to Medicaid providers*, it nevertheless may serve as the basis for a violation of the FCA." DOJ Opp. at 14 (emphasis added).  The Stark Law, however, does not prohibit payment to providers – like Halifax – by the State Medicaid plan.  *See* 42 U.S.C. § 1396b(s).  These allegations should be dismissed accordingly.

## IV.   CONCLUSION

For the foregoing reasons, and those stated in Halifax's Memorandum in Support of Motion to Dismiss Complaint in Intervention, this Court should dismiss the United States' Complaint with prejudice.

Dated: January 11, 2011

T. Reed Stephens (admitted *pro hac vice*)
David O. Crump (admitted *pro hac vice*)
Amandeep S. Sidhu (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC 20005
Tel: (202) 756-8000
Fax: (202) 756-8087
trstephens@mwe.com
dcrump@mwe.com
asidhu@mwe.com

Respectfully submitted,

s/ Amandeep S. Sidhu
Anthony N. Upshaw
Fla. Bar. No. 0861091
MCDERMOTT WILL & EMERY LLP
201 South Biscayne Boulevard
Suite 2200
Miami, FL 33131
Tel: (305) 358-3500
Fax: (305) 347-6500
aupshaw@mwe.com

*Counsel to Defendants Halifax Medical Center and Halifax Staffing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Middle District of Florida using the CM/ECF system on January 11, 2011.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


                                                            s/ Amandeep S. Sidhu  
                                                            Amandeep S. Sidhu