**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**
*ex. rel.* **and ELIN BAKLID-KUNZ, Relator,**

        **Plaintiffs,**

-vs-                                         Case No. 6:09-cv-1002-Orl-31DAB

**HALIFAX HOSPITAL MEDICAL**
**CENTER, d/b/a Halifax Health, a/k/a**
**Halifax Community Health System, a/k/a**
**Halifax Medical Center and HALIFAX**
**STAFFING, INC.,**

        **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss the Complaint in Intervention (Doc. 77) filed by the Defendants, the response in opposition (Doc. 83) filed by the Government, and the reply (Doc. 99) filed by the Defendants.

**I.    Background**

This *qui tam* action was originally filed on June 16, 2009. On October 4, 2011, the Government announced that it had elected to intervene as to certain claims made by the relator, Elin Baklid-Kunz ("Baklid-Kunz") against Halifax Hospital Medical Center ("Halifax Hospital") and Halifax Staffing, Inc. ("Halifax Staffing").[1] More specifically, the Government announced it

---

[1] According to the allegations in the Government's Complaint in Intervention, Halifax Hospital owns and operates hospitals in Volusia County and surrounding counties, while Halifax Staffing, a subsidiary, provides staffing services to Halifax Hospital in exchange for payments to cover the cost of employee salaries, benefits, and administrative costs. (Doc. 73 at 3).

would intervene in regard to claims by Baklid-Kunz that the Defendants had financial relationships with a number of physicians who were making referrals to Halifax Hospital.  Because of those financial relationships, Baklid-Kunz alleged, the referrals violated the Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn (the "Stark Amendment"), and bills submitted as a result of those referrals violated the False Claims Act, 31 U.S.C. § 3729 *et. seq*. (henceforth, the "FCA").  On November 4, 2011, the Government filed its Complaint in Intervention (Doc. 73) (henceforth, the "Intervenor's Complaint"), essentially reiterating these allegations.

The Government asserts three claims for violation of the FCA – Presentation of False Claims (Count I), Use of False Statements to Get False Claims Paid (Count II), and Use of False Records Material to an Obligation to Pay (Count III).  The Government also asserts claims for Unjust Enrichment (Count IV) and Payment by Mistake (Count V), as well as one count (Count VI) in which the Government seeks disgorgement, imposition of a constructive trust, and an accounting.  By way of the instant motion, the Defendants seek dismissal of all six counts, on multiple grounds.

## II.     Legal Standards

### A.     Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

*Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court must also limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level,  *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     The Stark Amendment

The goal of the Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn, is "to curb overutilization of services by physicians who could profit by referring patients to facilities in which they have a financial interest."  *See* Jo-Ellyn Sakowitz Klein, *The Stark Laws: Conquering*

*Physician Conflicts of Interest?*, 87 GEO. L.J. 499, 511 (1998).  To accomplish this goal, the Stark Amendment places limits on such referrals, providing in pertinent part that

> if a physician … has a financial relationship with an entity specified in paragraph (2), then
>
> > (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and
> >
> > (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

42 U.S.C. § 1395nn(a)(1).  Under the Stark Amendment, a physician has a "financial relationship" with an entity if the physician has "an ownership or investment interest in the entity," or "a compensation arrangement"[2] with it. 42 U.S.C. § 1395nn(a)(2).

Although the baseline rule is that any financial relationship between a referring physician and a medical facility implicates the Stark Amendment, there are a number of exceptions.  For example, services performed or supervised by the referring physician or by another physician in the same practice group are not covered by the prohibition on referrals and claims in 42 U.S.C. § 1395nn(a)(1). 42 U.S.C. § 1395nn(b)(1).  Similarly, equipment leases between physicians and medical facilities are not "financial relationships" for purposes of the Stark Amendment, which also provides exceptions for what are termed "bona fide employment relationships" and "personal service arrangements."  42 U.S.C. § 1395nn(e)(1)(B).

---

[2]A "compensation arrangement" consists, with certain exceptions, of "any arrangement involving any remuneration between a physician ... and an entity". 42 U.S.C. § 1395nn(h)(1)(A). "The term 'remuneration' includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. § 1395nn(h)(1)(B).

### C. The False Claims Act

The FCA was enacted in 1863 with the principal goal of stopping the massive frauds perpetrated by private contractors during the Civil War. *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 781, 120 S.Ct. 1858, 1867, 146 L.Ed.2d 836 (2000) (citing *United States v. Bornstein*, 423 U.S. 303, 309, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976)). It permits private persons to file a form of civil action – known as *qui tam* – against (and recover damages on behalf of the United States from) any person who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)-(B).

Falsely certifying compliance with the Stark or Anti-Kickback Acts in connection with a claim submitted to a federally funded insurance program is actionable under the FCA. *See United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3d Cir.2004) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997)); *United States v. Rogan*, 459 F.Supp.2d 692, 717 (N.D.Ill.2006).

### D. Rule 9(b)

A complaint must "state[ ] with particularity ... the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Rule 9(b)'s particularity requirement applies to claims brought under the FCA. *Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936 (11th Cir. 2003). To state a claim under the False Claims Act that complies with Rule 9(b), "the complaint must allege '"facts as to time, place, and substance of the defendant's alleged fraud," [and] "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."'"

*Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). The failure to satisfy Rule 9(b) is a ground for dismissal of a complaint. *Id.* The crux of a complaint under the False Claims Act is the submission of a fraudulent claim for payment, *see id.* at 1013; *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir.2006), so to survive a motion to dismiss, a complaint must allege with particularity that false claims were actually submitted to the government.

**III. Analysis**

    **A. Medicaid**

The Government asserts that the Defendants submitted and caused others to submit false and fraudulent claims for payment to Medicaid, in violation of the FCA. (Intervenor's Complaint at 24). The Defendants contend that these allegations fail as a matter of law. Under the Medicaid program, providers such as the Defendants are reimbursed by state governments, not the federal government. The Defendants argue that, even if one assumes that improper claims were submitted to Medicaid in this matter, neither the Stark Amendment nor the Medicaid statute prohibited the resulting reimbursement payments to the Defendants from the state of Florida, and therefore there could be no FCA violation.

However, the Medicaid statute does impose limits on referrals and reimbursements along the same lines as those imposed in the Stark Amendment. Specifically, 42 U.S.C. § 1396b(s), titled "Limitations on certain physician referrals," provides that

> no payment shall be made to a State under this section for expenditures for medical assistance under the State plan consisting of a designated health service (as defined in subsection (h)(6) of section 1395nn of this title) furnished to an individual on

> the basis of a referral that would result in the denial of payment for the service under subchapter XVIII of this chapter if such subchapter provided for coverage of such service to the same extent and under the same terms and conditions as under the State plan.

42 U.S.C. § 1396b(s). Thus the Medicaid statute prohibits payments to a state for medical services resulting from improper referrals, as defined under the Stark Amendment. Under the FCA, a defendant may be liable for submitting its own false claim *or* for causing another to submit a false claim. 31 U.S.C. § 3729(a)(1). Accordingly, the Plaintiff's theory in regard to the Medicaid claims is that the Defendants caused the state of Florida to submit false claims to the federal government for services furnished on the basis of improper referrals. This allegation is sufficient to survive a Rule 12(b)(6) challenge.

### B. Signed Writings and Compensation Set in Advance

At various points in the Intervenors' Complaint, the Government raises issues relating to the compensation agreements between Halifax and one or more of the physicians, such as that a particular agreement was not signed or that the terms of compensation were not "set in advance". For example, the Government asserts that "[a] number of the employment agreements between Halifax Staffing and the neurosurgeons were either never signed or signed after the effective date of the employment agreement" and that in October 2000, the employment agreement between Halifax Staffing and one neurosurgeon "was amended effective July 10, 2000 to provide for the doctor to receive additional compensation". (Intervenor's Complaint at 20). The Defendants argue that neither the Stark Amendment nor the FCA requires signed writings or terms being set in advance, and therefore these allegations, even if true, cannot give rise to a violation. (Doc. 78 at 9-

10). However, the Government does not allege that these things, in and of themselves, give rise to a violation. Accordingly, the Defendant's argument on this point fails.

### C.  Direct or Indirect Financial Relationship

The Defendants contend that the Complaint fails to set out whether the financial relationship between Halifax and the physicians at issue is a direct relationship or an indirect relationship. Although the Stark Amendment does distinguish between the two – some exceptions apply to direct financial relationships, but not to indirect financial relationships, and vice versa – nothing in its language requires that the particulars of that relationship be established in the complaint, and the Defendants have not cited to any cases imposing such a requirement. Accordingly, this argument is rejected.

### D.  Financial Relationship Exceptions

As noted above, the Stark Amendment's definition of financial relationships provides for certain exceptions; relationships falling within these exceptions do not trigger the prohibitions on referrals. The Defendants argue that the Government has failed to plead that the relationships at issue in this case do not fall within these exceptions. Again, however, while the Stark Amendment sets forth these exceptions, nothing in its language requires that the applicability of such exceptions be denied in the initial pleadings. And the Defendants have not cited to any cases imposing such a requirement. Rather, these exceptions would appear to be affirmative defenses that must be raised by the Defendants.

For example, in *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992 (11th Cir. 1982), a union was found to have violated Title VII of the Civil Rights Act of 1964 by participating in racially discriminatory promotion practices. On appeal, the union argued that the plaintiff had

failed to show that the alleged discrimination had not resulted from the normal operation of a bona fide seniority system.[3]  *Id.* at 1012.  The Court of Appeals held that the Title VII exemption for bona fide seniority systems was an affirmative defense that had to be pled by a defendant in its answer.  *Id.* at 1013.  Because the Defendant had failed to assert the bona fide seniority system affirmative defense in its answer, it had waived the issue.  *Id.*

Even in the Defendants' formulation, these exceptions resemble affirmative defenses rather than elements of a cause of action: For example, in regard to the "bona fide employment relationship" exception, the Defendants contend that the Intervenor's Complaint "does not allege facts that, even if true, *deny Halifax the protection of the Stark exception for bona fide employment relationships*."  As they most closely resemble affirmative defenses, it is the Defendants' obligation to plead that they apply rather than the Government's obligation to plead that they do not apply.

### E.     Rule 9(b)

The Defendants contend that the Government has failed to satisfy Rule 9(b)'s particularity requirement in regard to a number of the allegations made in the Intervenor's Complaint.  (Doc. 78 at 34-36).  They argue that the Government has failed to identify (1) the particular compensation agreements that violate the Stark Amendment; (2) the compensation agreements that were not signed or were signed after the fact; (3) the components of the compensation paid to the various

---

[3]The Civil Rights Act of 1964 provides in pertinent part that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(h).

physicians that were based on the volume or value of referrals; (4) the components of that compensation that were not based on fair market value; and (5) any specific instances where services were rendered by a nurse or a physician's assistant rather than a doctor. The Defendants do not specify the grounds for demanding greater particularity in these areas. So far as the Court can see, the allegations in these five areas are relevant to affirmative defenses that the Defendants might raise rather than elements of the Government's causes of action. As such, there is no justification for requiring a heightened degree of specificity in regard to these allegations.

**F.      Rule 12(b)(6) Failure to State a Claim Under the False Claims Act**

Pursuant to Rule 12(b)(6), the Defendants assert that the Government has failed to state a claim under the False Claims Act because they have not identified any false records or false statements and have failed to show the presentment of any false claims by Halifax. The Defendants have not cited any case law or statutory language that makes such an identification a requirement for purposes of Rule 12(b)(6).

The Defendants also complain that the Intervenor's Complaint does not include any factual allegations which, if true, would establish that the Defendants acted "knowingly" for purposes of the FCA. (Doc. 78 at 38). Under the FCA, a person acts "knowingly" if he or she "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). No proof of specific intent is required. *Id.* And Rule 9(b) permits knowledge to be alleged generally, which the Government has done.

### G. Statutes of Limitation

The Defendants contend that any damages claims that arose prior to June 16, 2003 must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because they fall outside of FCA's statute of limitations. (Doc. 78 at 38). The expiration of a statute of limitation is an affirmative defense rather than a bar to jurisdiction. *See, e.g.*, *Gordon v. National Work Alliance*, 675 F.2d 356, 360 (D.C.Cir. 1982). Accordingly, the requested dismissal for lack of subject matter jurisdiction must fail.

### H. Eleventh Amendment

The Defendants spend three pages asserting that they are immune from suit under the FCA pursuant to the Eleventh Amendment. (Doc. 78 at 32-35). By order dated June 6, 2011, the Court considered and rejected this argument. (Doc. 46).

### I. Common Law Causes of Action

The Defendants seek dismissal of Count IV on the grounds that the Government has not alleged a prima facie case of unjust enrichment under Florida law. However, the Government's rights arising under a nationwide federal program such as this one are governed by federal law, not state law. *United States ex rel. Roberts v. Aging Care Home Health, Inc.,* 474 F.Supp.2d 810, 820 (W.D.La. 2007) (citing *United States v. Vernon Home Health*, 21 F.3d 693, 695 (5th Cir. 1994)). As such, any failure by the Government to establish a prima facie case under Florida law would not be relevant.

The Defendants also argue that Count V, the Government's Payment by Mistake claim, should be dismissed because the Government cannot prevail on its FCA and Stark Act claims. Such an argument is premature at this stage of the proceedings.

Finally, the Defendants seek dismissal of Count VI, which asserts claims for disgorgement, constructive trust, and an accounting.  The Defendants point out, correctly, that these are remedies, not causes of action.  Count VI will be dismissed with prejudice.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss the Complaint in Intervention (Doc. 77) is **GRANTED IN PART AND DENIED IN PART**.  Count VI is hereby **DISMISSED WITH PREJUDICE**.  In all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 19, 2012.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party