# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex.rel.*, and ELIN BAKLID-KUNZ, Relator )<br><br>    Plaintiffs )<br><br>vs. )<br><br>HALIFAX HOSPITAL MEDICAL CENTER d/b/a HALIFAX HEALTH a/k/a HALIFAX COMMUNITY HEALTH SYSTEM a/k/a HALIFAX MEDICAL CENTER and HALIFAX STAFFING, INC. )<br><br>    Defendants ) | CASE NO.: 6-09-CV-1002-ORL-31DAB<br><br>JUDGE GREGORY A. PRESNELL<br><br>[FALSE CLAIMS ACT – QUI TAM] |

## NOTICE OF VIDEOTAPED 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants Halifax Hospital Medical Center d/b/a Halifax Health a/k/a Halifax Community Health System a/k/a Halifax Medical Center and Halifax Staffing, Inc. (collectively, "Halifax")[1] will take the deposition upon oral examination of Plaintiff United States of America (the "USA").

The deposition will commence on **Friday, May 18, 2012 at 9:30 a.m.** at 600 13th Street NW, Washington, D.C. 20005.  The deposition will be recorded by video and stenographic

---

[1]   Halifax Hospital Medical Center is a statutory governmental subdivision of the State of Florida, located in Daytona Beach, Florida.  More specifically, Halifax Hospital Medical Center is organized under the laws of the State of Florida as a special taxing district created pursuant to an act of the Florida Legislature.  Halifax Staffing, Inc. is the instrumentality by which Halifax Hospital Medical Center employs the individuals who work at Halifax Hospital Medical Center facilities.  Pursuant to an agreement between Halifax Staffing and Halifax Hospital Medical Center (commencing March 6, 1994), Halifax Staffing assumed the employment of the individuals who had up to that time been employed by the Halifax Hospital Medical Center district, and became the entity used by Halifax Hospital Medical Center to staff its facilities.  Halifax Hospital Medical Center pays its employees through a Halifax Staffing "sweep" account.

means before an officer authorized by law to administer oaths. The deposition will continue from day to day until completed.

The matters on which examination is requested are set forth in <u>Schedule A</u>, which is attached to and made part of this Notice. Pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff shall designate one or more of its officers, directors, managing agents, or other persons competent to testify on its behalf as to each of the matters set forth in <u>Schedule A</u>. Pursuant to Federal Rule Civil Procedure 34, the County shall also produce documents identified and described in <u>Schedule B</u> and not previously produced in response to Halifax's First Request for Production (the "Document Requests").

Dated: April 13, 2011

Respectfully submitted,

<u>s/ Amandeep S. Sidhu</u>
Anthony N. Upshaw
Fla. Bar. No. 0861091
MCDERMOTT WILL & EMERY LLP
201 South Biscayne Boulevard
Suite 2200
Miami, FL 33131
Tel: (305) 358-3500
Fax: (305) 347-6500
Email: aupshaw@mwe.com

T. Reed Stephens (admitted *pro hac vice*)
David O. Crump (admitted *pro hac vice*)
Amandeep S. Sidhu (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC 20005
Tel: (202) 756-8000
Fax: (202) 756-8087
Email: trstephens@mwe.com
Email: dcrump@mwe.com
Email: asidhu@mwe.com

*Counsel to Defendants Halifax Medical Center
and Halifax Staffing, Inc.*

## SCHEDULE A

### Definitions and Instructions

1.    The term "USA" shall refer to Plaintiff, United States of America, and all persons acting or purporting to act on its behalf.

2.    The term "Complaint" shall refer to the Complaint in Intervention filed by the USA on November 4, 2011.

3.    The term "Defendants" shall collectively refer to and include all of the named Defendants in the Complaint, and all persons acting on their behalf.

4.    The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including, but not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written or oral transmission, exchange, or transfer of information in any form between two or more persons, including in person or by telephone, facsimile, telegraph, telex, letter, e-mail or other medium.

5.    The term "Fair Market Value" shall be defined as it is found in 42 C.F.R. § 411.351.

6.    The term "Bona Fide Employment Relationships" refers to the term as it is found in 42 C.F.R. § 411.357(c).

7.    Unless the context clearly requires otherwise, or unless otherwise defined or limited, all capitalized terms used herein shall have the meanings described by those terms used in the Complaint, even if not capitalized in the Complaint.

## DESIGNATION OF SUBJECTS FOR RULE 30(b)(6) DEPOSITION

1.      All facts set forth in the Complaint.

2.      The USA's interpretation of rules for, and justifications for any historical change in policy for the following topics related to short stay admissions:

      a.      The medical necessity of admissions;

      b.      Hospital use of observation status;

      c.      The appropriate uses of Condition Code 44;

      d.      The use of InterQual, including but not limited to for elective surgical procedures, and other commercial services by hospitals for determining whether to admit patients for health care services; and

      e.      Provider use and reliance on Medicare "In-Patient Only" designations for health care procedures performed at a hospital.

3.      The USA's interpretation for the following topics related to the Stark Law:

      a.      How the Fair Market Value exception is to be applied;

      b.      Laws and regulations on how a provider should measure Fair Market Value for employed and non-employed emergency room physicians and their services;

      c.      Laws and regulations on how a provider should measure Fair Market Value for employed and non-employed psychiatrists and their services;

      d.      Laws and regulations on how a provider should measure Fair Market Value for employed and non-employed neurosurgeons and their services;

      e.      Laws and regulations on how a provider should measure Fair Market Value for employed and non-employed medical oncologists and their services;

- 4 -

f.    Laws and regulations on how a provider should measure Fair Market Value for employed and non-employed oncological surgeons;

g.    How the Bona Fide Employment Relationship exception is to be applied;

h.    Laws and regulations governing whether physician compensation is based on the volume or value of referrals for both employed and non-employed physicians;

i.    Laws and regulations on how the Stark Law applies to the Medicaid and Medicare programs;

j.    Laws and regulations on how "billing incident to" services are relevant to Designated Health Services; and

k.    Laws and regulations on how "billing incident to" services are relevant to the determination of the Fair Market Value of compensation for neurosurgeon, medical oncology, and oncological surgical services.

4.    The USA's interpretation of laws and regulations governing how to determine whether a provider has offered or has solicited an inducement in exchange for actual or anticipated referrals.

5.    The handling, distribution, review, use, and sequestering of privileged documents that are the subject of Halifax's Motion for a Preliminary Injunction and Other Equitable Relief filed with the Court on December 23, 2011 (Docket No. 84).

- 5 -

## SCHEDULE B

The applicable definitions and instructions set forth in the Document Requests are hereby incorporated by reference in this Schedule B.

1.      Please produce all documents identified in Schedule A and not previously produced in response to Halifax's First Requests for Production.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2012 a copy of the foregoing was served on the counsel

listed below via first class U.S. mail and/or e-mail:

**VIA FIRST CLASS U.S. MAIL AND E-EMAIL**

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
Civil Fraud Section
Commercial Litigation Branch
U.S. Department of Justice
601 D Street, NW
Room 9537
Washington, DC 20004
(202) 514-6831

**VIA E-MAIL**

Ralph E. Hopkins
U.S. Department of Justice
U.S. Attorney's Office
Middle District of Florida
501 W. Church St., Suite 300
Orlando, FL 32805
(407) 648-7562

s/ Amandeep S. Sidhu
Amandeep S. Sidhu

- 7 -

# EXHIBIT B



**U.S. Department of Justice**

Civil Division

JRB:MDG:PMFitzgerald
46-17m-1812

Patricia M. Fitzgerald
(202) 305-3713

---

*Washington, DC 20530*

April 27, 2012

### *VIA ELECTRONIC AND U.S. MAIL*

Theodore Reed Stephens, Esq.
McDermott, Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005

Re:   *U.S. ex rel. Baklid-Kunz v. Halifax Hospital Medical Center, et al.,*
<u>Case No. 6:09-CV-1002-ORL-31 DAB (M.D. Fla.)</u>

Dear Mr. Stephens:

I write to object to the Notice of Videotaped 30(b)(6) Deposition that Defendants Halifax Hospital Medical Center and Halifax Staffing, Inc. ("Halifax") served on the United States on April 13, 2012.

### A. Proper Party to be Noticed

Your notice is directed to "Plaintiff United States of America." While the United States is the party bringing this lawsuit, your notice of 30(b)(6) deposition should be directed at either the Department of Health and Human Services (HHS) or the Centers for Medicare and Medicaid Services (CMS). Rule 30(b)(6) states that a notice or subpoena may name "a government agency," not the entire United States. In its Complaint in Intervention, the United States stated that it was bringing the case "on behalf of" HHS and CMS. (Compl. ¶ 6.) Therefore, HHS and CMS will designate someone to testify on their behalf for this deposition.

### B. Length of Deposition

The notice also states, "The deposition will continue from day to day until completed." This is contrary to the Court's Amended Case Management and Scheduling Order dated January 3, 2012 (Dkt. 92). The Case Management Order states that "Absent leave of the Court or stipulation by the parties, each deposition is limited to one day of seven hours." (Dkt. 92, p. 3.) The parties have not stipulated that 30(b)(6) depositions may last longer than one day of seven hours, and Halifax may not unilaterally decide to lengthen the amount of time for its deposition. If, however, Halifax would like to negotiate with the United States as to extending the amount of time permitted for 30(b)(6) depositions, we would be willing to have such negotiations.

### C. Subject Matters for Deposition

Topic 1.  The United States objects to the first topic of Halifax's 30(b)(6) notice on the grounds that "all facts set forth in the Complaint" (1) does not follow the requirement of Rule 30(b)(6) to "describe with reasonable particularity the matters for examination," and (2) appears intended to elicit attorney work product.  The information supporting the allegations in the complaint would be better sought through Requests for Production, which Halifax has already served and which the United States is in the process of responding to, and Interrogatories, including those to which the United States has already responded.

Several courts have found that a broad 30(b)(6) topic requesting testimony on all facts does not meet the "reasonable particularity" requirement.  E.g., *Gossar v. Soo Line Railroad Co.*, 2009 WL 3570335, at *2 (S.D. Ind. Oct. 27, 2009) (granting motion for a protective order as to topic of 30(b)(6) deposition that would "require [defendant] to marshal all of its factual proof and then provide it to Plaintiffs at the 30(b)(6) deposition"); *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618, at *6 (D. Kan. Oct. 16, 2009) (30(b)(6) notice requesting testimony on the entire complaint is overly broad and does not meet "reasonably particularity" requirement); *Sheehy v. Ridge Tool Co.*, 2007 WL 1548976, at *4 (D. Conn. May 24, 2007) ("a simple notice pleading . . . does not . . . satisfy the 'reasonably particularity' standard of Rule 30(b)(6)"); *Skladzien v. St. Francis Regional Med. Ctr.*, 1996 WL 807353, at *1 (D. Kan. Dec. 19, 1996) (30(b)(6) notice requesting testimony on all facts that the defendant has denied "does not provide with reasonable particularity the matters on which examination is requested").

Due in part to the lack of specificity, it is unclear to us what the purpose and scope of Topic 1 is intended to be.  We are not sure what would be accomplished by having a witness merely reiterate the facts already identified in the complaint.  If Halifax intends to question a 30(b)(6) witness on Topic 1 with questions that go beyond the actual facts set forth in the Complaint, such testimony would invade attorney work product.  In *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, the court found that a notice of 30(b)(6) deposition served on the United States Attorney's Office requesting testimony on various topics, including the facts concerning or supporting the allegations in the complaint, to be improper because it seeks information protected by the work-product privilege.  1992 WL 208284, *11-14 (S.D.N.Y. Aug. 18, 1992).  The fact that the Government designated a non-attorney to testify as to the topics did not affect the application of the privilege because "what [the designee] knows has either been told to her by plaintiff's counsel, or learned on direction of counsel in supervising her investigation and trial preparation, her selective revelation of information will no doubt . . . reveal how they are preparing to try and prove their case."  *District Council*, at *12.  *See also Resolution Trust Co. v. Kazimour*, 1993 WL 13009325 at *3 (N.D. Iowa 1993) (30(b)(6) notice on a topics concerning "all facts upon which [the party] bases its allegations," are better suited to contention interrogatories).

Here, the United States has already responded to document requests providing Halifax with all documents it identified in its complaint, responded to document requests providing Halifax with all documents supporting various allegations in the complaint, responded to interrogatories listing all individuals and organizations with whom it has had contact regarding the issues in the

complaint, and responded to interrogatories identifying which contract provisions for which physicians the United States alleges violate the Stark Law.

Topic 2.  The United States objects to Topic 2 of Halifax's notice of 30(b)(6) deposition on the grounds that (1) it is overbroad and unduly burdensome because it calls for testimony on "any historical change"; and (2) the subject matters of Topic 2 do not relate to claims on which the United States is a party; therefore the proper course of action for Halifax would be a Rule 45 subpoena, which would require Halifax to comply with *Ragan v. Touhy*, 340 U.S. 462 (1951). CMS' *Touhy* regulations may be found at 45 C.F.R. Part 2.  *See Securities and Exchange Commission v. Biopure Corp.*, 2006 WL 2789002, at *3 (D.D.C. Jan. 20, 2006) ("'If the Government is a party, Rule 30(b)(6) certainly applies to it; however, when it is not a party, the availability of a subpoena is governed by Rule 45.'" (quoting *AlohaCare, Inc. v. Haw. Dep't of Human Servs.* (*In re: Subpoena Duces Tecum to Tommy G. Thompson* ), Misc. No. 04-498 (D.D.C. June 28, 2005)).  However, the United States will interpret your 30(b)(6) as a Rule 45 subpoena issued under the relevant *Touhy* regulations and CMS will provide a witness to address these topics, provided that we are able to come to an agreement regarding the temporal scope of Topic 2.

Topics 3 and 4.  The United States objects to Topics 3 and 4 of Halifax's notice of 30(b)(6) deposition on the grounds that they (1) seek legal conclusions; (2) seek information that invades attorney work product; (3) are unduly burdensome because they improperly seek to depose opposing counsel; and (4) seek information that is better suited to interrogatories.

Courts have found that 30(b)(6) depositions seeking legal conclusions are improper.  *E.g., Goss Int'l Americas, Inc. v. MAN Roland, Inc.*, 2006 WL 1134930, at *3 (D.N.H. April 28, 2006) (denying motion to compel 30(b)(6) testimony because "claim construction is a matter of law, and legal contentions are not a proper subject for factual discovery"); *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *3 (E.D. Pa. March 23, 2004) (legal positions should be ascertained through interrogatories not depositions because "[i]t would be very difficult for a non-attorney witness to answer such questions at a deposition").

Moreover, Halifax is seeking information that can only be given by counsel.  Courts have found depositions of attorneys to be unduly burdensome.  In *SEC v. Buntrock*, the court found that a notice of 30(b)(6) deposition to the SEC for a variety of topics that were "basically . . . the results of the SEC's investigation" to be improper because it sought "if not the deposition of opposing counsel, then the practical equivalent thereof."  217 F.R.D. 441, 443, 445 (N.D. Ill. 2003).  *See also FTC v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *9-10 (E.D. La. June 25, 2004); *SEC v. Rosenfeld*, 1997 WL 576021, at *2 (S.D.N.Y. Sept. 16, 1997); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994).

Topic 5.  The United States objects to Topic 5 on the grounds that it improperly seeks the deposition of counsel, which is disfavored, and seeks information that is better suited to be sought through interrogatories.

In response to the general issue of the treatment of the documents that were the subject of Halifax's motion for a protective order, the United States first became aware that it may have

- 4 -

some of the 31 documents that are the subject of Halifax's Motion for a Preliminary Injunction at the beginning of January, 2012, when relator's opposition to the Motion for a Preliminary Injunction noted that two of the documents Halifax claimed were privileged had been produced to the United States. Adam Schwartz promptly notified you by letter that the United States was aware that Halifax had produced some of these documents to the United States and that the Government was sequestering those documents on its database. No hard copies or other electronic copies of those documents existed at that time. Relator's counsel never provided any of these documents to DOJ trial counsel. Prior to that time, in the fall of 2011, DOJ trial counsel enlisted the support of another attorney, Jeff Gleason, in the Fraud Section, with no other association to this case, to serve as a taint attorney and to review documents relator identified as potentially privileged. DOJ trial counsel is not aware if any of the documents reviewed by Mr. Gleason were later the subject of Halifax's Motion for a Preliminary Injunction. Mr. Gleason sequestered these documents and has not shared them with DOJ trial counsel. No other person in the Fraud Section or on the DOJ trial team reviewed or handled these documents, and Mr. Gleason's copy is the only copy that exists. Mr. Gleason subsequently reviewed these documents as part of the April 3, 2012, meet and confer regarding privileged material.

\*    \*    \*

The United States objects to Halifax's notice of 30(b)(6) deposition on the foregoing grounds and requests that Halifax withdraw its notice. Please respond to this letter by Wednesday, May 2, 2012, so that we may schedule a meet and confer and prepare a motion, if necessary, in advance of the noticed May 18, 2012, deposition if you are not willing to withdraw the notice.

Sincerely,

Patricia M. Fitzgerald
Trial Attorney
Commercial Litigation Branch

cc (via electronic mail):

Amy H. Kearby                                   Bruce J. Berman
David O. Crump                                  Adam P. Schwartz
Amandeep S. Sidhu                               Carlton Fields
Anthony N. Upshaw
McDermott, Will, and Emery

Gabriel Imperato
Broad and Cassel

Christopher C. Casper                           Scott C. Withrow
John R. Newcomer, Jr.                           Jeffrey R. Holm

- 5 -

Elaine Stromgren
James, Hoyer, Newcomer & Smiljanich, P.A.

Marlan B. Wilbanks
Ty M. Bridges
Wilbanks & Bridges, LLP

Ralph E. Hopkins
United States Attorney's Office for the
  Middle District of Florida

Terrence McQuade
Withrow, McQuade & Olsen, LLP

Susan S. Gouinlock
Susan Gouinlock Ltd., Law Offices

# EXHIBIT C

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Paris  Rome  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amandeep S. Sidhu
Attorney at Law
asidhu@mwe.com
+1 202 756-8380

May 17, 2012

VIA EMAIL AND FEDEX

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
Civil Fraud Section, Commercial Litigation Branch
U.S. Department of Justice
601 D Street, N.W.
Room 9537
Washington, D.C. 20004

Re:     *United States of America ex rel.* and *Elin Baklid-Kunz v. Halifax Hospital Medical
        Center, et al.,* Case No. 6:09-CV-1002 (M.D. Fla.)

Dear Counsel:

On behalf of our client Halifax Hospital Medical Center ("Halifax"),[1] this letter follows up on
our May 17, 2012 email and responds to recent email correspondence from the U.S. Department
of Justice ("DOJ") regarding Halifax's Amended Notice of 30(b)(6) Deposition ("Amended
Notice").

Our current understanding of plaintiff's position (as reflected in Ms. Fitzgerald's May 10th
email) is that you have asserted that, at minimum, with respect to Topic 1, Topic 2, parts of
Topic 3 and Topic 4 of the Halifax's Amended Notice, there is no non-privileged, non-attorney
work product, or non-deliberative process privileged information that can be obtained through
testimony or production of documents and that the plaintiff, therefore, refuses to identify and
produce a witness to give testimony.  Given that circumstance, and assuming that you identify
before the close of business tomorrow each and every topic and sub-topic for which you plan to
seek a protective order, we will agree that no further meet and confer would be productive under
the applicable local rules.

---

[1]  Halifax Hospital Medical Center ("Halifax") is a statutory governmental subdivision of the State of Florida,
located in Daytona Beach, Florida.  More specifically, Halifax is organized under the laws of the State of Florida as
a special taxing district created pursuant to an act of the Florida Legislature.  Halifax Staffing, Inc. is the
instrumentality by which Halifax employs the individuals who work at Halifax facilities.  Pursuant to an agreement
between Halifax Staffing and Halifax (commencing March 6, 1994), Halifax Staffing assumed the employment of
the individuals who had up to that time been employed by the Halifax district, and became the entity used by Halifax
to staff its facilities.  Halifax pays its employees through a Halifax Staffing "sweep" account.

U.S. practice conducted through McDermott Will & Emery LLP.

**600 Thirteenth Street, N.W. Washington D.C. 20005-3096  Telephone: +1 202 756 8000  Facsimile: +1 202 756 8087   www.mwe.com**

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
May 17, 2012
Page 2

We still await, however, your identification of the specific witnesses that plaintiff does intend to produce for each remaining sub-topics under Topic 3 and the proposed alternative dates, within the next 30 days, on which plaintiff will produce these witnesses with the specific subjects on which these witnesses will be providing testimony.  We also cannot agree to your proposed resolution of the allotted time for 30(b)(6) testimony (as reflected in Mr. Schwartz's May 16th email) without knowing first who the witnesses will be and upon which Topics they will be testifying.  Please provide these alternative dates immediately so that we may duly serve a Second Amended Notice that supersedes the deposition currently noticed for tomorrow, May 18th.  Without this information, Halifax will need to request a meet and confer for its own motion to compel.

If you have any questions please contact me or any of my co-counsel.

Sincerely,

Amandeep S. Sidhu

cc:     Ralph E. Hopkins, U.S. Department of Justice (via email)

# EXHIBIT D

**From:**       Schwartz, Adam (CIV) [Adam.Schwartz2@usdoj.gov]
**Sent:**       Thursday, May 17, 2012 7:10 PM
**To:**         Sidhu, Amandeep; Fitzgerald, Patricia M. (CIV)
**Cc:**         Hopkins, Ralph (USAFLM); Stephens, T Reed; Upshaw, Anthony; Crump,
                David; Kearbey, Amy; bberman@carltonfields.com;
                aschwartz@carltonfields.com
**Subject:**    Re: U.S. ex rel. and Baklid-Kunz v. Halifax, et al., Case No. 6:09-CV-1002
                (M.D. Fla.)

Counsel,

As a preliminary matter, your letter does not respond to our immediate question of whether Halifax is
either: (1) available to have a meet and confer on its Amended Notice of 30(b)(6) Deposition before May
18, 2012; or (2) will agree that the United States has not waived any objections it has to Halifax's notice
if the United States does not file its motion for a protective order by May 18 so that the parties may
have a meet a confer after May 18 to discuss your First Amended Notice.  Please provide a response by
noon tomorrow, May 18.

Contrary to your letter of May 17, 2012, the United States has not asserted that there is no non-
privileged, non-attorney work product, or non-deliberative process privileged information sought in
Topics 1; 2; subtopics (a), (b), (c), (e), and (l) of Topic 3; and Topic 4.  In fact, the United States is not
clear what Halifax is seeking in those topics.  However, during the parties May 7 meet and confer on
Halifax's first Notice of 30(b)(6) Deposition, counsel for Halifax indicated that it was seeking testimony
on whether CMS's positions as to certain laws and regulations identified in Topics 2, 3, and 4, and how
they have changed over time.  Such information would clearly be protected by the deliberative-process
privilege and/or attorney work-product privilege.  If, however, Halifax is willing to now state that it is not
seeking testimony: (1) on the reasoning behind any change (assuming such changes exists) of CMS's
policies; (2) on any legal conclusions or explanations of laws and/or regulations; and (3) offering
opinions on any hypothetical fact patterns, the United States agrees that it does not need to file a
motion for a protective order.  However, given that the only testimony that May not be improper as to
Topics 1; 2; subtopics (a), (b), (c), (e), and (l) of Topic 3; and Topic 4 would be testimony whereby a
witness lists the applicable statutes and regulations, we understand that Halifax seeks testimony beyond
this limited area of inquiry.

Regarding the identification of the individual(s) who would testify as to the subtopics of Topic 3 that are
not identified above, we are still considering which individual(s) will be designated to testify and will
provide the name(s) to you in the near future. However, because it is likely that the same individual who
testifies as to the non-objectionable subparts of Topic 3 will be the same as the person providing
testimony as to any other topics that are resolved, we believe it appropriate to conduct the deposition
after resolution of the other issues related to the 30(b)(6) deposition notice. It is unfair to the witness to
have to take time from his or her employment responsibilities for multiple days to provide deposition
testimony covering inter-related subjects when the inconvenience to the witness can be minimized by
waiting for the Court to resolve any remaining issues between the parties. We appreciate your
willingness to understand the importance of convenience to the witness(es) and minimizing the burden
of possibly testifying twice.  The United States would of course be willing to work with Halifax and its

1

witnesses in the event this is a concern for the corporate designee(s)of Halifax Hospital Medical Center and/or Halifax Staffing, Inc.

Thank you,

**From**: Sidhu, Amandeep [mailto:ASidhu@mwe.com]
**Sent**: Thursday, May 17, 2012 04:46 PM
**To**: Schwartz, Adam (CIV); Fitzgerald, Patricia M. (CIV)
**Cc**: Hopkins, Ralph (USAFLM); Stephens, T Reed <TRStephens@mwe.com>; Upshaw, Anthony <aupshaw@mwe.com>; Crump, David <DCrump@mwe.com>; Kearbey, Amy <AKearbey@mwe.com>; bberman@carltonfields.com <bberman@carltonfields.com>; aschwartz@carltonfields.com <aschwartz@carltonfields.com>
**Subject**: U.S. ex rel. and Baklid-Kunz v. Halifax, et al., Case No. 6:09-CV-1002 (M.D. Fla.)

Counsel - Please see the attached correspondence.

Best,
Aman

=====
Amandeep S. Sidhu
McDermott Will & Emery LLP
600 Thirteenth Street NW | Washington, DC 20005-3096
Tel: 202.756.8380 | Fax: 202.591.2741 | asidhu@mwe.com | www.mwe.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.
_____

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT E

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Paris  Rome  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

T. Reed Stephens
Attorney at Law
trstephens@mwe.com
+1 202 756-8129

May 18, 2012

VIA EMAIL AND U.S. MAIL

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
Civil Fraud Section, Commercial Litigation Branch
U.S. Department of Justice
601 D Street, N.W.
Room 9537
Washington, D.C. 20004

Re:     *United States of America ex rel.* and *Elin Baklid-Kunz*, Relator *v. Halifax Hospital*
        *Medical Center, et al.,* Case No. 6:09-CV-1002 (M.D. Fla.)

Dear Counsel:

On behalf of our client Halifax Hospital Medical Center ("Halifax"),[1] this letter responds to your
email correspondence, dated May 17, 2012, regarding Plaintiff United States' objections to
Halifax's 30(b)(6) Notice of Deposition and Amended 30(b)(6) Notice Of Deposition. Halifax is
not willing to continue meeting and conferring regarding your objections to the Amended Notice
of Deposition. Halifax, in fact, requests that Plaintiff counsel make themselves available today
for a meet and confer regarding Halifax's anticipated Motion to Compel the United States
expeditious production of witnesses at the noticed 30(b)(6) deposition.

We have engaged in extensive negotiations with you regarding the specifics of the 30(b)(6)
Notice and terms for the appearance of your designated witness or witnesses. This has been
done as a courtesy in an effort to avoid a discovery dispute. Clearly, this dispute cannot be
avoided as you have made clear in your most recent email communication yesterday that the
United States has no intention of timely making a witness available on the notice date for the
deposition even though you admit in this same communication that "[c]ontrary to your letter of
May 17, 2012, the United States has not asserted that there is no non-privileged, non-attorney

---

[1]   Halifax Hospital Medical Center ("Halifax") is a statutory governmental subdivision of the State of Florida,
located in Daytona Beach, Florida. More specifically, Halifax is organized under the laws of the State of Florida as
a special taxing district created pursuant to an act of the Florida Legislature. Halifax Staffing, Inc. is the
instrumentality by which Halifax employs the individuals who work at Halifax facilities. Pursuant to an agreement
between Halifax Staffing and Halifax (commencing March 6, 1994), Halifax Staffing assumed the employment of
the individuals who had up to that time been employed by the Halifax district, and became the entity used by Halifax
to staff its facilities. Halifax pays its employees through a Halifax Staffing "sweep" account.

U.S. practice conducted through McDermott Will & Emery LLP.

**600 Thirteenth Street, N.W. Washington D.C. 20005-3096  Telephone: +1 202 756 8000  Facsimile: +1 202 756 8087  www.mwe.com**

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
May 18, 2012
Page 2

work product, or non-deliberative process privileged information sought in Topics 1; 2;
subtopics (a), (b), (c), (e), and (l) of Topic 3; and Topic 4." Adam Schwartz email
correspondence to T. Reed Stephens, dated May 17, 2012.

Having conceded that the United States has discoverable information that is not otherwise
shielded by any privilege, you have not cited a single cognizable basis for failing to provide a
witness or witnesses to testify on the topics set forth in either the original 30(b)(6) notice or the
Amended 30(b)(6) Notice.  Your justification for refusing are utterly specious having no basis in
the Federal Rules of Civil Procedure, the Local Rules of this Court or the Case Management
Report governing this litigation.

Halifax is neither obligated to provide you with an outline of its anticipated deposition questions
nor a promise that no question will be asked that could conceivably implicate a privileged
communication between employees of the United States and its counsel.  Your available remedy
to such a circumstance is to object during the deposition and, if you so choose, instruct the
witness to not answer the question.  Refusing to produce the witness is not an option.

Rather than allow you to continue your obvious stalling tactics centered around your threatened
motion for protective order, Halifax intends on filing next week a Motion To Compel the
appearance of the United States' 30(b)(6) witness or witnesses along with a Motion For Costs in
the effort to compel the necessary appearance.

Since you have already confirmed your availability for a meet and confer on May 18th, please
further confirm your availability for a meet and confer with respect to Halifax's Motion To
Compel.

I can be reached as always at (202) 756-8129.  If you cannot reach me, please contact one of my
colleagues.

Sincerely

T. Reed Stephens

cc:     AUSA Ralph Hopkins (via electronic mail)

# EXHIBIT F



**U.S. Department of Justice**

Civil Division

JRB:MDG:AJSchwartz
16-17M-1812

Adam J. Schwartz
Tel. (202) 514-6831

*Washington, D.C. 20530*

May 18, 2012

*VIA ELECTRONIC AND U.S. MAIL*

Theodore Reed Stephens. Esq.
McDermott, Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005

Re:   *U.S. ex rel. Baklid-Kunz v. Halifax Hospital Medical Center, et al.,*
      Case No. 6:09-CV-1002-ORL-31 DAB (M.D. Fla.)

Dear Mr. Stephens:

Your letter sent earlier today to Patricia Fitzgerald and me highlights the difficulties Ms. Fitzgerald and I continue to have in responding to Defendant Halifax Hospital Medical Center and Halifax Staffing, Inc.'s ("Halifax") request for testimony from the United States pursuant to Federal Rule of Civil Procedure 30(b)(6).

On April 27, 2012, Ms. Fitzgerald sent you a letter highlighting several concerns with the 30(b)(6) deposition notice sent to the United States on April 13, 2012. The original deposition notice set May 18, 2012, as the date of the deposition. In response to the April 27, 2012. letter. on May 9, 2012, Halifax served on the United States an Amended 30(b)(6) deposition notice listing new areas of inquiry not included in the original notice and withdrawing certain topics that had been included. The Amended 30(b)(6) deposition notice did not alter the scheduled date of the deposition.

Pursuant to Local Rule 3.02 of the United States District Court for the Middle District of Florida. "a party desiring to take the deposition of any person upon oral examination shall give at least fourteen (14) days notice in writing to every other party to the action..." Halifax's May 9. 2012, deposition notice is therefore improper because it fails to provide fourteen days notice and fails to advise all parties to the action of the date of the deposition.[1] The United States therefore need not appear for a deposition as contemplated in your May 9, 2012, deposition notice or

---

[1]   Halifax's original 30(b)(6) deposition notice to the United States is similarly improper because it failed to provide relator Elin Baklid-Kunz with notice of the deposition.

provide responsive documents, to the extent they exist.

Furthermore, on May 10, 2012, I received an electronic mail message from your colleague, Amandeep Sidhu, stating that a Second Amended 30(b)(6) deposition notice would be forthcoming following the parties agreement regarding the length of each 30(b)(6) deposition in this matter and a resolution to topic 5 of your Amended 30(b)(6) deposition notice. As noted in Mr. Sidhu's letter of May 17, 2012, we are still negotiating an agreement on the length of each 30(b)(6) deposition and Halifax is awaiting a resolution to that issue prior to serving a Second Amended 30(b)(6) deposition notice.

Given that neither 30(b)(6) deposition notice was proper and your stated intention to serve a Second Amended 30(b)(6) deposition notice in the future, it is impossible for the United States to determine at this time the specific areas of inquiry for which you seek testimony. Once you have properly served a 30(b)(6) deposition notice and the United States has had an opportunity to review the notice, we will gladly produce a witness to address the properly designated topics or meet and confer with you to discuss any issues of concern regarding the notice.

Sincerely,

Adam J. Schwartz
Trial Attorney
Commercial Litigation Branch

cc (via electronic mail):

Amy H. Kearbey
David O. Crump
Amandeep S. Sidhu
Anthony N. Upshaw
McDermott, Will, and Emery

Gabriel Imperato
Broad and Cassel

Ralph E. Hopkins
United States Attorney's Office for the
  Middle District of Florida

Bruce J. Berman
Adam P. Schwartz
Carlton Fields

Christopher C. Casper
John R. Newcomer, Jr.
Elaine Stromgren
James, Hoyer, Newcomer & Smiljanich, P.A.

Scott C. Withrow
Jeffrey R. Holm
Terrence McQuade
Withrow, McQuade & Olsen, LLP

-2-

Marlan B. Wilbanks
Ty M. Bridges                                    Susan S. Gouinlock
Wilbanks & Bridges, LLP                          Susan Gouinlock Ltd., Law Offices

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA *ex.rel.*, and )
ELIN BAKLID-KUNZ, Relator )
                          )
      Plaintiffs )
                          )
      vs. )    CASE NO.: 6-09-CV-1002-ORL-31DAB
                          )
HALIFAX HOSPITAL MEDICAL CENTER )    JUDGE GREGORY A. PRESNELL
d/b/a HALIFAX HEALTH a/k/a HALIFAX )
COMMUNITY HEALTH SYSTEM a/k/a )    [FALSE CLAIMS ACT – QUI TAM]
HALIFAX MEDICAL CENTER and )
HALIFAX STAFFING, INC. )
                          )
      Defendants )
_____ )

## AMENDED NOTICE OF VIDEOTAPED 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Defendants Halifax Hospital Medical Center d/b/a Halifax Health a/k/a Halifax Community

Health System a/k/a Halifax Medical Center and Halifax Staffing, Inc. (collectively, "Halifax")[1]

will take the deposition upon oral examination of the government agencies for which Plaintiff

United States of America (the "USA") brings this lawsuit, including but not limited to the U.S.

Department of Health and Human Services ("DHHS") and/or Centers for Medicare & Medicaid

Services ("CMS").

---

[1]  Halifax Hospital Medical Center is a statutory governmental subdivision of the State of Florida, located in Daytona Beach, Florida.  More specifically, Halifax Hospital Medical Center is organized under the laws of the State of Florida as a special taxing district created pursuant to an act of the Florida Legislature.  Halifax Staffing, Inc. is the instrumentality by which Halifax Hospital Medical Center employs the individuals who work at Halifax Hospital Medical Center facilities.  Pursuant to an agreement between Halifax Staffing and Halifax Hospital Medical Center (commencing March 6, 1994), Halifax Staffing assumed the employment of the individuals who had up to that time been employed by the Halifax Hospital Medical Center district, and became the entity used by Halifax Hospital Medical Center to staff its facilities.  Halifax Hospital Medical Center pays its employees through a Halifax Staffing "sweep" account.

The deposition will take place on **Friday, May 18, 2012 at 10:00 a.m.** at 600 13th Street NW, Washington, D.C. 20005.  The deposition will be recorded by video and stenographic means before an officer authorized by law to administer oaths.  To the extent necessary and mutually agreed upon in advance between Halifax and the USA, the duration of this deposition may extend beyond the seven-hour time limit for a deposition day as set forth in the January 3, 2012 Amended Case Management and Scheduling Order (Dkt. 92).

The matters on which examination is requested are set forth in Schedule A, which is attached to and made part of this Notice.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), the USA shall designate from DHHS or CMS, or any other government agency as necessary, one or more of its officers, directors, managing agents, or other persons competent to testify on its behalf as to each of the matters set forth in Schedule A.  Pursuant to Federal Rule Civil Procedure 34, the USA shall also produce documents identified and described in Schedule B and not previously produced in response to Halifax's First Request for Production (the "Document Requests").

Dated: May 9, 2011                     Respectfully submitted,

                                       s/ Amandeep S. Sidhu_____
                                       Anthony N. Upshaw
                                       Fla. Bar. No. 0861091
                                       MCDERMOTT WILL & EMERY LLP
                                       333 Avenue of the Americas
                                       Suite 4500
                                       Miami, FL 33131
                                       Tel: (305) 358-3500
                                       Fax: (305) 347-6500
                                       Email: aupshaw@mwe.com

                                       T. Reed Stephens (admitted *pro hac vice*)
                                       David O. Crump (admitted *pro hac vice*)
                                       Amandeep S. Sidhu (admitted *pro hac vice*)
                                       MCDERMOTT WILL & EMERY LLP
                                       600 13th Street, NW
                                       Washington, DC 20005
                                       Tel: (202) 756-8000
                                       Fax: (202) 756-8087
                                       Email: trstephens@mwe.com
                                       Email: dcrump@mwe.com
                                       Email: asidhu@mwe.com

                                       *Counsel to Defendants Halifax Medical Center*
                                       *and Halifax Staffing, Inc.*

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.      The term "USA" shall refer to Plaintiff, United States of America, and all persons acting or purporting to act on its behalf, including but not limited to the U.S. Department of Health and Human Services ("DHHS") and/or Centers for Medicare & Medicaid Services ("CMS").

2.      The term "Complaint" shall refer to the Complaint in Intervention filed by the USA on November 4, 2011.

3.      The term "Defendants" shall collectively refer to and include all of the named Defendants in the Complaint, and all persons acting on their behalf.

4.      The term "Stark Law" shall refer to the Social Security Act § 1877 (the "Act"); 42 U.S.C. § 1395 *et seq.*

5.      The term "Fair Market Value" shall refer to the term as it is found in 42 C.F.R. § 411.351.

6.      The term "Bona Fide Employment Relationships" shall refer to the term as it is found in 42 C.F.R. § 411.357(c).

7.      The term "Indirect Compensation Arrangement" shall refer to the term as it is found in 42 C.F.R. § 411.354(c).

8.      The term "Designated Health Services" or "DHS" shall refer to the term as it is found in 42 C.F.R. § 411.351.

9.      The term "MGMA" shall refer to the Medical Group Management Association.

10.     The laws and regulations referenced in Subject No. 3 include, but are not limited to, Sections 1861, 1877(e)(2), 1877(h)(1), 1877(h)(3), 1877(h)(6), 1903(s) of the Act; and 42

C.F.R. §§ 410.10; 410.26; 410.27; 411.350-411.389; 411.351; 411.354(c)(2); 411.354(d);
411.355(a); 411.357(c); 411.357(d); 411.357(e); 411.357(l); and 411.357(p).

11.     The laws and regulations referenced in Subject No. 4 include, but are not limited

to, 42 U.S.C. § 1395 *et seq.*; 42 U.S.C. §§ 1395(e)(2), 42 C.F.R. §§ 411.357(c) and 1001.952(i)

(related to *bona fide* employment relationships); 42 U.S.C. § 1877(h)(1) (related to compensation

arrangements and remuneration); 42 U.S.C. § 1877(h)(3) and 42 C.F.R. § 411.351 (related to fair

market value); 42 C.F.R. §§ 411.354(c)(2) and 411.357(p) (related to indirect compensation

arrangements); 42 C.F.R. § 411.354(d) (related to unit-based compensation); and 42 U.S.C.

§§ 1320a-7b(1) and 1320a-7b(3) (related to kickbacks).

12.     The term "interpretation" shall refer to how the USA construes or understands the

factual meaning of particular terms or concepts related to the Stark Law, Anti-Kickback Statute,

or False Claims Act.  Halifax explicitly does not seek to depose the USA regarding information

and/or communications protected by the attorney-client privilege, work product doctrine, or

deliberative process privilege.

13.     The term "communication" shall mean the transmittal of information (in the form

of facts, ideas, inquiries, or otherwise) by any means, including, but not limited to, any meeting,

conversation, discussion, conference, correspondence, message, or other written or oral

transmission, exchange, or transfer of information in any form between two or more persons,

including in person or by telephone, facsimile, telegraph, telex, letter, e-mail or other medium.

14.     Unless the context clearly requires otherwise, or unless otherwise defined or

limited, all capitalized terms used herein shall have the meanings described by those terms used

in the Complaint, even if not capitalized in the Complaint.

**DESIGNATION OF SUBJECTS FOR RULE 30(b)(6) DEPOSITION**

1.    With respect to the USA's Complaint in Intervention:

    a.    Description of how the USA determines whether an instrumentality, such as Halifax Staffing, or a wholly-owned subsidiary, is a separate entity from its corporate parent for purposes of determining ownership of assets and other contractual rights.

    b.    Identification and explanation of existing and past federal or state government guidance on how the Florida Medicaid program precludes payment with federal funds for health care services that violate the Stark Law.

    c.    Identification and explanation of existing or past federal government guidance that a hospital provider that pays total compensation to physicians that exceeds actual dollar collections received for the health care services provided by the physician during any given fiscal year is acting in a manner that is "commercially unreasonable" or that the compensation is not based upon Fair Market Value.

    d.    Identification and explanation of existing and past federal government guidance regarding whether descriptions of physician duties and responsibilities, including but not limited to written descriptions of physician privileges, that are memorialized outside of the four corners of a written physician agreement can be considered as identifying a physician's terms of employment.

    e.    Identification and explanation of existing and past federal guidance on whether any point, such as the "95th percentile," on the range of physician

compensation covered by industry data services, including but not limited to MGMA, represents compensation that is *per se* not "commercially reasonable" or not based upon Fair Market Value.

2.     The USA's identification and factual explanation of the laws, regulations, policies, and guidance to the health care industry for, and justifications for any historical change in Medicare Program policy for, the following topics related to short stay admissions for the period January 1, 2000 through the present:

     a.     The medical necessity of admitting patients to hospitals for treatment;

     b.     Health care provider use of observation status for patients instead of admission to a hospital;

     c.     The appropriate uses of Condition Code 44 by hospitals;

     d.     The use of InterQual, including but not limited to, for elective surgical procedures, and other commercial services by hospitals for determining whether to admit patients for health care services; and

     e.     Health care provider use and reliance on Medicare "In-Patient Only" designations for determining whether to admit patients for health care procedures performed at a hospital.

3.     The USA's identification and factual explanation of the following topics related to the Stark Law:

     a.     How the Fair Market Value exception is to be applied to employed or non-employed physicians.

     b.     How a health care provider's profit margin is used for purposes of calculating a physician's compensation.

c. How a health care provider's operating margin is used for purposes of calculating a physician's compensation.

d. How comparative salary data from third-party entities, including but not limited to MGMA, can be considered when assessing a compensation arrangement for purposes of determining Fair Market Value.

e. Factors that may be considered by an entity providing Designated Health Services ("DHS") when recruiting an employed and/or non-employed physicians, including but not limited to whether a DHS entity can take into consideration a physician's gender, race, religion, or age with respect to serving a particular patient population.

f. Factors that may be considered in what constitutes total compensation for an employed physician, including but not limited to whether the USA considers a DHS entity's administrative expenses in determining a physician's total compensation.

g. Laws, regulations, policies and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed emergency room physicians and their services (as referenced in Schedule A);

h. Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed psychiatrists and their services (as referenced in Schedule A);

i.     Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed neurosurgeons and their services (as referenced in Schedule A);

j.     Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed medical oncologists and their services (as referenced in Schedule A);

k.     Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed oncological surgeons (as referenced in Schedule A);

l.     Description of how the elements of the Bona Fide Employment Relationship exception were developed and promulgated as statutory or regulatory guidance to health care providers (as referenced in Schedule A);

m.     Laws, regulations, policies, and guidance to the health care industry describing how to determine when physician compensation is based on the volume or value of referrals for both employed and non-employed physicians (as referenced in Schedule A);

n.     Laws, regulations, policies, and guidance to the health care industry on why Medicaid does not pay for health care services that violate the Stark Law (as referenced in Schedule A);

o.   Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to Designated Health Services (as referenced in Schedule A); and

p.   Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to the determination of the Fair Market Value of compensation for neurosurgeon, medical oncology, and oncological surgical services (as referenced in Schedule A).

4.   The USA's factual interpretation of laws, regulations, policies, and guidance to the health care industry governing how to determine whether a provider has offered or has solicited an inducement in exchange for actual or anticipated referrals (as referenced in Schedule A).

5.   The handling, distribution, review, use, and sequestering of privileged documents that are the subject of Halifax's Motion for a Preliminary Injunction and Other Equitable Relief filed with the Court on December 23, 2011 (Dkt. No. 84).

## **SCHEDULE B**

The applicable definitions and instructions set forth in the Document Requests are hereby incorporated by reference in this Schedule B.

1.        Please produce all documents identified in Schedule A and not previously produced in response to Halifax's First Requests for Production.

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2012 a copy of the foregoing was served on the counsel listed below via first class U.S. mail and/or e-mail:

### VIA FIRST CLASS U.S. MAIL AND ELECTRONIC EMAIL

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
Civil Fraud Section
Commercial Litigation Branch
U.S. Department of Justice
601 D Street, NW
Room 9537
Washington, DC 20004
(202) 514-6831

### VIA E-MAIL

Ralph E. Hopkins
U.S. Department of Justice
U.S. Attorney's Office
Middle District of Florida
501 W. Church St., Suite 300
Orlando, FL 32805
(407) 648-7562

                                    s/ Amandeep S. Sidhu
                                    Amandeep S. Sidhu

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA *ex.rel.*, and )
ELIN BAKLID-KUNZ, Relator )
                                                              )
    Plaintiffs )
                                                              )
    vs. )      CASE NO.: 6-09-CV-1002-ORL-31DAB
                                                              )
HALIFAX HOSPITAL MEDICAL CENTER )   JUDGE GREGORY A. PRESNELL
d/b/a HALIFAX HEALTH a/k/a HALIFAX )
COMMUNITY HEALTH SYSTEM a/k/a )   [FALSE CLAIMS ACT – QUI TAM]
HALIFAX MEDICAL CENTER and )
HALIFAX STAFFING, INC. )
                                                               )
    Defendants )
_____)

### SECOND AMENDED NOTICE OF VIDEOTAPED 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Defendants Halifax Hospital Medical Center d/b/a Halifax Health a/k/a Halifax Community

Health System a/k/a Halifax Medical Center and Halifax Staffing, Inc. (collectively, "Halifax")[1]

will take the deposition upon oral examination of the government agencies for which Plaintiff

United States of America (the "USA") brings this lawsuit, including but not limited to the U.S.

Department of Health and Human Services ("DHHS") and/or Centers for Medicare & Medicaid

Services ("CMS").

---

[1]  Halifax Hospital Medical Center is a statutory governmental subdivision of the State of Florida, located in Daytona Beach, Florida. More specifically, Halifax Hospital Medical Center is organized under the laws of the State of Florida as a special taxing district created pursuant to an act of the Florida Legislature. Halifax Staffing, Inc. is the instrumentality by which Halifax Hospital Medical Center employs the individuals who work at Halifax Hospital Medical Center facilities. Pursuant to an agreement between Halifax Staffing and Halifax Hospital Medical Center (commencing March 6, 1994), Halifax Staffing assumed the employment of the individuals who had up to that time been employed by the Halifax Hospital Medical Center district, and became the entity used by Halifax Hospital Medical Center to staff its facilities. Halifax Hospital Medical Center pays its employees through a Halifax Staffing "sweep" account.

The deposition will take place on **Wednesday, June 6, 2012 at 10:00 a.m.** at 600 13th Street NW, Washington, D.C. 20005. The deposition will be recorded by video and stenographic means before an officer authorized by law to administer oaths. To the extent necessary and mutually agreed upon in advance between Halifax and the USA, the duration of this deposition may extend beyond the seven-hour time limit for a deposition day as set forth in the January 3, 2012 Amended Case Management and Scheduling Order (Dkt. 92).

The matters on which examination is requested are set forth in Schedule A, which is attached to and made part of this Notice. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the USA shall designate from DHHS or CMS, or any other government agency as necessary, one or more of its officers, directors, managing agents, or other persons competent to testify on its behalf as to each of the matters set forth in Schedule A. Pursuant to Federal Rule Civil Procedure 34, the USA shall also produce documents identified and described in Schedule B and not previously produced in response to Halifax's First Request for Production (the "Document Requests").

Dated: May 22, 2011

Respectfully submitted,

s/ Amandeep S. Sidhu
Anthony N. Upshaw
Fla. Bar. No. 0861091
MCDERMOTT WILL & EMERY LLP
333 Avenue of the Americas
Suite 4500
Miami, FL 33131
Tel: (305) 358-3500
Fax: (305) 347-6500
Email: aupshaw@mwe.com

T. Reed Stephens (admitted *pro hac vice*)
David O. Crump (admitted *pro hac vice*)
Amandeep S. Sidhu (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC 20005
Tel: (202) 756-8000
Fax: (202) 756-8087
Email: trstephens@mwe.com
Email: dcrump@mwe.com
Email: asidhu@mwe.com

*Counsel to Defendants Halifax Medical Center
and Halifax Staffing, Inc.*

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.      The term "USA" shall refer to Plaintiff, United States of America, and all persons acting or purporting to act on its behalf, including but not limited to the U.S. Department of Health and Human Services ("DHHS") and/or Centers for Medicare & Medicaid Services ("CMS").

2.      The term "Complaint" shall refer to the Complaint in Intervention filed by the USA on November 4, 2011.

3.      The term "Defendants" shall collectively refer to and include all of the named Defendants in the Complaint, and all persons acting on their behalf.

4.      The term "Stark Law" shall refer to the Social Security Act § 1877 (the "Act"); 42 U.S.C. § 1395 *et seq.*

5.      The term "Fair Market Value" shall refer to the term as it is found in 42 C.F.R. § 411.351.

6.      The term "Bona Fide Employment Relationships" shall refer to the term as it is found in 42 C.F.R. § 411.357(c).

7.      The term "Indirect Compensation Arrangement" shall refer to the term as it is found in 42 C.F.R. § 411.354(c).

8.      The term "Designated Health Services" or "DHS" shall refer to the term as it is found in 42 C.F.R. § 411.351.

9.      The term "MGMA" shall refer to the Medical Group Management Association.

10.     The laws and regulations referenced in Subject No. 3 include, but are not limited to, Sections 1861, 1877(e)(2), 1877(h)(1), 1877(h)(3), 1877(h)(6), 1903(s) of the Act; and 42

- 4 -

C.F.R. §§ 410.10; 410.26; 410.27; 411.350-411.389; 411.351; 411.354(c)(2); 411.354(d);
411.355(a); 411.357(c); 411.357(d); 411.357(e); 411.357(l); and 411.357(p).

11.     The laws and regulations referenced in Subject No. 4 include, but are not limited
to, 42 U.S.C. § 1395 *et seq.*; 42 U.S.C. §§ 1395(e)(2), 42 C.F.R. §§ 411.357(c) and 1001.952(i)
(related to *bona fide* employment relationships); 42 U.S.C. § 1877(h)(1) (related to compensation
arrangements and remuneration); 42 U.S.C. § 1877(h)(3) and 42 C.F.R. § 411.351 (related to fair
market value); 42 C.F.R. §§ 411.354(c)(2) and 411.357(p) (related to indirect compensation
arrangements); 42 C.F.R. § 411.354(d) (related to unit-based compensation); and 42 U.S.C.
§§ 1320a-7b(1) and 1320a-7b(3) (related to kickbacks).

12.     The term "interpretation" shall refer to how the USA construes or understands the
factual meaning of particular terms or concepts related to the Stark Law, Anti-Kickback Statute,
or False Claims Act.  Halifax explicitly does not seek to depose the USA regarding information
and/or communications protected by the attorney-client privilege, work product doctrine, or
deliberative process privilege.

13.     The term "communication" shall mean the transmittal of information (in the form
of facts, ideas, inquiries, or otherwise) by any means, including, but not limited to, any meeting,
conversation, discussion, conference, correspondence, message, or other written or oral
transmission, exchange, or transfer of information in any form between two or more persons,
including in person or by telephone, facsimile, telegraph, telex, letter, e-mail or other medium.

14.     Unless the context clearly requires otherwise, or unless otherwise defined or
limited, all capitalized terms used herein shall have the meanings described by those terms used
in the Complaint, even if not capitalized in the Complaint.

## DESIGNATION OF SUBJECTS FOR RULE 30(b)(6) DEPOSITION

1.      With respect to the USA's Complaint in Intervention:

      a.      Description of how the USA determines whether an instrumentality, such as Halifax Staffing, or a wholly-owned subsidiary, is a separate entity from its corporate parent for purposes of determining ownership of assets and other contractual rights.

      b.      Identification and explanation of existing and past federal or state government guidance on how the Florida Medicaid program precludes payment with federal funds for health care services that violate the Stark Law.

      c.      Identification and explanation of existing or past federal government guidance that a hospital provider that pays total compensation to physicians that exceeds actual dollar collections received for the health care services provided by the physician during any given fiscal year is acting in a manner that is "commercially unreasonable" or that the compensation is not based upon Fair Market Value.

      d.      Identification and explanation of existing and past federal government guidance regarding whether descriptions of physician duties and responsibilities, including but not limited to written descriptions of physician privileges, that are memorialized outside of the four corners of a written physician agreement can be considered as identifying a physician's terms of employment.

      e.      Identification and explanation of existing and past federal guidance on whether any point, such as the "95th percentile," on the range of physician

- 6 -

compensation covered by industry data services, including but not limited to MGMA, represents compensation that is *per se* not "commercially reasonable" or not based upon Fair Market Value.

2.   The USA's identification and factual explanation of the laws, regulations, policies, and guidance to the health care industry for, and justifications for any historical change in Medicare Program policy for, the following topics related to short stay admissions for the period January 1, 2000 through the present:

   a.   The medical necessity of admitting patients to hospitals for treatment;

   b.   Health care provider use of observation status for patients instead of admission to a hospital;

   c.   The appropriate uses of Condition Code 44 by hospitals;

   d.   The use of InterQual, including but not limited to, for elective surgical procedures, and other commercial services by hospitals for determining whether to admit patients for health care services; and

   e.   Health care provider use and reliance on Medicare "In-Patient Only" designations for determining whether to admit patients for health care procedures performed at a hospital.

3.   The USA's identification and factual explanation of the following topics related to the Stark Law:

   a.   How the Fair Market Value exception is to be applied to employed or non-employed physicians.

   b.   How a health care provider's profit margin is used for purposes of calculating a physician's compensation.

- 7 -

c.  How a health care provider's operating margin is used for purposes of calculating a physician's compensation.

d.  How comparative salary data from third-party entities, including but not limited to MGMA, can be considered when assessing a compensation arrangement for purposes of determining Fair Market Value.

e.  Factors that may be considered by an entity providing Designated Health Services ("DHS") when recruiting an employed and/or non-employed physicians, including but not limited to whether a DHS entity can take into consideration a physician's gender, race, religion, or age with respect to serving a particular patient population.

f.  Factors that may be considered in what constitutes total compensation for an employed physician, including but not limited to whether the USA considers a DHS entity's administrative expenses in determining a physician's total compensation.

g.  Laws, regulations, policies and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed emergency room physicians and their services (as referenced in Schedule A);

h.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed psychiatrists and their services (as referenced in Schedule A);

i. Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed neurosurgeons and their services (as referenced in Schedule A);

j. Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed medical oncologists and their services (as referenced in Schedule A);

k. Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed oncological surgeons (as referenced in Schedule A);

l. Description of how the elements of the Bona Fide Employment Relationship exception were developed and promulgated as statutory or regulatory guidance to health care providers (as referenced in Schedule A);

m. Laws, regulations, policies, and guidance to the health care industry describing how to determine when physician compensation is based on the volume or value of referrals for both employed and non-employed physicians (as referenced in Schedule A);

n. Laws, regulations, policies, and guidance to the health care industry on why Medicaid does not pay for health care services that violate the Stark Law (as referenced in Schedule A);

o.  Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to Designated Health Services (as referenced in Schedule A); and

p.  Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to the determination of the Fair Market Value of compensation for neurosurgeon, medical oncology, and oncological surgical services (as referenced in Schedule A).

4.  The USA's factual interpretation of laws, regulations, policies, and guidance to the health care industry governing how to determine whether a provider has offered or has solicited an inducement in exchange for actual or anticipated referrals (as referenced in Schedule A).

5.  The handling, distribution, review, use, and sequestering of privileged documents that are the subject of Halifax's Motion for a Preliminary Injunction and Other Equitable Relief filed with the Court on December 23, 2011 (Dkt. No. 84).

## **SCHEDULE B**

The applicable definitions and instructions set forth in the Document Requests are hereby incorporated by reference in this Schedule B.

1.    Please produce all documents identified in Schedule A and not previously produced in response to Halifax's First Requests for Production.

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2012 a copy of the foregoing was served on the counsel

listed below via first class U.S. mail and/or e-mail:

### VIA FIRST CLASS U.S. MAIL AND E-MAIL

Adam Schwartz, Esq.
Patricia Fitzgerald, Esq.
Civil Fraud Section
Commercial Litigation Branch
U.S. Department of Justice
601 D Street, NW
Room 9537
Washington, DC 20004
(202) 514-6831

### VIA E-MAIL

Ralph E. Hopkins
U.S. Department of Justice
U.S. Attorney's Office
Middle District of Florida
501 W. Church St., Suite 300
Orlando, FL 32805
(407) 648-7562

Christopher C. Casper
John R. Newcomer, Jr.
Elaine Strongren
James, Hoyer, Newcomer &
Smiljanich, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609
(813) 397-2300

Susan S. Gouinlock
Susan Gouinlock Ltd., Law Offices
2735 Briarlake Woods
Suite 100
Atlanta, GA 30345
(404) 320-9117

Terrence McQuade
Scott C. Withrow
Jeffrey R. Holm
Withrow, McQuade & Olsen, LLP
3379 Peachtree Road, NE, Suite 970
Atlanta, GA 30326
(404) 814-0037

Marlan B. Wilbanks
Ty M. Bridges
Wilbanks & Bridges, LLP
3414 Peachtree Road, NE, Suite 1075
Atlanta, GA 30326
(404) 842-1075

s/ Amandeep S. Sidhu
Amandeep S. Sidhu

# EXHIBIT I

04/22/2005  11:13   3862264575                    HCHS CORP FINANCE                    PAGE  01

**Internal Revenue Service**                    Department of the Treasury

Washington, DC 20224

Person to Contact:
    Liz Mayer
Telephone Number:
    (202) 622-6467
Refer Reply to:
    CP:E:EO:T:1
Date:
    December 13, 1995

Halifax Staffing, Inc.
303 N. Clyde Morris Blvd.
Daytona Beach, FL  32114

Employer Identification Number: 59-3222299
Key District: Southeast (Baltimore, MD)
Accounting Period Ending: September 30
Foundation Status Classification: 509(a)(3)
Form 990 Required: No

Dear Applicant:

Based on the information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from federal income tax under section 501(a) of the Internal Revenue Code as an organization described in section 501(c)(3) of the Code.

We have further determined that you are not a private foundation within the meaning of section 509(a) of the Code, because you are an organization described in the section(s) indicated above.

If your sources of support, or your purposes, character, or methods of operation change, please let your key district know so that office can consider the effect of the change on your exempt status. In the case of an amendment to your organizational document or bylaws, please send a copy of the amended document or bylaws to your key district. Also, you should inform your key district office of all changes in your name or address.

Unless you are an instrumentality of a state or a political subdivision of a state, or otherwise specifically excepted, you are liable for the social security and medicare taxes under the Federal Insurance Contributions Act (FICA) on remuneration of $100 or more you pay to each of your employees during a calendar year. You are not liable for the tax imposed under the Federal Unemployment Tax Act.

04/22/2005  11:13    3862264575              HCHS CORP FINANCE                    PAGE  02

-2-

Halifax Staffing, Inc.


If you are a wholly-owned instrumentality of a state or political subdivision of a state, you are liable for FICA taxes with regard to services included under an agreement entered into under section 218 of the Social Security Act.  (For information in this regard, you may contact your state social security administrator).  Wages of any employees not covered under a section 218 agreement, but who were hired after March 31, 1986, are subject to the medicare portion of the FICA taxes.  Finally, with regard to services performed after July 1, 1991, the wages of any employees not covered under a section 218 agreement and who are not members of a retirement system of the state, political subdivision, or instrumentality, are subject to the social security and medicare taxes.

Any questions you may have concerning your liability for FICA or FUTA taxes should be addressed to the Internal Revenue Service, Office of the Associate Chief Counsel (Employee Benefits and Exempt Organizations), CC:EBEO, Room 5213, P.O. Box 7604, Ben Franklin Station, Washington, D.C. 20044.

You are not required to file Form 990, Return of Organization Exempt From Income Tax, since you are exempt from tax under section 501(a) of the Code and you are treated as an "affiliate of a governmental unit" pursuant to Revenue Procedure 95-48, 1995-47 I.R.B. 13.

You are not required to file federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code.  If you are subject to this tax, you must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return.  In this letter we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513.

You are required to make available a copy of your exemption application, any supporting documents, and this exemption letter.  Failure to make these documents available for public inspection may subject you to a penalty of $10 per day for each day there is a failure to comply (up to a maximum of $5,000 in the case of an annual return).  See Internal Revenue Service Notice 88-120, 1988-2 C.B. 454, for additional information.

-3-

**Halifax Staffing, Inc.**

Since you are not a private foundation, you are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other federal excise taxes. If you have questions about excise, employment, or other federal taxes, contact your key district office.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of Code sections 2055, 2106, and 2522.

Contribution deductions are allowable to donors only to the extent that their contributions are gifts, with no consideration received. Ticket purchases and similar payments in conjunction with fund-raising events may not necessarily qualify as fully deductible contributions, depending on the circumstances. If your organization conducts fund-raising events such as benefit dinners, shows, membership drives, etc., where something of value is received in return for payments, you can help your contributors avoid difficulties with their income tax returns by assisting them in determining the proper tax treatment of their contributions. To do this you should, in advance of the event, determine the fair market value of the benefit received and state it in your fund-raising materials such as solicitations, tickets and receipts in such a way that they can determine how much is deductible and how much is not. To assist you in this, the Service has issued Publication 1391, Deductibility of Payments Made to Organizations Conducting Fund-Raising Events. You may obtain copies of Publication 1391 from your key district office.

By this letter, we inform bond issuing authorities that, in issuing this ruling letter, the Service has not considered the effect of bond financing on your exempt status. You may obtain a confirmation letter ruling on the effect of any future bond financing on your exempt status under section 501(c)(3) of the Code. Please make your request far enough in advance of your beginning a bond financing program to enable the Service to issue a ruling. You should send your confirmation letter request, along with the correct user fee, to the Assistant Commissioner (Employee Plans and Exempt Organizations), Attention: CP:E:EO, P.O. Box 120, Ben Franklin Station, Washington, D.C. 20044.

-4-

Halifax Staffing, Inc.


You need an employer identification number even if you have no employees.  Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

We are informing your key district office of this ruling. Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any immediate questions about this ruling, please contract the person whose name and telephone number are shown in the heading of this letter.  For other matters, including questions concerning reporting requirements, please contact your key district office.

Sincerely yours,

(signed) Marvin Friedlander

Marvin Friedlander
Chief, Exempt Organizations
Technical Branch 1


Enclosure:  Publication 1771