UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKLID-KUNZ,<br><br>Plaintiff,<br><br>v.<br><br>HALIFAX HOSP. MED. CTR, et al.<br><br>Defendant. | Civ. Act. No. 6:09-CV-1002-ORL-31DAB<br><br>JUDGE Gregory A. Presnell |

**PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF UNITED STATES TO DESIGNATE A 30(b)(6) WITNESS**

The United States opposes Defendants Halifax Hospital Medical Center and Halifax Staffing, Inc.'s ("Halifax" or "Defendants") Motion to Compel the United States to Designate a 30(b)(6) Witness. The United States has already produced a witness to testify on Topic 2 and provided agreed-upon declarations sufficient to respond to Topic 5 of Defendants' Second Amended 30(b)(6) Notice to the United States ("30(b)(6) Notice"). The United States has further agreed to produce a witness to testify on Topic 1 (with the exception of one subpart) and on many of the subjects from Topic 3, provided that they do not seek the Government's internal work product deliberations. Accordingly, the only topics as to which the United States has objected to providing a 30(b)(6) deponent are Topic 1(a), parts of Topic 3, and Topic 4. These topics improperly seek legal testimony from an attorney. It is well established that such legal testimony is not the appropriate subject of a 30(b)(6) deposition. Notably, Halifax has not argued that the United States has misunderstood these topics, or provided any support for their

impermissible attempt to obtain legal testimony. These portions of Halifax's 30(b)(6) Notice are also objectionable because they are either irrelevant (in the case of subtopic 1(a)) or overbroad (in the case of subparts 3(g)-(k) and (m)-(p) and Topic 4). Because the United States has agreed to provide testimony on all of the Topics that are proper for a 30(b)(6) deposition, and should not be required to designate an attorney to provide purely legal testimony, Halifax's motion should be denied.

## ARGUMENT

Despite Halifax's statements to the contrary (*see* Defendants' Motion to Compel the United States to Designate a 30(b)(6) Witness ("Motion to Compel"), at 2-3), it has not engaged in "best efforts" to resolve the parties' issues with respect to the deposition of the United States in this matter. On April 13, 2012, Halifax issued a 30(b)(6) notice to the United States. After the United States objected to the topics as noticed (*see* letter from P. Fitzgerald to T. Stephens (Apr. 27, 2012), attached as Exhibit 1), Halifax issued an amended notice on May 9, 2012.[1] However, the amended notice did not address the United States' fundamental concerns that Halifax's notice included topics seeking protected legal testimony.[2]

As noted, other than parts of Topics 1 and 3 and Topic 4, the United has complied with the notice. The United States has already produced a witness as to one topic, agreed to produce witnesses on a number of other topics, provided declarations in lieu of testimony on yet another topic, and has attempted to work with Halifax to resolve the remaining issues. What the United States has simply objected to is provide an attorney to answer purely legal questions on the

---

[1] Halifax argues that the United States should have filed a motion for a protective order. *See* Motion to Compel, at 5-6. Because the United States is willing to provide witnesses to testify to non-privileged and non-legal topics, it has no reason to seek a protective order at this time.

[2] Halifax issued a Second Amended 30(b)(6) Notice on May 22, 2012, to cure procedural deficiencies in its original and first amended 30(b)(6) deposition notices.

meaning of certain statutes and regulations identified by the Defendants. Such testimony is clearly improper: "[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories . . . ." *JP Morgan Chase Bank v. Liberty Mutual Insurance Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002). In particular, the interpretation of statutes and regulations is not an appropriate subject matter for 30(b)(6) depositions. *See SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *3 (E.D. Pa. Mar. 23, 2004). Therefore, the United States should not be compelled to designate a witness on these topics, which are more appropriately addressed, if at all, through written interrogatories.

   A. Topic 1

      1. *Subparts (b)-(e)*

Topic 1, subparts (b)-(e), of Halifax's Second Amended 30(b)(6) Notice seek testimony concerning certain Government guidance on various topics "with respect to the USA's complaint in intervention."[3] Out of an abundance of caution, the United States objected that it would not provide a witness to testify as to the United States' internal deliberations regarding why it filed

---

[3] Topic 1 states:
    With respect to the USA's Complaint in Intervention:
    a. Description of how the USA determines whether an instrumentality, such as Halifax Staffing, or a wholly-owned subsidiary, is a separate entity from its corporate parent for purposes of determining ownership of assets and other contractual rights.
    b. Identification and explanation of existing and past federal or state government guidance on how the Florida Medicaid program precludes payment with federal funds for health care services that violate the Stark Law.
    c. Identification and explanation of existing or past federal government guidance that a hospital provider that pays total compensation to physicians that exceeds actual dollar collections received for the health care services provided by the physician during any given fiscal year is acting in a manner that is "commercially unreasonable" or that the compensation is not based upon Fair Market Value.
    d. Identification and explanation of existing and past federal government guidance regarding whether descriptions of physician duties and responsibilities, including but not limited to written descriptions of physician privileges, that are memorialized outside of the four corners of a written physician agreement can be considered as identifying a physician's terms of employment.
    e. Identification and explanation of existing and past federal guidance on whether any point, such as the "95th percentile," on the range of physician compensation covered by industry data services, including but not limited to MGMA, represents compensation that is per se not "commercially reasonable" or not based upon Fair Market Value.

the instant action. The United States was confused by Halifax's reference in the introductory clause to "the USA's Complaint" and whether this might imply that Halifax was seeking not only testimony on any guidance issued on the listed topics but also on the Government's internal deliberations regarding its decision to file a complaint in this case. During the parties' meet and confer regarding these subtopics, Halifax refused to clarify the information it sought in these awkwardly worded subtopics. To the extent that Halifax seeks a witness to testify on any external guidance promulgated on identified issues, the United States will produce a witness.

As a general rule, a party may not obtain discovery on any privileged matter. Fed. R. Civ. P. 26(b)(3). Federal Rule of Civil Procedure 26(b)(3)(A) provides protection from discovery for "documents . . . that are prepared for trial by or for another party or its representative . . . ." Investigative conclusions and recommendations, as well as legal interpretations, of the United States made during the course of an investigation are covered by the work-product privilege and are therefore not subject to discovery. *SEC v. SBM Investment Certificates, Inc.*, 2007 WL 609888, \*24 (D. Md. Feb. 23, 2007) (30(b)(6) topics seeking "the results of the SEC's present investigation . . . would require disclosure of the opinions [and] strategy" of the attorneys and are cause for a protective order); *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 1992 WL 208284, \*11-14 (S.D.N.Y. Aug. 18, 1992) (30(b)(6) notice served on United States requesting testimony on facts concerning or supporting the allegations in the complaint is improper because it seeks information protected by the attorney-client privilege).

In sum, while the scope of Halifax's request is unclear, and Halifax has declined to clarify it, to the extent that Halifax seeks testimony on external guidance rather than internal deliberations, the United States does not object to producing a witness on these subparts.

2. *Subpart (a)*

Subpart (a) of Topic 1 seeks the following testimony: "With respect to the USA's Complaint in Intervention . . . [d]escription of how the USA determines whether an instrumentality, such as Halifax Staffing, or a wholly-owned subsidiary, is a separate entity from its corporate parent for purposes of determining ownership of assets and other contractual rights."  In the parties' discussions, and in Halifax's Motion to Compel (*see* Motion to Compel pp. 8-9), Halifax stated that this subpart is intended to obtain testimony from an employee of the Treasury Department to address the corporate structure of Halifax.  This testimony would be improper because it clearly seeks legal testimony.  Furthermore, the very request is baffling since corporate status is a question of state law.

Testimony that seeks legal conclusions is improper.  A number of courts have ruled that legal contentions are not the proper subject for Rule 30(b)(6) discovery.  *See FTC v. Cyberspy Software, LLC*, 2009 WL 2386137, at *2-5 (M.D. Fla. July 31, 2009) (holding various legal topics to be improper for a 30(b)(6) deposition); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order to prevent Rule 30(b)(6) deposition inquiry into legal conclusions because producing responses to legal questions is "overbroad, inefficient, and unreasonable"); *United States v. Pepper's Steel & Alloys, Inc.,* 132 F.RD. 695, 699 (S.D. Fla. 1990) (30(b)(6) inquiry into interpretation of law "presents a real nonspeculative risk of revealing the thoughts of [a party's] counsel as well as the deponent").

Because, as Halifax has admitted, it is seeking testimony on the legal standard for determining whether the defendants in this case are separate corporate entities, the motion to compel the requested testimony should be denied.

B.  Topic 2

On June 28, 2012, the United States produced a 30(b)(6) witness to testify as to Topic 2. The United States' witness, Daniel Duvall, testified for 4 hours, and will continue his testimony at a later date. Accordingly, the United States has fully complied with the requested topic.

C.  Topic 3

Topic 3 generally seeks testimony regarding the "identification and factual explanation" of various laws, regulations, and other guidance related to the Stark law, 42 U.S.C. § 1395nn.[4]

---

[4] Topic 3 provides in full:

The USA's identification and factual explanation of the following topics related to the Stark Law
   a.  How the Fair Market Value exception is to be applied to employed or non-employed physicians.
   b.  How a health care provider's profit margin is used for purposes of calculating a physician's compensation.
   c.  How a health care provider's operating margin is used for purposes of calculating a physician's compensation.
   d.  How comparative salary data from third-party entities, including but not limited to MGMA, can be considered when assessing a compensation arrangement for purposes of determining Fair Market Value.
   e.  Factors that may be considered by an entity providing Designated Health Services ("DHS") when recruiting an employed and/or non-employed physicians, including but not limited to whether a DHS entity can take into consideration a physician's gender, race, religion, or age with respect to serving a particular patient population.
   f.  Factors that may be considered in what constitutes total compensation for an employed physician, including but not limited to whether the USA considers a DHS entity's administrative expenses in determining a physician's total compensation.
   g.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed emergency room physicians and their services (as referenced in Schedule A);
   h.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed psychiatrists and their services (as referenced in Schedule A);
   i.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed neurosurgeons and their services (as referenced in Schedule A);
   j.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed medical oncologists and their services (as referenced in Schedule A);
   k.  Laws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed oncological surgeons and their services (as referenced in Schedule A);
   l.  Description of how the elements of the Bona Fide Employment Relationship exception were developed and promulgated as statutory or regulatory guidance to health care providers (as referenced in Schedule A).
   m.  Laws, regulations, policies, and guidance to the health care industry describing how to determine when physician compensation is based on the volume or value of referrals for both employed and non-employed physicians (as referenced in Schedule A);

The United States notified Halifax on June 1, 2012, that it would produce a witness in August to testify on Topic 3, subtopics (a)-(f) and (l). The witness is not available before August because of staffing concerns, including two employees who are out of the office on extended medical leave.

With respect to subtopics (g)-(k) and (m)-(p) of Topic 3, however, the United States has objected to the requested testimony because, like subtopic 1(a), they impermissibly seek purely legal testimony. The subtopics of Topic 3 that the United States objects to all seek testimony on the "[l]aws, regulations, policies and guidance . . . (as referenced in Schedule A)." However, Schedule A is limited to a list of certain laws and regulations. Thus, subtopics (g)-(k) and (m)-(p) improperly seek legal testimony.

This conclusion is not altered by the fact that Halifax has prefaced these requests by saying that it is seeking a "factual explanation" of these laws and regulations. Insistence that a party is seeking only facts where the notice does not request testimony on underlying facts does not cure the defect. *EEOC v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, *5 (D. Md. June 22, 2010). Moreover, the United States is unclear as to what it even means to seek the "factual explanation" of the listed laws and regulations. Notably, when the United States sought clarification from Halifax whether it was in fact seeking legal testimony, Halifax stated that the topic was clear as drafted and refused to elaborate further.

Underscoring the improper nature of the subtopics to which the United States has objected is the fact that the United States would be required to designate an attorney to address

---

n. Laws, regulations, policies, and guidance to the health care industry on why Medicaid does not pay for health care services that violate the Stark Law (as referenced in Schedule A);
o. Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to Designated Health Services (as referenced in Schedule A); and
p. Laws, regulations, policies, and guidance to the health care industry on how "billing incident to" services are relevant to the determination of the Fair Market Value of compensation for neurosurgeon, medical oncology, and oncological surgical services (as referenced in Schedule A).

them.  30(b)(6) depositions that seek the testimony of counsel are disfavored.  Numerous federal courts have recognized that under circumstances such as these, the party seeking the Rule 30(b)(6) deposition was, in effect, improperly attempting to obtain testimony of counsel.  *See FTC v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *9-10 (E.D. La., Jun. 25, 2004) (holding Rule 30(b)(6) deposition of FTC improper given that FTC attorneys and persons working under their direction conducted investigation that was subject of deposition notice); *SEC v. Buntrock*, 217 F.R.D. 441, 443, 445 (N.D. Ill. 2003) (30(b)(6) notice improper because it sought "if not the deposition of opposing counsel, then the practical equivalent thereof"); *SEC v. Rosenfeld*, 1997 WL 576021, at *2 (S.D.N.Y. Sept. 16, 1997) (same); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) (holding same regarding EEOC litigation allegations).  Here, no one but an attorney can provide testimony on how the listed laws and regulations should be interpreted.  This is the very type of discovery which the courts have held should be conducted, if at all, through interrogatories and not depositions.

In addition to improperly seeking legal testimony, the objectionable topics are also overbroad.  Halifax relies heavily on the recent decision in *SEC v. Merkin*.  2012 U.S. Dist. LEXIS 80922 (S.D. Fla. June 12, 2012).  While that case permitted the 30(b)(6) deposition of the SEC to proceed, it did not permit the deposition on all of the requested topics, and that case in fact would urge a result contrary to the one Halifax seeks here.  In fact, eight of the noticed topics were deemed "irrelevant and/or unduly broad," and the SEC was not required to produce a witness on those topics.  *Id.* at *29.  Many of Halifax's topics suffer from the same problems as the defendant's in *Merkin*.  For example, the defendant in *Merkin* requested testimony on "[a]ny and all of the SEC's public statements or positions, including, but not limited to pronouncements, guidance, Rules, Regulations, No-Action Letters, and related comments,

concerning restrictions, comments, approvals, and/or criticisms by the SEC of the Pink Sheets . . . ." *Id.* at *9.

Halifax's requests are similarly overbroad. For example, subpart 3(g) seeks, "The USA's identification and factual explanation of the following topics related to the Stark Law: . . . [l]aws, regulations, policies, and guidance to the health care industry on how a provider should measure Fair Market Value for employed and non-employed emergency room physicians and their services (as referenced in Schedule A)." Second Amended Notice ¶ 3(g). The other subparts suffer from the same lack of any reasonably specificity.

   D.  Topic 4

Topic 4 requests testimony on "The USA's factual interpretation of laws, regulations, policies, and guidance to the health care industry governing how to determine whether a provider has offered or has solicited an inducement in exchange for actual or anticipated referrals (as referenced in Schedule A)." Once again, this topic is objectionable because it improperly seeks legal conclusions and is overbroad.

As discussed above, Schedule A only lists laws and regulations and thus Halifax improperly seeks legal testimony interpreting these laws and regulations. As with the objectionable subparts of Topic 3, this conclusion is not defeated by the fact that Halifax states nonsensically that it seeks only "the USA's factual explanation" of these laws and regulations. Once again, during the parties' meet and confer sessions, Halifax never disputed the United States' understanding of this topic or explained why it has a right to seek purely legal testimony that would require the deposition of an attorney. Additionally, like the objectionable subtopics of Topic 3, Topic 4 lacks necessary specificity and is akin to the topics rejected as over broad in *Merkin*. 2012 U.S. Dist. LEXIS 80922, *9-10, 29. For these reasons, the United States should

not be compelled to designate a witness to testify to Topic 4 of Halifax's Second Amended 30(b)(6) Notice.

    E.  Topic 5

Pursuant to an agreement between Halifax and the United States, the United States provided Halifax with declarations in lieu of testimony on Topic 5 on June 4, 2012. Halifax had agreed to accept these declarations (*see* electronic mail communication from A. Sidhu to A. Schwartz and P. Fitzgerald (May 10, 2012), attached as Exhibit 2) and has not objected to them in any way. Therefore, the United States should not be compelled to designate a witness to testify as to Topic 5.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that it not be compelled to designate a 30(b)(6) witness on the topics on which it has not already agreed to provide testimony.

    Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

ROBERT E. O'NEILL
United States Attorney

RALPH E. HOPKINS
Assistant United States Attorney
501 W. Church Street, Suite 800
Orlando, FL 32805
(407) 648-7562
Fla. Bar # 0972436
Email: ralph.hopkins@usdoj.gov

/s <u>*Patricia M. Fitzgerald*</u>
DANIEL R. ANDERSON
MICHAEL D. GRANSTON
ADAM J. SCHWARTZ
PATRICIA M. FITZGERALD
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 305-3173
Facsimile:  (202) 514-0280
Email: Patricia.M.Fitzgerald@usdoj.gov


Attorneys for the United States

## **CERTIFICATE OF SERVICE**

       I hereby certify that on June 29, 2012, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which will send an electronic notice of the filing to all counsel of record.

                                            /s *Patricia M. Fitzgerald*
                                            PATRICIA M. FITZGERALD
                                            Trial Attorney