UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA, ex rel.
ELIN BAKLID-KUNZ,

       Plaintiff,

v.                                                                          Case No:  6:09-cv-1002-Orl-31TBS

HALIFAX HOSPITAL MEDICAL CENTER and
HALIFAX STAFFING, INC.,

       Defendants.

_____

## ORDER

The following motions are before this Court for resolution:

1. Relator Elin Baklid-Kunz's Renewed Motion for Determination of Defendants' Privilege Claims and Memorandum in Support Thereof (Doc. 137);

2. United States' Motion to Alter the Amended Case Management and Scheduling Order (Doc. 145);

3. Relator's Renewed Motion for In Camera Review (Doc. 151);

4. United States' Motion to Compel the Production of a Response to Interrogatory No. 2 and Documents Improperly Withheld (Doc. 152);

5. Relator's Motion to Modify the Amended Case Management and Scheduling Order (Doc. 155);

6. Halifax's Motion to Strike the Declaration of Mary Ann Norvik (Doc. 164); and

7. Halifax's Motion to Designate as Confidential the Deposition Transcript of Relator Elin Baklid-Kunz, dated August 20, 2012 (Doc. 175).

## I.  Background

On June 16, 2009, Elin Baklid-Kunz ("Relator" or "Ms. Kunz"), filed this qui tam

action against Halifax Medical Center, d/b/a Halifax Health, a/k/a Halifax Community

Health System, a/k/a Halifax Medical Center and Halifax Staffing, Inc. (collectively referred to as "Halifax"),[1] for alleged violations of the Civil False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  (Doc. 1).  Relator is Halifax's Director of Physician Services and has been employed by the Daytona Beach hospital for more than fifteen years. (Doc. 29).  She alleges that Defendants (1) received improper and excess compensation from the federal government and (2) paid illegal kickbacks, profit-sharing incentives and other illegal compensation to physicians in violation of the Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b.  (Id.).

On November 4, 2011, the United States of America intervened on behalf of the Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), to sue Defendants for damages resulting from false claims submitted to the Medicare and Medicaid programs in violation of the FCA.  (Doc. 73).  In its Complaint in Intervention, the United States alleges: the presentation of false claims (Count I); the use of false statements to get false claims paid (Count II); the creation of false records material to an obligation to pay (Count III); unjust enrichment (Count IV); payment by mistake (Count V); and disgorgement, constructive trust, and accounting (Count VI).  (Id.).  Defendants deny all allegations of wrongdoing.  (Docs. 47 and 112).

The Court entered a scheduling order on January 5, 2011 (Doc. 22) and amended it on January 3, 2012 (Doc. 92).  Currently, the parties have until December 21, 2012 to complete discovery.  On February 17, 2012, Relator filed her original Motion for Determination of Defendants' Privilege Claims (Doc. 102) and amended the motion on July 31, 2012.  (Doc. 137). I directed the parties to file a representative sample of the

---

[1] According to the allegations in the Government's Complaint in Intervention, Halifax Hospital provides inpatient and outpatient health care services and owns and operates hospitals in Volusia County and surrounding counties.  (Doc. 73 ¶ 8).  Halifax Staffing, a wholly owned and operated subsidiary of Halifax Hospital, provides staffing services to Halifax Hospital in exchange for payments to cover the cost of employee salaries, benefits, and administrative costs.  (Id. ¶ 11).

documents for in camera review, and on September 13, 2012, I heard oral argument on the matter.  Upon consideration of all relevant filings and case law, and being otherwise fully advised, I hereby resolve the motions as follows.

## II. Law

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1).  It is not necessary that the material be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  Under the federal rules, a party is permitted to assert the attorney-client privilege to prevent certain otherwise discoverable information from being produced, as an "exception to the general rule that the law is entitled to every man's evidence." In re Vioxx Prods. Liab. Litig., 501 F. Supp. 2d 789, 795 (E.D. La. 2007); see FED. R. CIV. P. 26(b)(5).  "The purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications." In re Seroquel Prod. Liab. Litig., No. 6:06-md-1769-Orl-22DAB, 2008 WL 1995058, at *2 (M.D. Fla. May 7, 2008) (citing United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir. 1990)). The privilege applies only to communications and does not extend to facts. See United States ex rel. Locey v. Drew Med., Inc., No. 6:06-cv-564-Orl-35KRS, 2009 WL 88481, at *1 (M.D. Fla. Jan. 12, 2009) (quoting Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)).  Because it is an exception to the general rule, courts narrowly construe the privilege and place the onus of proving its applicability on the proponent. See In re Vioxx, 501 F. Supp. 2d at 799 n.15; see also In re Seroquel, 2008 WL 1995058, at * 2 ("The party

invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.").

### A. Attorney-Client Privilege Standard

The party invoking the privilege must establish that (1) the professed privilege holder is or sought to become the attorney's client; (2) the person to whom the communication was made was a licensed attorney "or his subordinate" acting in the capacity of a lawyer at the time the communication was made; (3) the communication concerns a fact that was communicated to the attorney by his client outside the presence of strangers; (4) for the purpose of obtaining a legal opinion, legal services, or "assistance in some legal proceeding;" (5) the communication was not made "for the purpose of committing a crime or tort;" (6) the professed holder actually claimed the privilege; and (7) he did not waive the privilege.  Noriega, 917 F.2d at 1550.  For the privilege to apply the communication must be confidential, meaning that the professed privilege holder "(1) intended [the communication] to remain confidential *and* (2) under the circumstances [the communication] was *reasonably* expected and understood to be confidential."  Id. at 1551 (emphasis in original); see Paul R. Rice, Electronic Evidence Law and Practice 193 (2d ed. 2008).  Stated another way, "[t]he key elements of the privilege . . . are (1) the attorney; (2) the client; (3) a communication; (4) the confidentiality that was anticipated and preserved; and (5) the legal advice or assistance (as opposed to business or personal advice) that was the primary purpose of the communication."  1 Paul R. Rice, Attorney-Client Privilege in the United States § 2:1 (2012).  "The privilege also provides a derivative protection to responsive communications from attorney to the client to the extent that those communications reveal the content of prior confidential communications from the client." Rice, Electronic Evidence 193-94.

### B.  Applicability of the Privilege to Corporations

"[T]he attorney-client privilege applies to corporations" and protects communications to corporate counsel for purpose of obtaining legal advice. In re Vioxx, 501 F. Supp. 2d at 796; see also Upjohn, 449 U.S. at 390.  Communication between corporate client and outside litigation counsel are cloaked with a presumption of privilege. Rice, Electronic Evidence  258.  Communications between corporate client and corporate counsel–on the other hand–involve a much different dynamic and require the proponent to satisfy a "purpose and intent" threshold test.  "[M]odern corporate counsel have become involved in all facets of the enterprises for which they work.  As a consequence, in-house legal counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues."  In re Vioxx, 501 F. Supp. 2d at 797.  As such, general "[b]usiness advice, unrelated to legal advice, is not protected by the privilege even though conveyed by an attorney to the client," because the purpose and intent is not to communicate legal advice.  Id. (quoting In re CFS-Related Securities Fraud Litig., 223 F.R.D. 631 (N.D. Okla. 2004)).

Simply labeling a document "Confidential - Attorney Client Privilege" is not "a sufficient basis for legally presuming or even logically assuming a primary legal purpose."  Rice, Electronic Evidence  260.  And, simply funneling non-privileged information through an attorney does not automatically encase the document in the privilege. In re Vioxx, 501 F. Supp. 2d at 797. "The content of the message must request legal assistance, and the information conveyed must be reasonably related to the assistance sought."  Rice, Electronic Evidence 260; Tyne v. Time  Warner Entm't Co., 212 F.R.D. 596 n.4 (M.D. Fla. 2002) (the attorney-client privilege "label may serve to put recipients on notice that the document is confidential, but it does not at all prove the existence of privilege.").

The privilege also protects "communications between corporate employees in which prior [legal] advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities." In re Vioxx, 501 F. Supp. 2d at 797. In some cases, the privilege may also be extended to protect "information gathered by corporate employees for transmission to corporate counsel for the rendering of legal advice[.]" 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine 151-52 (5th ed. 2007) (The court, relying on the proposed but never adopted Rule 503(b) of the federal rules, "concluded it was not necessary for the attorney to be either the sender or direct recipient of the privileged communications. The documents at issue were documents gathered to prepare a patent application and forward to patent counsel.") (citing In Eutectic v. Metco, 61 F.R.D. 35, 37 (E.D.N.Y 1973)). A draft of a document is protected by attorney-client privilege if it was "prepared with the assistance of an attorney for the purpose of obtaining legal advice or, after an attorney's advice, contained information a client considered but decided not to include in the final version." In re Seroquel, 2008 WL 1995058, at *3. A draft is not protected "[i]f the ultimate document is purely a business document which would not have received any protection based upon privilege in any event . . ." Id.

### C. The Assertion of Privilege Over Email Communication

The advent of email has added to the difficulty of determining the purpose and intent of communications that involve corporate legal counsel. In re Vioxx, 501 F. Supp. 2d at 798. In the corporate setting, "the content of what was communicated to legal counsel by the client and . . . the substance of the advice rendered by the lawyer in response" are typically protected by attorney client privilege. Rice, Electronic Evidence 248. This principle applies to email communication so long as corporate counsel's participation in the

communications was "primarily for the purpose of rendering legal advice or assistance." In re Vioxx, 501 F. Supp. 2d at 798.

Courts have held that when a communication is simultaneously emailed to a lawyer and a non-lawyer, the corporation "cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." In re Seroquel, 2008 WL 1995058, at *4; In re Vioxx, 501 F. Supp. 2d at 805 (citing United States v. Chevron Corp., No. C 94-18855BA, 1996 WL 444597, at *2 (N.D. Cal. 1996) ("When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply."); United States v. Int'l Bus. Mach. Corp., 66 F.R.D. 206, 213 (S.D.N.Y 1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice.")).  In such cases, the email and attachments are not privileged and are discoverable.  When an email is sent to a lawyer and non-lawyers in the corporation are *copied*, it "raise[s] a question as to whether the primary purpose of the communication was for legal advice or assistance." In re Vioxx, 501 F. Supp. 2d at 812.

A privileged communication may be subsequently emailed to non-legal personnel only if the additional recipients are being sent the communication "to apprise them of the legal advice that was sought and received." In re Vioxx, 501 F. Supp. 2d at 810; see also Santrade, Ltd. v. General Elec. Co., 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("[D]ocuments subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision making) so that the corporation may be properly informed of legal advice and act appropriately.").

It is expected that the party asserting the privilege will satisfy Federal Rule of Civil Procedure 26(b)(5)(A) by identifying the allegedly protected documents in its privilege log. See Fiore v. Goodyear Tire & Rubber Co., Case No. 2:09-cv-843-FtM-29SPC, 2010 U.S. Dist. LEXIS 122512, at *5 (M.D. Fla. Nov. 3, 2010) ("This [Rule 26(b)(5)(A)] disclosure is done in the form of a privilege log.") (citing Pitts v. Francis, Case No. 5:07cv169/RS/EMT, 2008 U.S. Dist. LEXIS 41894, at *13 (N.D. Fla. May 28, 2008) ("To preserve the privilege, the objecting party must provide a log or index of withheld materials . . .")). The privilege log must contain "a description of the withheld documents that would be sufficient for [the requesting party] to assess the privilege and protection claims."  Knights Armament Co. v. Optical Sys. Tech., Inc., Case No. 6:07-cv-1323-Orl-22KRS, 2009 U.S. Dist. LEXIS 14271, at *18 (M.D. Fla. Feb. 10, 2009); see Tyne, 212 F.R.D. at 598 ("Rule 26 (b)(5) requires that a privilege log sufficiently describe the privileged documents so as to permit other parties, and the court, to assess the applicability of the privilege.").

Whether each email in an email string should be listed separately in a privilege log is a matter upon which courts differ.  The Eleventh Circuit Court of Appeals has yet to rule on the issue.  I adopt the position (for which there is overwhelming support) that each email in an email string must be listed separately so the court (and the opposing party) may make an attorney-client privilege determination with regards to each email in the string. See In re Vioxx, 501 F. Supp. 2d at 812 (Email strings "in which attorneys were ultimately involved were usually inappropriately listed on the privilege log as one message."); Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego , Case No. 09-4158-SAC, 2011 U.S. Dist. LEXIS 3610, at *3 (D. Kas. Jan. 13, 2011) ("[L]itigants generally must list each email within a string as a separate entry on the privilege log rather than listing the email string as a single entry . . . the Court was able to review each email within the string to ascertain the

applicability of the attorney-client privilege . . ."); Rice <u>Electronic Evidence</u> 253 ("Each e-mail is a separate communication (like separate letters and memoranda) and should be described separately in the privilege log . . . [t]he fact that e-mail communications are electronically tied together because they were sequentially created does not change their fundamental character.").  As court-appointed "Special Master"[2] Rice stated in <u>In re Vioxx</u>, "[s]imply because technology has made it possible to physically link these separate communications (which in the past would have been separate memoranda) does not justify treating them as one communication and denying the demanding party a fair opportunity to evaluate privilege claims raised by the producing party." <u>In re Vioxx</u>, 501 F. Supp. 2d at 812.  "For the adversarial system to function properly, each message needs to be identified and described in a manner that fairly permits the opposing side to assess whether the claim of privilege is valid." Rice, <u>Electronic Evidence</u> 255.

### III. Discussion

The Relator seeks a privilege determination for seven categories of documents: (1) the compliance referral log; (2) all documents and/or communications described in the right hand column of "Relator's Hearing Exhibit 2" which are not to or from an attorney; (3) all documents and/or communications that relate to audits and reviews performed by Halifax's Case Management Department, Compliance Department, Finance Department and/or any hospital department other than the Legal Department; (4) all documents and/or communications that relate to fair market value determinations or analyses with respect to physician compensation, including drafts; (5) all documents produced to the United States

---

[2] In <u>In re Vioxx</u>, District Judge Fallon appointed Paul R. Rice, author of two of the treatises cited herein, "Special Master," pursuant to Federal Rule of Civil Procedure 53.  501 F. Supp. 2d 791.  "The Court requested that Special Master Rice review the 2,000 representative documents, as well as approximately 600 additional documents" and "make recommendations as to whether or not Merck's claim of privilege should be upheld." <u>Id.</u> at 792.

in response to subpoenas in 2009 and/or 2010;[3] (6) all email strings described in Exhibit D to the Renewed Motion with redactions of any emails that are subject to the privilege; and (7) the documents filed under seal as Relator's Hearing Exhibits 6,7 and 8 (crime fraud exception documents).  I have examined the documents presented by the parties for in camera review and find as follows:

### A. Category 1

The parties disagree over whether Halifax's referral log is protected by attorney-client privilege.  Relator argues that the referral log is a factual record "that is kept of all reports about compliance issues that might need to be investigated." (Tr. 21-22).  She maintains that the log was kept in Halifax's normal course of business and that the reports were not routinely shared with the Legal Department.  (Doc. 137 at 13).  In her declaration, Relator explained that the referral log was a tool used by the Compliance Department to manage "day-to-day complaints."  (Kunz Decl., Doc. 137-3 ¶ 13).  She stated that as a "Compliance employee, [she] had access to the referral log and [she] would input status comments as [she] looked into the referrals," or complaints.  (Id.).

Halifax concedes that the referral log was maintained by the Compliance Department, but argues that it is protected from disclosure because it was prepared "for the purpose of obtaining legal advice" and "in anticipation of possible litigation and/or adverse administrative proceedings relating to the issues identified on it by the Compliance Department." (Doc. 150 at 13). Halifax argues that its intention that the log remain confidential is evidenced by the "header and footer on the log indicating its privileged and

---

[3] The Relator has stated that she is concerned about the "documents produced to the United States in response to [the] 2009 subpoenas," while Halifax specifically referenced documents produced in response to the 2009 and 2010 subpoenas.  See Email from L. Lin Wood, Relator's Counsel to the Honorable Thomas B. Smith, United States Magistrate Judge (Sept. 19, 2012, 04:41 pm EST); Email from Amandeep S. Sidhu, Halifax's Counsel to the Honorable Thomas B. Smith, United States Magistrate Judge (Oct. 2, 2012, 07:14 pm EST).

confidential nature." (Id.).  Compliance Director, George Rousis, affirmed that his office

maintained the log "to facilitate [his] discussions with [Halifax's General Counsel,] David

Davidson and the Halifax Legal Department regarding the level of litigation risk and

potential exposure stemming from reported incidents" and that he was instructed by Mr.

Davidson[4] to do so in 1998.  (Rousis Decl., Doc. 150-1 at 30).

      At the hearing, Relator relied on Exhibit 3, which is a questionnaire (Deloitte &

Touche LLP internal audit form) entitled, "Form 1430SHC---Questionnaire Regarding

Compliance with Federal Health Care Entity Laws and Regulations." This questionnaire

memorializes Mr. Rousis' answers to a series of questions.   When asked whether Halifax

had written procedures for investigating offenses, Mr. Rousis stated that the procedures

were written in a "Compliance Program Reference Manual," and added that investigations

are documented in an "Issue and Concerns Log," which had been renamed the referral log.

(Hrn'g. Ex. 3, p. 6). Mr. Rousis stated that any corrective action taken ("policy/standards

development to address identified gaps, process improvements, additions to education

curriculum, and voluntary refunds") was documented in the referral log.  (Id. at 6-7).  He

also explained that the log was reviewed quarterly by the "Compliance Committee," but

failed to specify the make-up of the committee and whether it included employees from the

Legal Department. (Id.).

      The parties submitted a representative sample of the referral log (Individual

Communications 97, 98, and 99) for in camera review. Each incident cover sheet is

addressed to the attention of Mr. Davidson, General Counsel, and all pages are stamped

"Confidential Attorney-Client Privileged Information."  This is not dispositive of the privilege

issue.  A document is not privileged simply because the custodian wants it to be or

---

[4] In his declaration, Mr. Davidson stated that he oversees Mr. Rousis' "maintenance of the
Compliance Referral Log[.]" (Davidson Decl., Doc. 177-1 ¶ 2).

because it is marked as such.  In her declaration, Ms. Kunz stated that the content of the log was sometimes generated by "employees who saw conduct that they thought might be inappropriate" and was a recordation of factual accounts that were accessible for editing/commenting by non-lawyer employees in the Compliance Department. (Kunz's Decl., Doc. 137-3 ¶ 13).  To resolve this issue, I must first determine whether the referral log is fact or communication.  See United States ex rel. Locey, 2009 WL 88481, at *1 (The privilege applies only to communications and does not extend to facts.) (quoting Upjohn Co., 449 U.S. at 395-96).  If the content of the log constitutes communication, and not fact, I must consider whether the content of the message evidences a request for legal assistance or the transmission of legal advice previously sought. Rice, Electronic Evidence 260; Tyne, 212 F.R.D. at 596 n.4.

  I have reviewed the content of Individual Communications 97, 98, and 99 and find that none of them evidence legal advice sought or received.  In no instance has a lawyer commented on the information recorded nor has an employee in the Compliance Department indicated that he or she would seek advice of counsel.  Some of the information in the log can only be characterized as a recordation of fact.  For instance, on February 28, 2008, Ms. Kunz recorded the following:

> Compliance provided Beth Hollis, Manager for IMC with a Self Audit Checklist in order for the department to do self audit of critical care codes.  In the conversation, it was brought up that the physicians no longer used the prolonged care code. However, when compliance ran a utilization report for Dr. Arcot, Prolonged care (CPT 99356) was billed 30 times for January and part February 2008.

(Indiv. Comm. No. 97).  Other log entries clearly contain email communications; however, the privilege does not apply because (1) the communications are between non-lawyers, (2) they do not reflect "prior [legal] advice received [that] is being transmitted to those who

have a need to know in the scope of their corporate responsibilities," and (3) the

communications do not expressly reflect "information gathered by corporate employees for

transmission to corporate counsel for the rendering of legal advice[.]"  In re Vioxx, 501 F.

Supp. 2d at 796; Epstein, The Attorney-Client Privilege 151.  Therefore, to the extent the

remainder of the referral log contains the types of entries produced for the Court's in

camera review, they are not privileged and must be produced. To the extent any of the

remaining entries in the privilege log contain privileged information, as categorized in

section II, supra, those entries shall first be redacted and then produced.

## B.  Category 2

At the hearing, Relator offered into evidence a chart which it used to compare the

descriptions of documents over which Halifax maintains privilege with documents over

which it has withdrawn previously asserted claims of privilege. (Tr. 18-19; Hrn'g Ex. 2).

Relator argues that the document descriptions are essentially identical and that Halifax has

not met its burden necessary to sustain the privilege.  (Tr. 20).  In response, Halifax argues

that its assertion of attorney-client privilege is proper simply because its organization is

structured so that "the compliance department operates under the supervision and

oversight of [the] legal department." (Tr. 60).  I am not persuaded by this argument.

Halifax's organizational structure is of no consequence.  Halifax bears the burden of

proving that the primary purpose and intent of each allegedly privileged document was to

seek or give legal advice.  Halifax has failed to meet its burden with regards to the

descriptions of the documents under the following headings: "facilitate the provision of

compliance advice," "facilitate the rendering of compliance advice,"[5] "reflecting request for

---

[5] The last description in this list reveals communication that involved "A. Pike."  It is my
understanding that A. Pike is a member of Halifax's legal department.  See (Doc. 137-1 at 11).  Based on the
description of this privilege log entry, the primary purpose of this communication was not to give or receive

compliance advice," "for the purpose of obtaining compliance advice," "reflecting provision of compliance advice," "reflecting compliance advice," and "request for and provision of compliance advice." These documents are not privileged and are discoverable. The description of the legal documents for which privilege has been withdrawn do not offer any insight into the validity of the privilege assertions over the documents in the right column. I cannot tell from the descriptions whether the protection is properly asserted, which, I recognize is Relator's complaint. It is my expectation that the parties can resolve this issue given the Court's guidance outlined in section II of this order. If the parties are not able to resolve this issue, Relator may file a renewed motion within fourteen days from the date of this order. If this should occur, I will order that the relevant documents be produced for in camera review.

### C. Category 3

Relator seeks a privilege determination for documents or communications that relate to audits and reviews performed by Halifax's Case Management Department, Compliance Department, Finance Department and/or any hospital department other than the Legal Department. Examples of these communications and documents are contained within the "Representative Communication Issues" binder submitted to the Court for in camera review. This binder contains the documents listed in Exhibit A to Relator's motion—an exhibit that both parties agree represents the "core documents" in the dispute. <u>See</u> (Tr.

---

legal advice. The description clearly articulates that the purpose of this communication was to "facilitate the rendering of compliance advice." In addition, it is clear from the description that the communication was sent to others besides "A. Pike," which also weighs against a privilege finding. <u>See</u> <u>Int'l Bus. Mach. Corp.</u>, 66 F.R.D. at 213 ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice."); <u>In re Seroquel</u>, 2008 WL 1995058, at * 4; <u>In re Vioxx</u>, 501 F. Supp. 2d at 805 (citing <u>Chevron Corp.</u>, 1996 WL 444597, at *2 ("When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply.")).

13 (Relator's counsel: "[W]e believe that the claims that they're taking with respect to those documents, the representative sample, when you look at that and deal with it in essence by four or five categories, you will not only have solved the obstacle that prevents us from using them, but you also have overcome the obstacles that exist with respect to the thousands of [other] documents . . ."); Tr. 55 (Halifax's counsel: "[T]he core documents at issue, which are the Exhibit A documents, are privileged because they contain legal advice, were prepared for the purpose of obtaining or rendering legal advice, or involve the communication of legal advice.")).  I have conducted an in camera review and I find that, for the most part, these communications are not protected by the attorney-client privilege. My ruling with respect to all of the individual communications, including those within category 3, is set forth in the table below:

| Plaintiff's Individual Communication Number | Defendant's Document Number | Court's Ruling |
|---|---|---|
| 1 | 39 | Privileged. |
| 2 | 79 and 80 | Not privileged. |
| 3 | 94 | Not privileged. |
| 4 | 2 | Not privileged.<br>• No attorney "to" or "from."[6]<br>• No legal advice sought or received.<br>• The primary purpose of document is to assure that the hospital's internal process successfully identifies the short stay admissions that do not meet the stated criteria. |
| 5 | 2 | Not privileged.<br>• Communication between non-legal employees<br>• No legal advice sought or received. |

---

[6] I have consulted the list attached to Relator's motion to determine the identities of the communication authors and recipients. (Doc. 137-1 at 11).

| | | |
|---|---|---|
| | | • No indication that correspondence was at the behest of counsel or made in preparation to confer with counsel. |
| 6 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 7 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 8 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 9 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 10 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 11 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 12 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 13 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 14 | 2 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 15 | 7 | Not privileged.<br>• Attorney listed among many recipients in the "to" field.  When communication is simultaneously emailed to a lawyer and a non- |

|  |  | lawyer, the corporation "cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." <u>In re Seroquel</u>, 2008 WL 1995058, at * 4; <u>In re Vioxx</u>, 501 F. Supp. 2d at 805 (citing <u>Chevron Corp.</u>, 1996 WL 444597, at *2 ("When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply."); <u>Intn'l Bus. Machines Corp.</u>, 66 F.R.D. at 213 ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said  that the primary purpose of the document is to secure legal advice.")). |
| 16 | 13 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 17 | 14 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 18 | 14 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 19 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 20 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 21 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 22 | 14 | Not privileged. |

| | | |
|---|---|---|
| | | • No attorney "to" or "from."<br>• No legal advice sought or received. |
| 23 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 24 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 25 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 26 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 27 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 28 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 29 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 30 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 31 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 32 | 14 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 33 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |

| 34 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 35 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 36 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 37 | 14 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 38 | 15 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 39 | 16 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 40 | 16 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 41 | 17 | Not privileged.<br>• Attorney listed among many recipients in the "to" field. |
| 42 | 19 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 43 | 19 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 44 | 19 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 45 | 19 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |

| 46 | 19 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
|---|---|---|
| 47 | 19 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 48 | 19 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 49 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 50 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 51 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 52 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 53 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 54 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 55 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 56 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 57 | 22 | Not privileged. <br> • No attorney "to" or "from." |

| | | |
|---|---|---|
| | | • No legal advice sought or received. |
| 58 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 59 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 60 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 61 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 62 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 63 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 64 | 22 | Not privileged. <br> • Attorney listed among many recipients in the "to" field. |
| 65 | 22 | Not privileged. <br> • Attorney listed among many recipients in the "to" field. |
| 66 | 22 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 67 | 22 | Not privileged. <br> • Attorney listed among many recipients in the "to" field. |
| 68 | 24 | Not privileged. <br> • Attorney listed among many recipients in the "to" field. |
| 69 | 29 | Not privileged. <br> • Attorney listed among many recipients in the "to" field. |
| 70 | 49 | Not privileged. |

| 71 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 72 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 73 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 74 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 75 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 76 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 77 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 78 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 79 | 58 | Not privileged. |
| 80 | 58 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. |
| 81 | 58 | Not privileged. |
| 82 | 59 | Not privileged. <br> • No attorney "to" or "from." <br> • No legal advice sought or received. <br> • The "Attorney-Client Work Product" stamp is immaterial. See Rice Electronic Evidence, p. 260 (Simply labeling a document |

| | | |
|---|---|---|
| | | "Confidential - Attorney Client Privilege" is not "a sufficient basis for legally presuming or even logically assuming a primary legal purpose.  The content of the message must request legal assistance, and the information conveyed must be reasonably related to the assistance sought."); <u>see</u> <u>also</u> <u>Tyne v. Time Warner Entm't Co.</u>, 212 F.R.D. 596 n. 4 (M.D. Fla. 2002). |
| 83 | 60 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.<br>• The "Attorney-Client Work Product" stamp is immaterial. See Rice <u>Electronic Evidence</u>, p. 260 (Simply labeling a document "Confidential - Attorney Client Privilege" is not "a sufficient basis for legally presuming or even logically assuming a primary legal purpose.  The content of the message must request legal assistance, and the information conveyed must be reasonably related to the assistance sought."); <u>see</u> <u>also</u> <u>Tyne v. Time Warner Entm't Co.</u>, 212 F.R.D. 596 n. 4 (M.D. Fla. 2002). |
| 84 | 79 | Not privileged. |
| 85 | 80 | Not privileged. |
| 86 | 84 | Not privileged. |
| 87 | 94 | Not privileged. |
| 88 | 105 | <u>See</u> section III.G, <u>infra</u>. |
| 89 | 105 | <u>See</u> section III.G, <u>infra</u>. |
| 90 | 113 | <u>See</u> section III.G, <u>infra</u>. |
| 91 | 182 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 92 | 182 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |

| 93 | 182 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 94 | 182 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 95 | 184 | Not privileged.<br>• Attorneys listed among many recipients in the "to" field.<br>• The primary purpose of this communication is to disseminate policy regarding the use of auxiliary staff by hospital-based physicians (compliance advice). There is no evidence that this review is being done at the behest of the legal department. |
| 96 | 193 | Not privileged.<br>• There is no indication that this "Shelly" is Shelly Shiflet<br>• No legal advice sought or received.<br>• The primary purpose of this communication is to convey results of a review conducted by the Compliance Department. |
| 97 | 174 | See section III.A, supra. |
| 98 | 182 | See section III.A, supra. |
| 99 | 182 | See section III.A, supra. |

## D. Category 4

Relator seeks a privilege determination for all documents and/or communications that relate to fair market value determinations or analyses with respect to physician compensation, including drafts.  I have conducted an in camera review of these documents.  My ruling with respect to these individual communications is set forth in the table at section III.C of this order.

## E.  Category 5

The Government argues that Halifax waived any privilege with respect to the

following twenty-eight (28) documents when it produced them in response to subpoenas

dated December 14, 2009 and August 9, 2010:

> PTF 0003649; PTF 0008556, PTF 0005792; PTF 0001159;
> PTF 0002857; PTF 0002859; PTF 0008411; PTF 0001539;
> PTF 0008806; PTF 0008833; PTF 0008722; PTF 0008860;
> HAL 0005534; HAL 0028827; HAL 0030624; HAL 0032255;
> HAL 0033097; HAL 0033695; HAL 0005312; HAL 0330102;
> HAL 0242656; HAL 0347538; HLFX-PST 0294540; HLFX-PST
> 0294541; HLFX-PST 0295340; HLFX-PST 0295341; HAL-1
> 0133092; and HAL-1 0131004.

(Doc. 154).  The Government explains how it came to acquire the documents:

> Based on the allegations in the complaint, the United States
> initiated an investigation of various allegations raised by
> Relator. As part of its FCA investigation, the United States
> Department of Health and Human Services Office of Inspector
> General ("HHS OIG") issued three administrative subpoenas for
> various documents maintained by Halifax. The subpoenas, two
> dated December 14, 2009, and the other dated August 9, 2010,
> required Halifax to identify any document not produced by
> reason of a claim of privilege, and to provide to the United
> States sufficient information to assess the validity of the
> privilege asserted. See Subpoenas dated December 14, 2009
> and August 9, 2010 (attached as Exhibits 1-3 to the Declaration
> of Adam J. Schwartz ("Schwartz Decl.")). Halifax began
> producing documents pursuant to the subpoenas on January
> 22, 2010, and continued to produce documents pursuant to the
> subpoena through March 4, 2011. Despite the explicit
> requirement that Halifax identify any documents being withheld
> on the basis of a claim of privilege, at no point during the United
> States' FCA investigation did Halifax produce a privilege log to
> the United States identifying documents withheld as privileged.

(Id. at 2-3).

By March 2011, Halifax had ceased producing documents to the Government in

satisfaction of the subpoenas.  (Schwartz Decl., Doc. 154-1 ¶ 5).  The Government has

produced competent evidence to establish that on the face of the subpoenas it directed

Halifax to identify any documents not produced by reason of a claim of privilege. (Schwartz Decl., Doc. 154-1 ¶ 4; Doc. 154-2 at 8; Doc. 154-3 at 8; Doc. 154-4 at 8).  No privilege identification was made.  In April 2011, Halifax was made aware of the documents upon which the Government intended to rely.  (Doc. 154 at 3; Schwartz Decl., Doc. 154-1 ¶¶ 7-9).  Again, no assertion of privilege was made.

In November 2011, Halifax made general privilege assertions to the Relator–not to the Government, who, by that time, had intervened in the action.  (Doc. 154 at 4).  In January 2012, the Government sequestered the documents that were the basis of Halifax's November 2011 privilege claim.  (Id.).  March 5, 2012, was the first time Halifax asserted its specific privilege claims in a privilege log.  (Doc. 154-7 at 1-3).

To the extent any of these documents are protected, my determination of whether Halifax waived the privilege is guided by United States Fid. & Guar. Comp. v. Liberty Surplus Ins. Co., 630 F. Supp. 2d 1332 (M.D. Fla. 2007).  Under Liberty Surplus, courts must consider:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.

630 F. Supp. 2d at 1336.  First, Halifax concedes that it did not take any significant precautions to prevent the disclosure of privileged material and that it produced documents in response to the government's subpoenas without conducting a manual privilege review. See Tr. 43.  This factor weighs against a finding that the documents are privileged.  See In re Fountainebleau Las Vegas Contract Litig., Case No. 09-02102-MD-GOLD/GOODMAN, 2011 U.S. Dist. LEXIS 4105, at *37 (S.D. Fla. Jan. 7, 2011) ("[I]n order to preserve a privilege claim, a party 'must conduct a privilege review prior to document production.'").

Second, the evidence of record has established that Halifax (1) failed to lodge a privilege objection to these documents until November 2011, which was approximately eight months after production under the 2009 and 2010 subpoenas had concluded, and (2) failed to identify its specific privilege assertions in a privilege log until March 2012.  Halifax delayed even though it was made aware of the documents upon which the Government intended to rely as early as April 14, 2011.  "[A] responding party's failure to make a timely and specific objection to a discovery request waives any objection based on privilege." Liberty Surplus, 630 F. Supp. 2d at 1340; see Third Party Verification, Inc. v. Signaturelink, Inc., Case No. 6:06-cv-415-Orl-22DAB, 2007 U.S. Dist. LEXIS 32238, at *8 (M.D. Fla. May 2, 2007) ("A party who fails to file timely objections waives all objections, including those based on privilege or work product.").  This factor weighs against a finding that the documents are protected.

The third and fourth factors weigh neutrally.  Halifax has produced thousands of documents in this litigation.  The Government argues that Halifax only waived the privilege for twenty-eight documents.  (Doc. 154).  The number of documents at issue is an extremely small portion of the total number of documents produced.

Lastly, the Government has relied on these documents for more than a year and to withhold them now would be unfair considering that Halifax failed to take meaningful precautions to prevent the disclosure of privileged information and failed to assert privilege until eight months after production under the subpoenas had concluded.  This factor weighs against a privilege finding.

The balance of the Liberty Surplus factors weighs against Halifax's privilege assertions.  To the extent any of the documents produced in response to the Government's

2009 and 2010 subpoenas were protected by attorney-client privilege, the privilege was waived.

### F.  Category 6

Relator seeks a privilege determination as to all email strings described in Exhibit D to the Renewed Motion with redactions of any emails that are subject to the privilege.  I have conducted an in camera review of the random sample of communications identified at the hearing and provided to the Court.  As an initial matter, each email string listed in Halifax's privilege log must be disassembled and each email listed separately in an amended privilege log.  In re Vioxx, 501 F. Supp. 2d at 812; Tri-State Truck, 2011 U.S. Dist. LEXIS 3610, at *3; Rice, Electronic Evidence 253.  For the sake of clarity, my rulings correspond to the document numbers as they were presented to me.  To the extent any of these documents consist of email strings, my rulings pertain to each individual email in the string, except where noted.  I find that some of these communications are protected by the attorney-client privilege, others are not.  My specific ruling with respect to each of the fifteen (15) communications that comprise the random sample, is set forth below:

| Tab Number | Document ID: | Court's Ruling |
|---|---|---|
| 1 | HAL0343413 | Privileged.<br>• Email sent to A. Pike in Legal Department for purposes of seeking legal advice. |
| 2 | HAL0343999 | Not privileged.<br>• Email correspondence involves A. Pike and D. Davidson from the Legal Department, but the purpose of the communication to resolve a business/Human Resources related issue.  The communication does not involve the request for or transmission of legal advice. |
| 3 | HAL0301892 | Not privileged. |

| | | |
|---|---|---|
| | | • No attorney "to" or "from."<br>• No legal advice sought or received. |
| 4 | HAL0345376 | Not privileged.<br>• A. Pike is the recipient of one of the emails, but the purpose of the communication is not to request or transmit legal advice.  Rather, the sender explicitly intends to "keep [A. Pike] in the loop," with regards to a Human Resources issue.<br>• No legal advice sought or received. |
| 5 | HAL0336000 | The emails sent at 9:52 am and 9:57 am are privileged and shall be redacted.<br><br>The remaining emails are not privileged and must be produced because they do not seek legal advice. |
| 6 | HAL0327948 | Privileged.<br>• Emails sent to A. Pike and S. Shiflet in Legal Department for purposes of seeking legal advice. |
| 7 | HLFXHLTH-E00293778 | Not privileged.<br>• No attorney "to" or "from."<br>• S. Shiflet is copied, but no legal advice is sought or received. |
| 8 | HLFXHLTH-E00421414 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 9 | HLFXHLTH-E00227484 | Privileged.<br>• These email messages were sent between G. Rousis, Halifax's corporate lawyers and outside counsel for purposes of seeking legal advice. |
| 10 | HLFXHLTH-E00490411 | Privileged.<br>• Emails sent to S. Shiflet in Legal Department for purposes of seeking legal advice. |
| 11 | HLFXHLTH-E00440765 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |

| 12 | HLFXHLTH-E00131137 | Not privileged.<br>• These emails were either sent or received by A. Pike and/or S. Shiflet (among other non-lawyer employees). The purpose of the communication is to circulate the minutes from a meeting.  The emails do not reflect a request for or transmission of legal advice. |
|----|---|---|
| 13 | HLFXHLTH-E00455166 | Privileged.<br>• The attorney-client privilege protects "communications between corporate employees in which prior [legal] advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities." <u>In re Vioxx</u>, 501 F. Supp. 2d at 797. |
| 14 | HLFXHLTH-E00482596 | The emails sent at 12:03 pm and 5:05 pm are not privileged and must be produced.<br>• S. Shiflet is the recipient of one of the emails, but the purpose of the communication is not to request or transmit legal advice.<br><br>The remaining emails are privileged.<br>• These email messages involved S. Shiflet and outside counsel for purposes of seeking legal advice. |
| 15 | HLFXHLTH-E00168325 | Privileged.<br>• The attorney-client privilege protects "communications between corporate employees in which prior [legal] advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities." <u>In re Vioxx</u>, 501 F. Supp. 2d at 797. |

## G.  Category 7

Relator argues that attorney-client privilege does not protect documents 88, 89, and

90 in Exhibit A to Relator's motion because "they evidence an attorney aiding in the

commission of a fraud." (Doc. 137 at 18). Halifax maintains that the crime-fraud exception

does not apply because Relator is unable to meet her threshold burden of proof. (Doc. 150

at 12). I have reviewed these communications in camera.[7]

It is well established that "[t]he attorney-client privilege does not protect

communications made in furtherance of a crime or fraud." In re Grand Jury Investigation

(Schroeder), 842 F.2d 1223, 1226 (11th Cir. 1987). These types of communications "are

subject to disclosure as an exception to the attorney-client privilege." In re Warner, 87 B.R.

199, 202 (M.D. Fla. 1988). The party invoking the crime-fraud exception must establish:

> First, there must be a prima facie showing that the client was
> engaged in criminal or fraudulent conduct when he sought the
> advice of counsel, that he was planning such conduct when he
> sought the advice of counsel, or that he committed a crime or
> fraud subsequent to receiving the benefit of counsel's advice.
> Second, there must be a showing that the attorney's assistance
> was obtained in furtherance of the criminal or fraudulent activity
> or was closely related to it.

In re Grand Jury Investigation (Schroeder), 842 F.2d at 1226. "Mere allegations or

suspicions of fraud are not enough." In re Warner, 87 B.R. at 202. In this case, Relator

alleges that Halifax violated the Stark Amendment by "providing improper financial

incentives to staff physicians (who are referring Medicare and other Government

beneficiaries) unrelated to their personal performance of services[.]" (Doc. 29 ¶¶ 98, 99-

146).

The Relator has offered no evidence to rebut Halifax's argument that she was not

legally authorized to take document number 90 from the hospital. See (Tr. 55). Therefore,

Relator has not met her burden. Sackman v. Ligget Group, Inc. 173 F.R.D. 358, 365

(E.D.N.Y. 1997) (the court found no waiver where paralegal stole privileged document and

gave it to her lawyers) (citing Mayman v. Martin Marietta Corp., 886 F. Supp. 1243, 1246

---

[7] Thus, Relator's Renewed Motion for In Camera Review (Doc. 151) is GRANTED.

(D. Md. 1995) (court will not consider records removed without authority on the applicability of the crime-fraud exception)); see Smith v. Armour Pharm. Co., 838 F. Supp. 1573, 1575-77 (S.D. Fla. 1993) (under Florida law a publicly disclosed stolen document does not lose its privileged status).  Consequently, document number 90 is privileged and will not be produced.

Communications 88 and 89 are email messages between Ms. Pike, in Halifax's Legal Department, and Mr. Foster of the hospital's Finance Department that were eventually forwarded to Relator.  The hospital's General Counsel and two employees from the Accounting Department are copied on the messages. The first prong of the In re Grand Jury Investigation (Schroeder) test "is satisfied by a showing of evidence that, if believed by a trier of fact would establish the elements of some violation that was going on or about to be committed."  Gutter v. E.I. Dupont de Nemours, 124 F. Supp. 2d 1291, 1299 (S.D. Fla. 2000) (quoting In re Grand Jury Investigation (Schroeder), 842 F.2d at 1226).  The court is permitted to "examine the privileged communications themselves to determine whether they further a crime or fraud[.]" United States v. Boender, 649 F.3d 650, 656 (7th Cir. 2011).  I have reviewed communications 88 and 89 and find that Relator has made a prima facie showing that Halifax was engaged in or about to be engaged in fraudulent conduct when it sought Ms. Pike's advice.  See Gutter, 124 F. Supp. 2d at 1299. Secondly, I find that Relator has offered sufficient evidence to show that Ms. Pike's assistance was sought and obtained in order to allow the Finance Departments to make payments to the oncologists.  Therefore, upon due consideration I find that the crime-fraud exception applies to vitiate the attorney-client privilege over communications 88 and 89 and these documents must be produced.

### IV.    Motion to Compel Interrogatory No. 2

Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim *or defense* . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Federal Rule of Civil Procedure 33 allows parties to serve upon each other interrogatories which relate to any matter that may be inquired into under Rule 26(b). The handbook entitled Middle District Discovery (2001) directs that "[i]nterrogatories should be brief, simple, particularized, unambiguous, and capable of being understood. . . ." Middle District Discovery (2001) at 15.

Rule 33 directs that each interrogatory be answered "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). An opposing party must state its grounds for objection with specificity. See id. at (b)(4). Objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." Panola Land Buyers Assoc. v. Shuman, 762 F.2d 1550,1559 (11th Cir. 1985) (quoting Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)). Upon motion, the court may compel a party to answer the interrogatories. See Fed. R. Civ. P. 37(a)(3)(B)(iii). If the motion to compel is granted, the court must direct the party whose conduct necessitated the motion, "or the attorney advising that conduct, or both," to compensate the movant for "reasonable expenses incurred in making the motion, including attorney's fees," except in certain limited circumstances. Fed. R. Civ. P. 37(a)(5)(A).

The Government served Halifax with interrogatories, including the following:

> Interrogatory No. 2: Identify all documents, communications,
> and facts Halifax Hospital Medical Center and Halifax Staffing,
> Inc. relied upon or intend to rely upon in support of the
> affirmative defenses asserted by Halifax Hospital Medical
> Center and Halifax Staffing, Inc. i[n] the Answer to the United
> States' Complaint in Intervention.

(Doc. 153 at 2). Halifax responded to interrogatory 2 as follows:

> Response: Halifax objects to this request on the grounds that it
> is overly broad, vague, and unduly burdensome.  Subject to the
> foregoing general and specific objections, Halifax responds that
> "documents, communications, and facts" on which Halifax
> "relied upon or intends to rely upon" have not yet been
> determined and will be disclosed as required by the Court's
> Scheduling Order and in accordance with the applicable
> Federal Rules.

(Doc. 153 at 3).  The Government was not satisfied with Halifax's response and asked it to

provide a supplement.  (Doc. 153 at 3; Doc. 153-5).  Halifax refused.  (Doc. 153 at 3; Doc.

153-6).  The Government now asks this Court to compel Halifax to "provide a response to

United States Interrogatory No. 2 and produce all responsive documents identified on

Halifax's 4th Privilege Log that were improperly withheld from production."  (Doc. 153).

Specifically, the Government has asked this court to compel the disclosure of the

documents listed in Exhibit 6 to the motion to compel, which include

> [D]ozens of additional communications regarding internal audits
> that were apparently never seen by an attorney on the theory
> that someone in the legal department directed the performance
> of the audit.  Finally, Halifax has withheld spreadsheets and
> other factual information sent by non-lawyers to business and
> legal personnel that do not appear to have been for the purpose
> of obtaining legal advice.

(Doc. 153 at 6).  Halifax maintains that its response was appropriate under the federal and

local rules of this Court.  (Doc. 157).  The parties provided me with a sampling of the

documents listed in Exhibit 6 to the Government's motion.  I have conducted an in camera

review of those documents and find as follows with regards to the sample

communications:[8]

---

[8] Each email string listed in Halifax's privilege log must be disassembled and each email listed
separately.  In re Vioxx, 501 F. Supp. 2d at 812; Tri-State Truck, 2011 U.S. Dist. LEXIS 3610, at *3; Rice,
Electronic Evidence 253.  For the sake of clarity, my rulings correspond to the document numbers as they
were presented to me.  To the extent any of these documents consist of email strings, my rulings pertain to
each individual email in the string, except where noted.

| Tab Number | Document ID From Exhibit 6 | Court's Ruling |
|---|---|---|
| 1 | HLFXHLTH-E00022728 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 2 | HLFXHLTH-E0044440 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 3 | HLFXHLTH-E0045130 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 4 | HLFXHLTH-E00105298 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 5 | HLFXHLTH-E00209388 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 6 | HLFXHLTH-E00329556 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 7 | HLFXHLTH-E00436245 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 8 | HLFXHLTH-E00527004 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 9 | HLFXHLTH-E00022199 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 10 | HLFXHLTH-E00114304 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 11 | HLFXHLTH-E00227879 | Not privileged.<br>• A. Pike is listed in the "To" field, but the purpose and intent of the |

|    |                     |                                                                                                                                                                      |
|----|---------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    |                     | email is to transmit a meeting agenda.                                                                                                                                |
| 12 | HLFXHLTH-E00389632  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 13 | HLFXHLTH-E00390287  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 14 | HLFXHLTH-E00390728  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 15 | HLFXHLTH-E00391082  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 16 | HLFXHLTH-E00410557  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 17 | HLFXHLTH-E00410800  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 18 | HLFXHLTH-E00412504  | Not privileged.<br>• S. Shiflet participated in the discussion, but the purpose and intent of the document was to facilitate a group discussion.<br>• No legal advice sought or received. |
| 19 | HLFXHLTH-E00527011  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 20 | HLFXHLTH-E00527031  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |
| 21 | HLFXHLTH-E00527043  | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.                                                                              |

| 22 | HLFXHLTH-E00527108 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
|----|--------------------|----------------------------------------------------------------------------------------------|
| 23 | HLFXHLTH-E00527121 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 24 | HLFXHLTH-E00527136 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 25 | HLFXHLTH-E00527157 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 26 | HLFXHLTH-E00527171 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.<br>• No indication that draft document was created at the behest of counsel or made in preparation to confer with counsel. |
| 27 | HLFXHLTH-E00527198 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 28 | HLFXHLTH-E00527224 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 29 | HLFXHLTH-E00527527 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 30 | HLFXHLTH-E00527267 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received.<br>• No indication that memo or attached document were created at the behest of counsel or made in preparation to confer with counsel. |

| 31 | HLFXHLTH-E00527278 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 32 | HLFXHLTH-E00527294 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |
| 33 | HLFXHLTH-E00527310 | Not privileged.<br>• No attorney "to" or "from."<br>• No legal advice sought or received. |

In addition, I direct Halifax to amend its response to the Government's Interrogatory No. 2. I am confident that Halifax is capable of providing the Government with a factual basis for the asserted affirmative defenses without disclosing protected information or revealing, in detail, a narrative of its case.[9]

Although the Government did not make a specific request for the award of its expenses, Federal Rule of Civil Procedure 37(a)(5) requires the Court to award expenses in connection with a motion to compel unless (a) the motion was filed without the moving party having made a good faith effort to obtain the discovery without court action, (b) the Court determines that the response of the non-moving party was substantially justified, or (c) if other circumstances make an award of expenses unjust. FED. R. CIV. P. 37(a)(5)(A). Based on the circumstances of this case and the nature of the discovery dispute, as

---

[9] I reject Relator's argument that Halifax waived attorney-client privilege because it asserted affirmative defenses to the Stark Law allegations. (Doc. 137 at 17). The facts of this case are distinguished from other cases in which defendants' "advice of counsel" defense vitiated the privilege. See SEC v. Wall St. Capital Funding, LLC, Case No. 11-20413-CIV-GRAHAM/GOODMAN, 2011 U.S. Dist. LEXIS 63186, at *21 (S.D. Fla. June 10, 2011) ("Defendants cannot assert the advice of counsel advice while simultaneously and strategically selecting which communications to disclose for self-serving purposes and which communications to retain as confidential."); Southeastern Mech. Servs., Inc. v. Brody, Case No. 8:08-cv-1151-T-30EAJ, 2009 U.S. Dist. LEXIS 80834, at *8 (M.D. Fla. Aug. 25, 2009) ("Waiver by implication may occur when a client places the attorney-client relationship directly at issue or when a client asserts reliance on an attorney's advice as an element of a claim or defense."); Inmuno Vital, Inc. v. Telemundo Group, Inc., 203 F.R.D. 561, 564 (S.D. Fla. 2001) ("It is well-established that when a party asserts a defense, such as the advice of counsel defense, that makes an attorney's advice an issue in the litigation, that party waives the attorney client privilege.").

described herein, I find that an award of expenses would be unjust.  FED. R. CIV. P. 37(a)(5)(A)(iii).

## V. Motions to Amend the Scheduling Order

Relator and the Government have filed motions requesting that the Court modify the Amended Case Management and Scheduling Order (Doc. 92) to extend the expert report disclosure deadline.  (Doc. 155; Doc. 145).  Halifax has objected.  (Doc. 159; Doc. 156). Upon due consideration, the motions are **GRANTED**.  Relator and the Government shall have until December 21, 2012 to disclose their expert reports.  Likewise, Halifax shall have until February 11, 2013 to submit its expert report.  The Court will enter a second amended scheduling order forthwith.

## VI.   Conclusion

Accordingly, it is hereby **ORDERED** that:

1. Relator Elin Baklid-Kunz's Renewed Motion for Determination of Defendants' Privilege Claims and Memorandum in Support Thereof (Doc. 137) is

   **GRANTED IN PART and  DENIED IN PART**;

   a. The motion is **GRANTED** to the extent Relator requests a determination of Halifax's privilege claims.

   b. The motion is **DENIED** to the extent Relator requests attorneys' fees for her efforts to obtain Court determination of the privilege claims.

2. United States' Motion to Alter the Amended Case Management and Scheduling Order (Doc. 145) is **GRANTED**;

3. Relator's Renewed Motion for In Camera Review (Doc. 151) is **GRANTED**;

4.   United States' Motion to Compel the Production of a Response to Interrogatory No. 2 and Documents Improperly Withheld (Doc. 152) is **GRANTED**;

5.   Relator's Motion to Modify the Amended Case Management and Scheduling Order (Doc. 155) is **GRANTED**;

6.   Halifax's Motion to Strike the Declaration of Mary Ann Norvik (Doc. 164) is **DENIED**;[10] and

7.   Halifax's Motion to Designate as Confidential the Deposition Transcript of Relator Elin Baklid-Kunz, dated August 20, 2012 (Doc. 175) is **DENIED WITHOUT PREJUDICE**.[11]

**DONE** and **ORDERED** in Orlando, Florida on November 6, 2012.

THOMAS B. SMITH
United States Magistrate Judge

Copies to Counsel of Record

---

[10] Halifax has failed to show any legal authority or good faith basis for its requested relief.  Its reliance on Local Rule 3.01(c) and (g) is misplaced.

[11] Halifax filed a motion to designate as confidential the entire transcript of Relator's August 20, 2012 deposition testimony.  (Doc. 175).  Halifax argues, inter alia, that "a majority of the transcript also relates directly to privileged communications and information between Relator and Halifax employees and in-house counsel."  (Doc. 176).  Throughout this order, I have declared non-privileged communications and documents over which Halifax had previously asserted attorney-client privilege.  Accordingly, Halifax's motion is denied without prejudice to be reasserted, to the extent appropriate, once the parties have considered the effect of the rulings herein.