**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, and<br>ELIN BAKLID-KUNZ, Relator )<br><br>Plaintiffs )<br><br>v. )<br><br>HALIFAX HOSPITAL MEDICAL CENTER<br>d/b/a HALIFAX HEALTH a/k/a HALIFAX<br>COMMUNITY HEALTH SYSTEM a/k/a<br>HALIFAX MEDICAL CENTER and<br>HALIFAX STAFFING, INC. )<br><br>Defendants ) | CASE NO.: 6:09-CV-1002-ORL-31TBS<br><br>JUDGE GREGORY A. PRESNELL<br><br>[FALSE CLAIMS ACT – QUI TAM] |

**DEFENDANTS HALIFAX HOSPITAL MEDICAL CENTER
AND HALIFAX STAFFING, INC.'S
EXPEDITED MOTION TO STRIKE PORTIONS OF THE DEPOSITION
TESTIMONY OF TOM GARTHWAITE, AUDREY PIKE, AND ERIC PEBURN**

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 3.01(a), Defendants

Halifax Hospital Medical Center and Halifax Staffing, Inc. (collectively, "Halifax"),[1] by and

through their attorneys, respectfully submit this Expedited Motion to Strike Portions of the

Deposition Testimony of Tom Garthwaite, Audrey Pike, and Eric Peburn ("Motion to

Strike"). For the reasons detailed below, Halifax respectfully requests that the Court strike

---

[1] Halifax Hospital Medical Center is a statutory governmental subdivision of the State of Florida, located in Daytona Beach, Florida. More specifically, Halifax Hospital Medical Center is organized under the laws of the State of Florida as a special taxing district created pursuant to an act of the Florida Legislature. Halifax Staffing, Inc. is the instrumentality by which Halifax Hospital Medical Center employs the individuals who work at Halifax Hospital Medical Center facilities. Pursuant to an agreement between Halifax Staffing and Halifax Hospital Medical Center (commencing March 6, 1994), Halifax Staffing assumed the employment of the individuals who had up to that time been employed by the Halifax Hospital Medical Center district, and became the entity used by Halifax Hospital Medical Center to staff its facilities. Halifax Hospital Medical Center pays its employees through a Halifax Staffing "sweep" account.

portions of the deposition testimony of Tom Garthwaite, Audrey Pike, and Eric Peburn because such testimony is not subject to discovery, and therefore should be stricken from the record.

## I.    INTRODUCTION

This Motion to Strike is filed concurrently with Halifax's Motion for Leave to Seal Portions of the Deposition Testimony of Thomas Garthwaite, Audrey Pike, and Eric Peburn ("Motion to Seal").  As the April 11, 2013, close of discovery is rapidly approaching, an expeditious ruling is sought to inform the allowable scope of inquiry during the upcoming depositions of Halifax witnesses David Davidson (General Counsel) and Joni Rahn (30(b)(6) corporate designee), among others.  Further, an expedited decision will help conserve judicial resources by deciding issues promised to also be raised in the United States' forthcoming motion to compel.  *See* Ex. A (Letter from Adam Schwartz to T. Reed Stephens (Mar. 1, 2013)) (redacted).

This Motion to Strike results from the flagrantly improper deposition tactics employed by Plaintiff United States' counsel from the Department of Justice ("DOJ") and Relator's counsel during the recent depositions of Thomas Garthwaite, Audrey Pike, and Eric Peburn.  Both the DOJ and Relator's counsel repeatedly – over unequivocal objections from Halifax's counsel – asked questions of each witness explicitly designed to elicit attorney-client privileged information.  Despite Halifax's standing initial objection and repeated objections during the course of testimony and instructions not to answer such questions, the United States' and Relator's counsel elicited limited privileged testimony from Mr. Garthwaite.  *See* Ex. B (Letter from A. Sidhu to P. Fitzgerald, A. Schwartz, and L. Lin Wood (March 4, 2013)).  Halifax, however, disagrees with Plaintiffs' additional assertion

that other portions of Mr. Garthwaite's testimony, as well as portions of Ms. Pike and Mr. Peburn's deposition testimony, revealed privileged information and that the Halifax privilege was waived.  *See* Ex. A.  This latter characterization is wholly inaccurate because such testimony was (1) not privileged; (2) none of the witnesses had authority, in any case, to waive any of Halifax's privileges intentionally or inadvertently; and (3) disclosure of the occurrence of an attorney-client communication does not waive the privilege that protects the substance of the communication.  Nonetheless, Halifax has filed its accompanying Motion for Leave to Seal to preserve any potential privilege protecting this testimony.

Plaintiffs' counsel have recently informed Halifax of their position that portions of the testimony of these three witnesses constitute a broad waiver of the attorney-client privilege that should result in the production of all privileged documents related to the "creation, negotiation, and amendment of contracts with the physicians at issue in this case" and an opportunity to re-depose each of these witnesses.  *See* Ex. A.  This position is neither supported by the facts nor the law.

Even if the Court were to find that limited portions of Mr. Garthwaite, Ms. Pike, or Mr. Peburn's deposition testimony divulged privileged information, this testimony should, instead, be stricken from the record because none of the deponents had the authority to waive Halifax's attorney-client privilege.  As such, the attorney-client privilege was not waived. This testimony, therefore, was – and remains – immune from discovery under Rule 26(b) and should be stricken from the record.  Halifax, therefore, respectfully requests that this Court enter the Proposed Order and strike the requested deposition testimony from the record.

## II.    BACKGROUND

Mr. Garthwaite, who is presently director of oncology and transplant services at Halifax Hospital, was originally deposed on May 1, 2012.  His fact deposition was re-opened and concluded on February 19, 2013.  The fact deposition of Ms. Pike, who was Halifax's associate general counsel through March 2010, occurred on February 25, 2013.  Mr. Peburn, who is Halifax's chief financial officer, was deposed as a Rule 30(b)(6) witness on February 26, 2013.  Throughout these depositions, the DOJ and Relator's counsel asked questions clearly intended to elicit privileged information from the witnesses despite vigorous objection by Halifax.  For example, counsel for the United States, from the outset of Mr. Garthwaite's deposition, immediately inquired into privileged information, prompting the following exchange:

```
10     Q   Did anyone approach you prior to March of 2009
11  and say that it would not be appropriate to pay the
12  medical oncologists a bonus of 15 percent?
13        MR. CRUMP:  Objection, you can answer to the
14     extent that it doesn't get into any legal advice
15     you sought from Dave Davidson, Audrey Pike or
16     Shelly Shiflet or any legal advice that they gave
17     you.
18        THE WITNESS:  Not that I remember.
19        MR. SCHWARTZ:  David, I just want to be clear
20     about what privilege you're asserting here, because
21     this document was deemed by the court to be
22     admissible based on the crime fraud exception.
23        MR. CRUMP:  Right.
24        MR. SCHWARTZ:  So you're saying that any legal
25     advice surrounding this document is still
Page 232
 1     privileged?
 2        MR. CRUMP:  No.  My understanding of your
 3     question was you were asking him about the time
 4     period before this document came into being.
 5        MR. SCHWARTZ:  Okay.
 6        MR. CRUMP:  That time period, where he was
```

```
7    having discussions or where -- if any discussions
8    existed where he was seeking the legal department's
9    advice, that stuff still remains privileged.
10        MR. SCHWARTZ:  Okay.  But anything after this
11   document regarding legal advice would not be
12   privileged any longer?
13        MR. CRUMP:  Anything related to this document,
14   so from -- this document is not privileged.  His
15   discussions with regard to this document are not
16   privileged.
17        MR. SCHWARTZ:  Okay.  But any other -- any
18   other discussions related to the subject matter
19   you're asserting are still privileged?
20        MR. CRUMP:  Yes.
21        MR. SCHWARTZ:  Okay.
```

Garthwaite Dep., Ex. C, 231:10-232:21, Feb. 19, 2013.  Despite this unequivocal assertion of

privilege, counsel for the DOJ nonetheless immediately returned to this same line of

questioning, resulting in the following exchange:

```
4    Q   Did you have any discussions with anyone at
5    Halifax after March of 2009 regarding the payment of the
6    medical oncology bonus?
7        MR. CRUMP:  Same objection.
8        MR. SCHWARTZ:  I thought you just said
9    anything after the date of this email would no
10   longer be privileged.
11        MR. CRUMP:  No, I said with respect to this
12   email specifically.  If he had communications that
13   related to the legal department's analysis of the
14   issue after March of 2009 that wasn't related to
15   this email, that would still be privileged.
16        MR. SCHWARTZ:  Okay.  So you're asserting the
17   privilege over anything before and after the email.
18   It's just the email --
19        MR. CRUMP:  Not over anything.  Just --
20        MR. SCHWARTZ:  The email and any discussions
21   about it?
22        MR. CRUMP:  Yes.
23        MR. SCHWARTZ:  Okay.  I just want to get the
24   framework of your assertion of privilege.
25        MR. CRUMP:  Well, things that are specific to
```

> Page 235
> 1   the okay to pay.
> 2       MR. SCHWARTZ:  Okay.

Garthwaite Dep., Ex. C, 234:4-235:2.   Counsel for Halifax clearly and unambiguously delineated the scope of the privilege, lodging a standing objection to any questions touching upon such privileged information.   Nevertheless, this improper questioning continued throughout Mr. Garthwaite's deposition, prompting a total of sixteen privilege-based objections.   Of these objections, only one was linked to testimony that *actual* touched upon privileged information.   *See* Ex. B at 1.

These tactics continued during Ms. Pike's deposition, taken less than a week later, where Halifax's counsel was obligated to note <u>eighty-four</u> objections either instructing Ms. Pike not to answer a question because it sought privileged information, or cautioning the witness to refrain from revealing privileged information in response to a question.   Among such questions posed by Relator's counsel were the following:

> 5       Q.  Did you tell Elin that it was okay to pay the
> 6   incentive compensation this one time because Halifax had
> 7   gotten advice from McDermott Will & Emery?

Pike Dep., Ex. D, 76:5-7, Feb. 25, 2013.

> 1       Q.  Did you ever discuss Exhibit 11 with Shelly
> 2   Shiflet?[2]

Pike Dep., Ex. D, 101:1-2.

> 12       Q.  (By Mr. Wood)  Did you have any concerns from
> 13   an ethical standpoint with respect to conveying to these
> 14   individuals in Exhibit 9 that the payment of the 2008

---

[2] At the time, Shelly Shiflet was collections counsel for Halifax and part of Halifax's in-house legal team.

15   compensation -- incentive compensation could be made?

Pike Dep., Ex. D, 133:12-15.  Despite Halifax's repeated objections on the record, counsel for the United States subsequently asserted in a March 1, 2013, letter that Ms. Pike "testified without objection" to actions taken by Halifax General Counsel David Davidson regarding the bonuses paid to Halifax-employed physicians.  *See* Ex. A at 1.  On this basis, the DOJ asserts Halifax waived the privilege relating to "all neurosurgery or medical oncology contracts at issue."  *Id.*  Relator's counsel joined these arguments by letter on March 4, 2013. Halifax's counsel, however, objected to each of these lines of inquiry – which have been withheld pending permission to file such excerpts under seal.

These improper tactics continued the very next day during Mr. Peburn's Rule 30(b)(6) deposition, during which Halifax's counsel lodged fifteen objections in response to both the United States' and Relator's dogged efforts to pierce Halifax's attorney-client privilege.  Nonetheless, despite Mr. Peburn having only been designated to testify regarding Halifax's general processes and procedures, the United States erroneously asserted via letter that Mr. Peburn's testimony touched upon privileged information in three ways – and thus waived the privilege.  *See* Ex. A at 1.  Relator's counsel thereafter joined this assertion.  . Halifax, however, objected during the testimony to each of the referenced lines of inquiry, which have been withheld pending permission to file such excerpts under seal.

Halifax disagrees with the United States' characterization that limited portions of Mr. Garthwaite, Ms. Pike, and Mr. Peburn's deposition testimony as disclosing privileged information.    Even so, because none of the deponents had the authority to waive the privilege on behalf of Halifax, any information that may be ruled to have been privileged

must remain so and outside the bounds of discovery.  Halifax therefore seeks to strike such testimony from the record.

Pursuant to Local Rule 3.01(g) and the Amended Case Management and Scheduling Order at II.A., Halifax conferred with counsel for Plaintiff regarding this motion via teleconference on March 5, 2013, and through related email correspondence, and no agreement has been reached.

## I.  **ARGUMENT**

This Motion is filed pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 3.01(a), as well as this Court's inherent power to control discovery.  *See Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1310 (11th Cir. 2011) (noting court has "inherent power to control discovery under Rule 26").

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any *nonprivileged* matter that is relevant to any party's claim or defense." (emphasis added).  Per this Court's November 6, 2012, Order, communications with in-house and outside counsel are privileged when legal advice is sought or received.  *See* Dkt. No. 188 at 5 ("'[T]he attorney-client privilege applies to corporations' and protects communications to corporate counsel for purpose of obtaining legal advice." (quoting *In re Vioxx*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007))).  Privileged communications are not subject to discovery under Fed. R. Civ. P. 26(b).  *See* Dkt. No. 188 at 4 ("Under the federal rules, a party is permitted to assert the attorney-client privilege to prevent certain otherwise discoverable information from being produced, as an 'exception to the general rule that the law is entitled to every man's evidence.'" (quoting *In re Vioxx*, 501 F. Supp. 2d at 795)).  Should testimony falling "outside the scope of permissible testimony" be

elicited during deposition, it should be stricken from the record.  *See Vaca v. Boeing Co.*, 1981 U.S. Dist. LEXIS 12951, at *7 (S.D. Fla. May 7, 1981) (granting motion to strike).

A.     <u>Halifax's Attorney-Client Privilege Was Not Waived And Is Not Subject to Discovery</u>

1.     <u>Mr. Garthwaite Cannot Waive Halifax's Attorney-Client Privilege</u>

Mr. Garthwaite does not have the authority to unilaterally waive Halifax's attorney-client privilege.  Therefore, any such deposition testimony concerning privileged information must remain privileged and not subject to discovery.  "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).  The Northern District of Florida has noted this power is limited to a "chief executive officer, director, or the corporation's legal representative."  *Pensacola Firefighters' Relief & Pension Fund Bd. of Dirs. v. Merrill Lynch, Pierce, Fenner & Smith*, Inc., Case No. 09cv53, 2010 U.S. Dist. LEXIS 125018, at *22 (N.D. Fla. Nov. 10, 2010). Thus, "a corporate employee cannot waive the corporation's privilege."  *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996); *see also Sprague v. Thorn Ams.*, 129 F.3d 1355, 1371 (10th Cir. 1997) (quoting *Chen* for same proposition).  As Director of Oncology and Transplant Services, Mr. Garthwaite is a corporate employee – not corporate management. As such, Mr. Garthwaite cannot waive Halifax's  attorney-client privilege.

Further, Mr. Garthwaite was deposed in his individual capacity as a fact witness, not as a Rule 30(b)(6) witness on behalf of the corporation.  He had no authorization whatsoever to bind Halifax or otherwise waive its attorney-client privilege.  *See DHL Express (USA), Inc. v. Express Save Indus.*, Case No. 09-60276-CIV, 2009 U.S. Dist. LEXIS 102981, at *13

(S.D. Fla. Oct. 19, 2009). ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity.").

Moreover, the testimony at issue was not the subject of the Court's November 6, 2012, Order involving the interpretation of the crime-fraud exception to the attorney-client privilege. The Court's Order makes clear that only two Halifax documents involving a March 4, 2009, request for advice are subject to the crime-fraud exception in this matter. *See* Dkt. No. 188 at 32. While these specific communications about the mechanics of payment of the medical oncologists' incentive bonuses have been deemed by the Court not to be privileged, Halifax interprets the Court's order as holding that communications both before and after regarding the same subject matter remain privileged – as well as communications beyond the scope of the actual mechanics of the bonus payment. Indeed, this understanding formed the scope of Mr. Crump's standing objection. *See* Garthwaite Dep., Ex. C. Because Mr. Garthwaite's privileged testimony related to meetings and discussions before and after the specific crime-fraud communication and went well beyond the scope of the subject matter ruled on by the Court, his testimony remained privileged and not subject to discovery. In fact, Mr. Garthwaite's inadvertent testimony related to his recollection of legal advice provided by the Halifax Legal Department. This subject matter is consistent with the attorney-client privileged communications that the Court specifically declined to allow Plaintiffs to access.

Finally, Plaintiffs erroneously assert that a final portion of Mr. Garthwaite's testimony effected a waiver of Halifax's privilege. *See* Ex. A; Ex. B at 1 fn.2. In particular,

Plaintiffs assert that Garthwaite's testimony regarding the actions of Halifax's in-house counsel resulted in a waiver. *See* Ex. A at 1. However, "[t]he privilege does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected, not the fact that there has been communication." *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (citing *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964); *Howell v. United States*, 442 F.2d 265, 268-69 (7th Cir. 1971)). Thus, "[a] general description of the work performed by the attorney is not protected by the privilege." *Burton,* 170 F.R.D. at 484 (citing *United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir. 1995)). As a result, Mr. Garthwaite could not have waived Halifax's attorney-client privilege.

      2.   <u>Ms. Pike Cannot Waive Halifax's Attorney-Client Privilege Nor Did Her Testimony Include The Disclosure Of Privileged Communications</u>

As a former Halifax, non-senior officer employee, Ms. Pike does not have the authority to unilaterally waive Halifax's attorney-client privilege. Any deposition testimony concerning privileged information must therefore remain privileged and not subject to discovery. Even while employed as Halifax's associate general counsel, Ms. Pike never had the authority to waive Halifax's attorney-client privilege. *See* Pike Dep., Ex. D, 16:4. As set forth previously, the power to waive a corporation's attorney-client privilege is reserved for its management – that is, officers and directors. *See Weintraub*, 471 U.S. at 348. Ms. Pike was an employee in the legal department, and was not delegated the authority to waive Halifax's attorney-client privilege. As a former employee, her ability to waive the Halifax privilege is even more far-fetched. *See Chen*, 99 F.3d at 1502 (finding that "since a

corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so").

Moreover, Ms. Pike confirmed her former employee status during her deposition. *See, e.g.*, Pike Dep., Ex. D, 9:20-22. She could not, therefore, have waived Halifax's attorney-client privilege at her deposition under any circumstances. *See Allen v. Burns Fry, Ltd.*, Case No. 83 C 2915, 1987 U.S. Dist. LEXIS 4777, at *3 (N.D. Ill. June 8, 1987) ("A manager's power to waive the privilege terminates when he leaves his job."); *see also United States v. Segal*, 2004 U.S. Dist. LEXIS 6616, at *25 (N.D. Ill. Apr. 15, 2004) (finding that former executive's testimony before grand jury regarding privileged subject matter did not waive privilege because "former executives cannot waive a corporation's attorney-client privilege").

Ms. Pike, further, was deposed in her individual capacity as a fact witness, not as a Rule 30(b)(6) witness on behalf of the corporation, and was not speaking for Halifax during her testimony. *See DHL Express (USA), Inc.*, 2009 U.S. Dist. LEXIS 102981, at *13. No aspect of her testimony can be read to have affected a waiver of any Halifax privileges. In particular, Plaintiffs assert that Pike's testimony regarding actions of Halifax's in-house counsel resulted in a waiver. *See* Ex. A at 1. However, "[t]he privilege does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected, not the fact that there has been communication." *Burton*, 170 F.R.D. at 484 (citing *Kendrick*, 331 F.2d at 113; *Howell*, 442 F.2d at 268-69). Thus, "[a] general description of the work performed by the attorney is not protected by the privilege." *Burton,* 170 F.R.D. at 484 (citing *Olano*, 62 F.3d at 1205).

Despite Relator's relentless efforts to pierce the privilege – acting on behalf of and with the oversight of the attending counsel for the United States – Ms. Pike merely provided in her testimony a general description of the actions undertaken by Halifax's in-house counsel, not the specifics of any substantive underlying communications.  Her testimony, therefore, did not include even arguably privileged information.

3.   Mr. Peburn Does Not Have Authority To Waive Halifax's Attorney-Client Privilege, Nor Did He Testify To The Substance Of Privileged Communications

As was the case with the other witnesses, Mr. Peburn did not have the authority to waive Halifax's attorney-client privilege.  Deposition testimony concerning privileged information, therefore, must remain privileged and not subject to discovery.  As the Northern District of Florida has noted, only a "chief executive officer, director, or the corporation's legal representative" are authorized to waive a corporation's privilege.  *Pensacola Firefighters*, 2010 U.S. Dist. LEXIS 125018, at *22.  As Halifax's chief financial officer, Mr. Peburn does not have the authority to waive privileges held by Halifax.

Additionally, while "[m]ere title alone may be an indicia of an agent's capacity to waive the corporation's attorney-client privileges[,] there are no hard and fast rules."  *Id.* at *21 (finding senior vice president could not waive corporation's privilege).  Instead, ability to waive a corporation's privilege also turns upon an individual's "actual authority within the company."  *Id.* at *22.  Mr. Peburn's deposition testimony, however, confirms he did not have the authority to waive the privilege on Halifax's behalf, as he is unable to even "be party to" communications between legal counsel and the board.  *See* Peburn Dep., Ex. E, 239:1-6.

Further, opposing counsel often asked Mr. Peburn questions that strayed well beyond the 30(b)(6) topics for which he was designated, rendering the resulting answers not binding on the corporation.  For example, the United States asserts that Mr. Peburn testified without objection regarding "whether legal made any changes to the neurosurgery or medical oncology contracts."  Ex. A at 1 (citing Peburn Rough Tr., 45:20-24, 47:7-11, Feb. 26. 2013).  However, counsel for Halifax objected, asserting that these questions exceeded the scope of the noticed Rule 30(b)(6) topics.  Peburn was, therefore, answering in his individual capacity.  *See King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995), *aff'd*, 213 F.3d 646 (11th Cir. 2000) (holding that "if the examining party asks questions outside the scope of the matters described in the [Rule 30(b)(6)] notice, the general deposition rules govern").  As such, he was not authorized to bind the corporation or waive its attorney-client privilege.  *See DHL Express (USA), Inc.*, 2009 U.S. Dist. LEXIS 102981, at *13; *see also In re Grand Jury Proceedings*, Case No. M-11-188, 2001 U.S. Dist. LEXIS 2425, at *34 (S.D.N.Y. Mar. 2, 2001) (partially overruled on alternate grounds by *In re Grand Jury Proceedings John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)) (finding CEO testifying in individual capacity before grand jury did not waive corporation's attorney-client privilege).

Finally, to the extent Mr. Peburn discussed information related to privileged topics, his testimony was about whether a communication occurred – not the substance of the communication.  Plaintiffs assert that this type of testimony operates as a waiver as to the substance of communications and actions by Halifax's in-house counsel.  *See* Ex. A at 1.  However, "[t]he privilege does not apply to the fact of communication between a client and attorney.  It is the substance of the communication which is protected, not the fact that there has been communication."  *Burton*, 170 F.R.D. at 484 (D. Kan. 1997) (citing *Kendrick*, 331

F.2d at 113; *Howell*, 442 F.2d at 268-69)).   Thus, "[a] general description of the work performed by the attorney is not protected by the privilege." *Id.* (citing *Olano*, 62 F.3d at 1205).   Mr. Peburn simply testified as a 30(b)(6) witness as to the general procedure employed by Halifax in negotiating, drafting and reviewing contracts, which specifically includes in-house counsel's role in reviewing and evaluating such contracts.   He did not testify about the substantive underlying privileged communications that took place in those contract reviews.

      B.    Testimony Not Subject To Discovery Should Be Stricken From The Record

          1.    Halifax Properly Preserved Its Arguments Through Objections

Halifax properly preserved its arguments by objecting to the relevant testimony during each deposition.   First, counsel for Halifax entered a detailed and complete standing objection at the beginning of Mr. Garthwaite's deposition, asserting privilege over any and all discussions seeking or receiving legal advice – and specifically any discussions regarding the permissibility of bonus payments made to the employed Halifax physicians.   Both DOJ and Relator's counsel acknowledged this assertion.   *See* Garthwaite Dep., Ex. C, at 234:7-235:25.   Such standing objections properly preserve the objection for later challenge.   *See, e.g., Dearmand E. v. City of Antioch*, Case No. C 08-1709, 2009 U.S. Dist. LEXIS 76239, at *4 (N.D. Cal. July 24, 2009) (finding communications privileged in wake of standing objection entered during deposition).

Further, Halifax's counsel objected to each question for which Plaintiffs now assert that Ms. Pike waived Halifax's attorney-client privilege.   Halifax's counsel also objected to the improper lines of questioning launched at Mr. Peburn.   Submission of this testimony awaits this Court's approval of Halifax's accompanying Motion for Leave to Seal.   As a

result, Halifax preserved its objections for this judicial challenge.  *See Modern, Inc. v. Florida*, Case No. 03-cv-718, 2005 U.S. Dist. LEXIS 35515, at *7 (M.D. Fla. July 18, 2005) (noting that through such objection, "party is merely preserving an objection to the admissibility of the evidence").

                2.      <u>To The Extent, Any Of The Halifax Witnesses' Deposition Testimony Disclosed Privileged Information Not Subject To Discovery, This Testimony Should Be Stricken From The Record</u>

      Testimony not subject to discovery should be stricken from the record.  *See Vaca*, 1981 U.S. Dist. LEXIS 12951, at *7 (granting motion to strike because deposition testimony was "outside the scope of permissible testimony").  To the extent any of the three witnesses, Mr. Garthwaite, Ms. Pike, or Mr. Peburn, testified regarding privileged matters, none were authorized to waive Halifax's attorney-client privilege.  This deposition testimony is outside the scope of permissible testimony and should be immune from discovery.  *See* Fed. R. Civ. P. 26(b).  As a result, any such testimony should be stricken from the record.

      WHEREFORE, HALIFAX prays that its request for relief be granted and an Order be entered directing that any privileged information proffered during the depositions of Thomas Garthwaite, Audrey Pike, and Eric Peburn be forever stricken from the record.

Dated: March 12, 2013

T. Reed Stephens (admitted *pro hac vice*)
David O. Crump (admitted *pro hac vice*)
Amy H. Kearbey (admitted *pro hac vice*)
Amandeep S. Sidhu (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001
Tel: (202) 756-8000
Fax: (202) 756-8087
Email: trstephens@mwe.com
Email: dcrump@mwe.com
Email: akearbey@mwe.com
Email: asidhu@mwe.com

Respectfully submitted,

s/ Amandeep S. Sidhu

Anthony N. Upshaw
Fla. Bar. No. 0861091
MCDERMOTT WILL & EMERY LLP
333 Avenue of the Americas
Suite 4500
Miami, FL 33131
Tel: (305) 358-3500
Fax: (305) 347-6500
Email: aupshaw@mwe.com

*Counsel to Defendants Halifax Hospital Medical Center and Halifax Staffing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Middle District of Florida using the CM/ECF system on March 12, 2013.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


s/ Amandeep S. Sidhu
Amandeep S. Sidhu

**CERTIFICATE OF GOOD FAITH CONFERENCE**

In accordance with Local Rule 3.01(g) and the Amended Case Management and Scheduling Order at II.A., I hereby certify that I have conferred with counsel for Plaintiff United States regarding this Motion to Strike before filing, and the parties have been unable to agree on the resolution of this Motion.


s/ Amandeep S. Sidhu
Amandeep S. Sidhu

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, and ) ELIN BAKLID-KUNZ, Relator ) <br> ) <br>    Plaintiffs ) <br> ) <br>    v. ) <br> ) <br> HALIFAX HOSPITAL MEDICAL CENTER ) d/b/a HALIFAX HEALTH a/k/a HALIFAX ) COMMUNITY HEALTH SYSTEM a/k/a ) HALIFAX MEDICAL CENTER and ) HALIFAX STAFFING, INC. ) <br> ) <br>    Defendants ) <br> ) | CASE NO.: 6:09-CV-1002-ORL-31TBS <br><br> JUDGE GREGORY A. PRESNELL <br><br> [FALSE CLAIMS ACT – QUI TAM] |

**[PROPOSED] ORDER GRANTING DEFENDANTS HALIFAX
HOSPITAL MEDICAL CENTER AND HALIFAX STAFFING, INC.'S
<u>EXPEDITED MOTION TO STRIKE PORTIONS OF THE DEPOSITION
TESTIMONY OF TOM GARTHWAITE, AUDREY PIKE, AND ERIC PEBURN</u>**

It is hereby ORDERED that Defendants Halifax Hospital Medical Center and Halifax

Staffing, Inc.'s Expedited Motion to Strike Portions of the Deposition Testimony of Tom

Garthwaite, Audrey Pike, and Eric Peburn is GRANTED. The following deposition

testimony is hereby stricken from the record:

- The deposition testimony of Tom Garthwaite referenced in Halifax's accompanying Motion for Leave to Seal.

- The deposition testimony of Audrey Pike referenced in Halifax's accompanying Motion for Leave to Seal.

- The deposition testimony of Eric Peburn referenced in Halifax's accompanying Motion for Leave to Seal.

SO ORDERED

Dated _____

_____
Thomas B. Smith
United States Magistrate Judge