| HALIFAX HEALTH | | Halifax Health Compliance Standards | Page 1 |
|---|---|---|---|
| | | | Approved: Compliance Dept. |
| | Section | Legal | Effective: 11-1-07 |
| No: LL-145 | Title | Financial Arrangements; Fair Market Valuations | Revised: 12-18-2008 |

## A. Applicability

This policy is applicable to all Halifax Health entities and departments that approve, review, recommend or develop financial relationships with physicians or any other source of patient referrals.

## B. Policy

It is the policy of Halifax Health to ensure that financial arrangements with sources of referrals are based on fair market value.

## C. Background

Both federal and state law limits the types of financial arrangements that a health care organization can have with physicians or other sources of referrals. This policy provides direction on the process that should be followed for determining whether a transaction with a potential referral source is made at fair market value and in compliance with the federal Stark Law and federal and state anti-kickback statutes.

The federal Stark law prohibits a health care entity from billing certain services referred by a physician when the entity has a financial relationship with the physician, unless a statutory exception applies.

Federal and state anti-kickback laws prohibit paying, receiving or offering remuneration when one purpose of the remuneration is to induce referrals for health care services.

## D. Definitions

**Fair Market Value:** In the Stark[1] regulations, *fair market value* means the value in arm's-length transactions, consistent with the general market value. "General market value" means the price that an asset would bring as the result of bona fide bargaining between well-informed buyers and sellers who are not otherwise in a position to generate business for the other party, or the compensation that would be included in a service agreement as the result of bona fide bargaining between well-informed parties to the agreement who are not otherwise in a position to generate business for the other party, on the date of acquisition of the asset or at the time of the service agreement. Usually, the fair market price is the price at which bona fide sales have been consummated for assets of like type, quality, and quantity in a particular market at the time of acquisition, or the compensation that has been included in bona fide service agreements with comparable terms at the time of the agreement, where the price or compensation has not been determined in any manner that takes into account the volume or value of anticipated or actual referrals.

With respect to rentals and leases, "fair market value" means the value of rental property for general commercial purposes (not taking into account its intended use). In the case of a lease of space, this value may not be adjusted to reflect the additional value the prospective lessee or lessor would attribute to the proximity or convenience to the lessor when the lessor is a potential source of patient referrals to the lessee. For purposes of this definition, a rental payment does not take into account intended use if it takes into account costs incurred by the lessor in developing or upgrading the property or maintaining the property or its improvements.[2]

---

[1] Stark regulations refer to the regulations issued by the Centers for Medicare and Medicaid Services that implements the Stark law, 42 U.S.C. § 1395nn, named after its chief sponsor, Congressmen Pete Stark.

[2] 42 C.F.R. § 411.351

| No: | Financial Arrangements; Fair Market Valuations | Page 2 |
|---|---|---|

**Physician:** Physician means a doctor of medicine or osteopathy, a doctor of dental surgery or dental medicine, a doctor of podiatric medicine, a doctor of optometry, or a chiropractor.

**Immediate family member** is defined by the Stark law as a spouse; natural or adoptive parent, child, or sibling; stepparent, stepchild, stepbrother or stepsister; father-in law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law; grandparent or grandchild; and the spouse of a grandparent or grandchild.

### E. Standards

1. Requirement for Fair Market Value Determinations

    Fair market value determinations are required for the following types of financial relationships with a physician or immediate family member of a physician:

    | | |
    |---|---|
    | Employment agreements | Incidental medical staff benefits |
    | Personal services agreements | Nonmonetary compensation |
    | Recruiting agreements | Space and equipment rentals |
    | Group practice purchase arrangements | Equipment rentals |
    | Indirect compensation arrangements | Office space rentals |
    | Asset purchases, sales and exchanges | Practice acquisition and divestiture transactions |
    | Donated information technology | |

2. Documentation
    a. Fair market value determinations shall be documented and submitted to the Legal Department at the time a financial relationship is submitted for Legal Department review.
    b. The Legal Department will maintain such documentation for six (6) years after the financial relationship is no longer in effect.

3. Education and Awareness

    The Compliance Department will prepare and disseminate educational materials on this policy. The Compliance Department will also maintain a financial arrangements resource page on the Halifax Health intranet (info.halifax.org > Compliance > A-Z Index > F > Financial arrangements).

### F. Implementation Guidance

1. Appraisal Reports and Market Analyses
    a. Definition of fair market value

        Appraisal reports or market analyses should clearly indicate that the definition of fair market value used for such appraisal or analysis is consistent with the regulatory definition of fair market value provided by Stark.

    b. Selection of a value within a range

        Determination of the market price or compensation above will begin with a range of benchmark payments, as described below. The appropriate value to select from within the range for a given transaction depends on individual factors. For example, a physician with a considerable experience in an area could receive compensation on the high end of the range of medical directorship compensation in that location for the service. Similarly, where office space to be leased is in below standard condition for the market, the lease rate charged may be in the low end of the range.

    c. Term of Fair Market Valuation

       (1) A fair market valuation should have its useful life stated in it by the valuator.

       (2) If a fair market valuation does not specify its useful life, the manager responsible for the valuation should request that the appraiser reissue the report specifying the period for which the valuation opinion is valid.

       (3) In the event that no term is noted, it will be assumed that the valuation remains accurate for a term equal to the term of the subject agreement, as well as for the first 12 months of any subsequent agreement entered within six months of the termination of the underlying contract, so long as there has been no material change to the agreement terms or supporting facts and circumstances.

       (4) If the term of a fair market valuation has passed on a current contract, a new valuation should be obtained.

    d. Comprehensive

    Any fair market valuation must specifically list what is included in the valuation. Items and services included in the valuation must match those provided for in the agreement and must also match those items and services actually provided to the referral source.

    e. Consideration of Facts and Circumstances

    All valuations should provide a thorough analysis of the facts and circumstances of the underlying transaction in comparison to industry benchmark data; merely comparing payments against objective benchmark measure or industry practices does not guarantee that a payment meets the standard of fair market value.

    f. Selection of Benchmark Data

    Benchmark data includes information on transactions comparable in character, nature and value to the one in issue for which fair market value is to be determined. Generally, only data from the location of the proposed transaction should be considered, unless the transaction is so unique as to necessitate a national or global search. Benchmark data generally should not include transactions between health care facilities and their referral sources. Non-public pricing information of other entities in a manner that would limit the choice or price of items or services provided to patients should not be used.

2. Rental or Lease of Space or Equipment

    a. Limitations.

    For rental or lease agreements, the fair market value is the value of rental property for general commercial purposes, not taking into account the subject of the agreement's intended use. Any rental arrangements between a hospital and physician or otherwise between referral sources may be used as data points in calculating fair market rent, but should not be used exclusively. When a Halifax Health facility is the landlord, the analysis should factor in the value to tenants of proximity or convenience to them when charging rent in leases with referral sources. In contrast, when Halifax Health rents from referral sources, convenience or proximity should not be a factor in the rental payment amount paid by Halifax Health. Rental payments may reflect the value of any similar commercial property with improvements or amenities of a similar value, regardless of why the property was improved.

    Example: Hospital wishes to lease to Physical Therapist 2,000 square feet in its Medical Office Building for business use. All other tenants in the building pay a rent equal to $10 per square foot. Physical Therapist is willing to pay $12 per square foot only because the building is occupied by several orthopedic practices. Physical Therapist believes this proximity to the orthopedic practices will benefit her own practice. This inflated rental price is inappropriate

| No: | Financial Arrangements; Fair Market Valuations | Page 4 |
|---|---|---|

because the rent was inflated solely to enhance Physical Therapist's medical practice. As a result, the rental payments here would take into account the intended use of the property.

Example: Physical Therapist wishes to rent the same space as in the example directly above for a rate of $12 per square foot. In this case, however, the reason she is willing to pay a rental price higher than other tenants is because the particular space she would rent, unlike others in the building, has been recently renovated, including installation of certain technical connectivity lines, the use of which will benefit her patients. Assume that the increase of $2 per square foot is an appropriate reflection of the increase in value from these improvements. Because the reason for the inflation of the rental payments in this case is the improvements available in this space, the higher rental payments would be appropriate here.

Example: In setting the initial rental payments for tenants of Medical Office Building, Hospital looks to comparables in the area. Retail space costs $15 per square foot. Industrial property costs $8 per square foot. Rent in other commercial office buildings costs $12 per square foot. Rent in other medical office buildings is $10 per square foot. The retail space and industrial space may not be of like type or quality as the Medical Office Building, and therefore would not likely be used as comparables. To the extent that they are of like type and quality, the commercial office buildings and the other medical office buildings could be used as comparable information.

    b. Calculating FMV for a Lease of Space.

The fair market value in a lease for space will equal the product of the number of square feet in the space leased and the market value of such property for general commercial purposes, with additional rental amounts pro rated for any common areas.

Example: Hospital leases to Physician 2,000 square feet in its Medical Office Building for business use. A survey of the local area reveals an average rate between non-referral sources to the landlord of $10 per square foot per year. If the space in the Medical Office Building is approximately similar in character and value, the rent charged should be $20,000, usually paid in monthly installments of $1,667.

    c. Calculating FMV for a Lease of Equipment.

Generally, all of the above statements regarding a lease of space apply to a lease of equipment. However, in the case of equipment, due to the nature of medical equipment, sometimes all of the comparables or market values of a transaction type involve entities in a position to refer or generate business to each other. In such cases, one method of calculating fair market value would be to add to the cost a reasonable rate of return on investment of comparable medical equipment.

3. Personal Service Agreements, Recruiting Agreements and Employment Agreements

The fair market value of these agreements is the compensation that would be determined in an arms' length transaction, consistent with the compensation that would be included in such an agreement as the result of bona fide bargaining between well-informed parties who are not otherwise in a position to generate business for the other party, at the time of the agreement

    a. Hourly Rate.

       (1) Independent Third Party Valuation

Where a personal services agreement provides for more than $160 per hour or requires more than 40 hours per month, unless the agreement is with a hospital-based physician or for on-call services, an independent third-party appraiser should determine the fair market value of the agreement pursuant to the Professional Services Agreements Policy, LL-102. If it would be possible for the aggregate compensation from separate agreements with the same

| No: | Financial Arrangements; Fair Market Valuations | Page 5 |
|---|---|---|

physician to exceed $160 per hour, an independent third-party valuation should be obtained. Thus, prior to executing an agreement with a potential referral source, all other agreements with that individual must be analyzed together. When an independent third-party valuation is necessary, arrangements for such valuation should be made with either the Chief Financial Officer or the Director of Finance.

(2) Internal Valuation

Where the aggregate agreements between the potential referral source and the facility provides for $160 or less per hour or requires 40 hours or less per month, a third party valuation may be performed internally, but the compensation must still be no more than fair market value. The benchmark data used should be documented and maintained with a copy of the executed agreement and should not include agreements between a referral source and the recipient of those referrals. Entities are encouraged to refer to survey results provided by the companies listed in the next section.

Example: Hospital wishes to execute a medical director agreement with Physician with compensation of $100 per hour. Physician has a current agreement with Hospital to provide call services in accordance with a call schedule with compensation of $80 per hour. The aggregate compensation will exceed $160 any time Physician provides both on call and medical director duties in the same hour. Because the hourly compensation could exceed $160 per hour, an independent third-party valuation should be obtained. The valuation should consider the aggregate value of both agreements.

b. If an independent third party valuation is deemed necessary, Halifax Health entities are encouraged to contract with an expert pre-approved by the Legal Department. However, in lieu of an independent third party valuation, in all agreements where the compensation is calculated by hourly payments and the services are provided personally by the physician, rather than by the physician's employees or other persons or entities, the hourly rate may be calculated as the average of the 50th percentile of salary for the physician's specialty in one or more of the following surveys (divided by 2,000 hours):

- Sullivan, Colter & Associates, Inc., Physician Compensation and Productivity Survey
- Hospital and Healthcare Compensation Services, Physician Salary and Survey Report
- Medical Group Management Association, Physician Compensation and Productivity Survey
- William M. Mercer, Integrated Health Networks Compensation Survey

In calculating fair market value, the nature of the services to be provided must be considered. The fair market value of administrative services may not be the same as the fair market value of clinical services.

If an hourly rate is used to determine a physician's annual salary, the rate should be multiplied by a number of hours that accurately reflects the number of hours actually worked by the physician each year.

Please contact the Director of Medical Staff Services for acquisition of survey data.

c. Professional and Technical Components.

Where a physician provides the equipment (a technical service) pursuant to a personal services agreement, the fair market valuation should take the rental value of the equipment into consideration in addition to the value of the physician's professional services. The values of both the professional and technical services should be separately stated in one agreement.

4. Retaining Physicians for Corporate Functions

When physician performs a Halifax Health corporate function as distinguished from a Medical Staff function, such as a group speaking event, testimony, or another purpose benefiting Halifax Health, the hourly rate paid should be consistent with this policy.

5. Asset Purchases and Sales

The fair market value in an asset purchase or sale transaction is the value that would be assigned to the asset in an arms' length transaction, consistent with the price the asset would bring as the result of bona fide bargaining between well-informed buyers and sellers who are not otherwise in a position to generate business for the other party, on the date of acquisition of the asset. When acquiring or divesting a medical practice or medical practice assets of a physician, the Medical Practice Asset Acquisition Policy, Compliance Policy, LL-107, should be consulted.

6. Education and Training Hosted by Vendors.

Where a vendor or other third party hosts or produces a physician education or training event at a Halifax Health facility, one method to determine fair market value is to set it equal to the price the vendor would ordinarily charge for each physician's attendance plus the value of any materials, including the rental value for the time period of the training for any equipment used in the training session.

7. Education and Training Hosted by a Halifax Health entity.

Where Halifax Health hosts or produces a physician education or training event, one method of ensuring fair market value is to require the physician to pay the price charged by similar training programs conducted by instructors of similar skill level, regardless of any price charged by the affiliate.

## G. Exhibits

None.

## H. References

42 U.S.C. § 1395nn; 69 Fed. Reg. 16107 (March 26, 2004)

42 C.F.R. Part 411, Subpart J—Financial Relationships Between Physicians and Entities Furnishing Designated Health Services

## I. Related Policies

Fraud and Abuse Compliance Policy (Hospital-wide manual)

Halifax Health Code of Conduct

LL-101 Agreements with Referral Sources; Approval Process

LL-102 Professional Services Agreements

LL-103 Physician Recruiting Agreements

LL-104 Physician Equipment or Space Leases

| No: | Financial Arrangements; Fair Market Valuations | Page 7 |
|---|---|---|

LL-105 Physician Management Services Agreement/Business Office Services Agreements

LL-106 Physician Employment Policy

LL-107 Medical Practice Asset Acquisition

LL-108 Incidental medical staff benefits and non-monetary compensation provided to physicians

LL-109 Loan Guaranties

LL-110 Non-Employed Physician Education Expenses

LL-111 Providing Free/Discounted Training and Equipment to Referral Sources

J. **Revision History**

| Date | Revision/Review | By |
|---|---|---|
| 2/19/08 | Policy created. | G.Rousis |