

**EXHIBIT 30**



# HALIFAX MEDICAL CENTER
## CONTRACT COVER SHEET
(When completed – keep this original form with the contract and send a copy to Accounting)

Instructions: This sheet should be attached as the cover page of each contract during routing for signatures. The manager initially signing for HMC shall complete the information prior to forwarding the contract. The instructions for this sheet contain a listing of various types of contracts and the signatures required for each. If the particular type of contract is not listed, find the most similar type and forward as noted. No payment can be made prior to completion of this form and its receipt/processing by the accounting department.

**SUMMARY OF TERMS:**

Name of company, firm, etc: **ROHIT KHANNA, MD**
Service provided: **NEUROSURGICAL SERVICES**
Contract start date: **7-7-04**    Contract end date: **9/30/07**
Renewal/cancellation date: **90 DAYS**    Cost Center: **00178010 6**
(This is the date by which intervention of renewal/cancellation must be given)    Subacct:
Company to invoice (?) **NO**    Revenue or Expense (?) **Expense**
Start payment date:    Last payment date:
Amount of each payment: $ **12,500.00 Bi-Weekly**    Subsequent payments: $
Unequal payments: First payment: $    Subsequent payments: $
When are payments due (e.g. 15 days after end of month). Provide details **HANDLED THROUGH payroll**

Insurance requirements:    Contract section reference, if any

Other comments (including remittance address): **SEE CONTRACT Page 1**

Any change to prior contract, please list:

Person to contact for contract questions:
Person to receive renewal reminder:

**SIGNATURES and ROUTING INSTRUCTIONS** (see instructions and fill in names or N/A):

| REQUIRED SIGNATURES | DATE |
|---|---|
| Managers: | |
| Legal: | |

**OTHER SIGNATURES**
(see second page)
Administrator: _[signature]_
Operations:
Nursing
Materials Manager:
Finance:

Halifax
30(b)(6) **30**
4/16/13

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is entered into by and between HALIFAX STAFFING, INC., hereinafter referred to as the "Company", and ROHIT KHANNA, M.D., hereinafter referred to as "Employee".

### WITNESSETH

In consideration of the covenants and agreements herein contained and the moneys to be paid hereunder, the Company agrees to hire Employee and Employee agrees to work for the Company upon the following terms and conditions:

1. **Duties of Employee.** Employee is employed by the Company to render neurosurgical services on behalf of the Company as outlined herein. All duties performed hereunder shall be carried out with that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent and similar neurosurgeons. The Employee's duties shall also include: keeping and maintaining appropriate records relating to all professional services rendered by Employee under this agreement; preparing in connection with such services all reports, claims and correspondence necessary and appropriate in the circumstances; and taking reasonable steps to maintain and improve his professional skills. The Company shall not participate in or interfere with the exercise of medical judgment by the Employee or in the care or treatment of patients by the Employee; provided, however, that the medical care rendered by the Employee at all times meets the standards of performance called for under this Agreement.

2. **Devotion of Time to Practice of Medicine.** Employee shall not engage in, carry on, or be employed by, directly or indirectly, any other business or profession in which the Employee is practicing medicine without the express written consent of the Company. The Employee's practice shall be limited to those facilities serviced or approved by the Company.

3. **Compensation.** The Company shall pay to Employee as compensation for services the following:

   a. An Annual Base Salary of Three Hundred Twenty Five Thousand Dollars ($325,000.00). Payments hereunder will be made on a bi-weekly basis.

   b. An annual incentive in an amount equal to all cash collections which exceed $325,000.00 during each twelve month period of this Agreement. Payments hereunder will be made on a quarterly basis.

   c. Any other reasonable compensation as determined by the Company from time to time.

8/23/05

The Employee's compensation under this Agreement in the best judgment of the Company is, and must at all times be consistent with the principles under which the Company is obligated to conduct its affairs, including federal and state laws, rules, regulations and guidelines regarding Medicare, and including the rules and regulations of the Internal Revenue Service and the Florida Department of Revenue that are applicable to tax exempt organizations.

4. **Term of Agreement**. This Agreement shall be effective commencing the 7th day of July, 2004 and ending the 30th day of September, 2007.

5. **Expenses**. The Company shall pay the following expenses relating to Employee's service for the Company:

a. All drugs, supplies and professional equipment, as approved through the budgetary process.

b. Professional office space and appropriate general premises liability insurance coverage in accordance with Company policies.

c. ~~One~~ Two [RK] non-clinical full-time employee for the efficient operation of the Employee's practice.

d. One physician assistant. The District will be responsible for billing patients and third party payors for the services rendered by the physician assistant, and all payments received shall accrue to the District.

e. License fees, membership dues in professional associations and reasonable subscriptions to professional journals, and professional medical textbooks.

f. Reasonable expenses incurred in connection with medical meetings, conventions, continuing medical education, and business entertainment expenses.

g. Reasonable fees for cellular phone service and beeper service.

h. All premiums for malpractice insurance with coverage limits of $250,000/750,000..

i. An automobile allowance in the amount of Nine Hundred Dollars ($900.00) per month.

In the event the Employee shares office space with another physician or physicians, the Company shall be responsible only for the Employee's pro rata share of items a and b above.

6. **Sovereign Immunity**. In all respects pursuant to this Agreement, the Employee shall be acting as an agent of the Halifax Hospital Medical Center special tax district (the "District"). As such, the Employee is entitled to sovereign immunity, pursuant to this Agreement, Florida Statutes §768.28 and all other applicable law. It shall be the Employee's

responsibility to obtain liability coverage for any actions taken beyond the scope of this Agreement.

7. **Patient Billing**. The Employee shall assign to the District his professional fee for all services rendered pursuant to this Agreement. The District, or its designated agent, shall accept responsibility for billing patients and third party payors for such services, and all payments received shall accrue to the District without exception. In no event shall the Employee bill, charge, or seek compensation or remuneration from any patient and/or third payor for services rendered pursuant to this Agreement.

8. **Professional Policies and Procedures**. Employee agrees to comply with the policies and procedures of the Company so long as they are reasonable and do not violate any law or professional ethics and do not impede the Employee from exercising his own medical professional judgment. No policy shall prohibit the Employee from displaying his name at the Employee's practice location. The Employee may not relocate his practice without the consent of both parties, unless this Agreement is terminated.

Employee shall notify the Company as follows, in writing, after any of the following events:

(i) a malpractice claim or any similar legal proceeding against the Employee is threatened or is actually filed within three (3) business days of notice of the claim or proceeding;

(ii) an event occurs or an illness or other situation develops that substantially interrupts all or a portion of the Employee's professional practice or that will in all likelihood within the next ninety (90) days materially adversely affect the Employee's ability to perform his duties under this Agreement, within three (3) business days of the event; or

(iii) the occurrence of an incident which the Employee knows or should know is likely to give rise to a malpractice claim if all the facts were known to the patient or patient's family, within three (3) business days of the incident.

The Employee shall comply with those provisions of law that affect reimbursement for professional services rendered by the Employee. Furthermore, the Employee will not, either by action or inaction, do or cause anything that would adversely affect reimbursement payment to the Company or which would adversely affect the Company's Medicare provider status.

9. **Personal Leave and Benefits**. Employee shall be entitled to up to up to four (4) weeks Personal Leave each year of this Agreement. Time spent at permitted continuing medical education shall not be counted against Personal Leave. The Company shall maintain a life insurance policy for the Employee in the amount of Employee's annual salary, with the beneficiary of said policy to be designated by the Employee. The Company shall provide a health plan for the Employee. Such coverage shall be in accordance with similar policies available to all Company employees. The Employee shall be entitled to all other standard benefits as are available to other Company employees, including a pension plan, and any other benefits as set forth in the Company's Employee Handbook.

Contracts/Physician/KhannaEmployment
8/23/05

8/23/05

10. **Continuing Medical Education**. Employee shall be entitled to attend ____ approved seminars for Continuing Medical Education each year. Time spent in CME activity may not exceed two (2) weeks per year, without prior written consent of the Company.

11. **Termination of Agreement**.

   a. Either of the parties may voluntarily elect to terminate this Agreement at any time provided that the party electing to terminate must deliver to the other party written notice of such intention to terminate not less than ninety (90) days prior to the date upon which termination is desired.

   b. The Company may terminate this Agreement at any time if Employee becomes unfit to properly practice medicine on behalf of the Company because of any good and sufficient cause, including but not limited to commission of any felony or misdemeanor involving moral turpitude, failure to take call or provide timely coverage, neglect of patients, behavior which discredits the Company, or abuse of alcohol or drugs, or any violation of the Medical Practice Act; or if Employee becomes legally disqualified to render professional services as a physician within the State of Florida; or is no longer on the staff at Halifax Medical Center, with Active or Associate Staff privileges in medical oncology. Such termination shall be effective upon the delivery of written notice thereof to Employee or at such later time as may be designated in said notice.

   c. All terms and conditions of Employee's employment with the Company are provided in this Agreement. Employee's fair hearing rights under the Bylaws of any hospital medical staff of which the Employee is a member continue to apply to Employee's medical staff and clinical privileges at said facility but are not applicable to the termination or renewal of this Agreement. Any dispute arising from this Agreement shall be handled by a court of competent jurisdiction.

   d. This Agreement shall terminate upon the death of the Employee. Notwithstanding termination as a result of such death, however, the Company shall continue to carry out any provisions under this Agreement which contemplate performance subsequent to such termination. Furthermore, such termination shall not affect any liability or other obligation of any party hereto which accrued prior to such termination. In the event of death of the Employee resulting in termination of this Agreement, patients then under the care of the Employee shall be cared for by other physician employees of the Company, if such patients so elect.

12. **Limitations of Authority**. Without the express written consent from the Company, Employee shall have no apparent or implied authority to:

   a. Pledge the credit of the Company or any of its other Employees;

   b. Bind the Company under any contract, agreement, note, mortgage or otherwise;

Contracts/Physician/KhannaEmployment
8/23/05

CONFIDENTIAL/FOIA EXEMPT                                            HAL-1 0045539

c.  Subject to policies adopted by the Company, release or discharge any debt due the Company unless the Company has received the full amount thereof;

d.  Sell, mortgage, transfer or otherwise dispose of any assets of the Company.

13. **Invalid Provisions**. The invalidity or unenforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. **Modification**. No change or modification of this Agreement shall be valid unless the same be in writing and signed by the parties hereto. Notwithstanding any other provisions of this Agreement, if the governmental agencies which administer or enforce Medicare or Medicaid or if any other federal or state regulatory body or agency passes, issues, interprets or promulgates any law, rule, regulation, standard, guideline or interpretation while this Agreement is in effect which prohibits, restricts, limits or in any way materially adversely affects the rights or obligations hereunder of either the Company or the Employee then either party may give the other party notice of intent to amend this Agreement to the satisfaction of the noticing party, to compensate or adjust for such prohibition, restriction, limitation, or materially adverse effect; provided, however, that the reduction in Medicare or Medicaid reimbursement rates instituted by the agencies administering such programs shall not give the Company the right to send any such notice of intent to amend.

If the parties are unable to mutually agree to amend this Agreement in writing within thirty (30) days after such a notice is given, then either party may terminate this Agreement without further liability. However, if the implementation of any law, rules, regulation, standard, guideline or interpretation which gave rise to the perceived need to amend this Agreement is stayed on account of any administrative appeal or any suit filed in a court of competent jurisdiction, then the right to amend or terminate as set in this section above shall also be stayed during the period of such administrative or court ordered stay.

15. **Applicable Law and Binding Effect**. This Agreement shall be construed and regulated under and by the laws of the State of Florida, and shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns. Venue shall be with the appropriate court having jurisdiction in Volusia County, Florida.

16. **Attorneys' Fees**. In the event any litigation is brought to enforce the terms of this Agreement, the prevailing party in such action shall recover from the non-prevailing party all the prevailing party's reasonable costs and attorneys' fees incurred in such action.

17. **Confidentiality**. The parties agree that the terms of this contract are to be kept confidential and may not be disclosed to any third party without the prior written consent of both parties, except as required by law. This paragraph shall survive the termination of this Agreement.

18. **Notices**. All notices provided for in this Agreement shall be made by certified mail, return receipt requested to the Employee at his primary place of business, and to the

Company at Post Office Box 2830, Daytona Beach, Florida 32120-2830, Attention: Chief Executive Officer, or such other address as requested in writing by the parties.

IN WITNESS WHEREOF, the undersigned have hereunto caused this Agreement to be executed the day and year first above written.

| ROHIT KHANNA, M.D. | HALIFAX STAFFING, INC. |
|---|---|
| _[signature]_ | By: _[signature]_ |
| Date: 11/9/5 | Date: 11-9-05 |
| Witness: | Witness: _[signature]_ |

Contracts/Physician/KhannaEmployment
8/23/05

CONFIDENTIAL/FOIA EXEMPT                                            HAL-1 0045541