**EXHIBIT 39**

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is entered into by and between HALIFAX STAFFING, INC., hereinafter referred to as the "Company" and Federico Vinas, M.,D., hereinafter referred to as "Employee".

### WITNESSETH

In consideration of the covenants and agreements herein contained and the moneys to be paid hereunder, the Company agrees to hire Employee and Employee agrees to work for the Company upon the following terms and conditions:

1. **Duties of Employee.** Employee is employed by the Company to render neurosurgical services on behalf of the Company as outlined herein. All duties performed hereunder shall be carried out with that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent and similar neurosurgeons. The Employee's duties shall also include: keeping and maintaining appropriate records relating to all professional services rendered by Employee under this agreement; preparing in connection with such services all reports, claims and correspondence necessary and appropriate in the circumstances; and taking reasonable steps to maintain and improve his/her professional skills. The Company shall not participate in or interfere with the exercise of medical judgment by the Employee or in the care or treatment of patients by the Employee; provided, however, that the medical care rendered by the Employee at all times meets the standards of performance called for under this Agreement.

2. **Devotion of Time to Practice of Medicine.** Employee shall not engage in, carry on, or be employed by, directly or indirectly, any other business or profession in which the Employee is practicing medicine without the express written consent of the Company. The Employee's practice shall be limited to those facilities serviced or approved by the Company.

3. **Compensation.** The Company shall pay to Employee as compensation for services the following:

    a. An Annual Base Salary of Two Hundred Fifty Thousand Dollars ($250,000.00). Payments will be made on a bi-weekly basis.

    b. An annual incentive compensation of all cash collections which exceed $250,000.00 during each twelve month period of this Agreement. Once the base of $250,000.00 in cash collections has been reached, calculations and payment to the Employee will be made on a quarterly basis.

    c. A signing bonus of Twenty Thousand Dollars ($20,000.00) to be paid upon execution of this Agreement.

    d. Any other reasonable compensation as determined by the Company from time to time.



1

CMS Internal Control #:   VIN-00444

CONFIDENTIAL/FOIA EXEMPT                                                                 HAL-1 0045256

The Employee's compensation under this Agreement in the best judgment of the Company is, and must at all times be consistent with the principles under which the Company is obligated to conduct its affairs, including federal and state laws, rules, regulations and guidelines regarding Medicare, and including the rules and regulations of the Internal Revenue Service and the Florida Department of Revenue that are applicable to tax exempt organizations.

4. **Term of Agreement.** The effective date of this Agreement shall be the ____ day of _____, 2000. The term of this Agreement shall be for two (2) years.

07/10/2000

5. **Expenses.** The Company shall pay the following expenses relating to Employee's service to the Company:

a. All drugs, supplies and professional equipment, as approved through the budgetary process.

b. Professional office space and appropriate general liability insurance coverage in accordance with Company policies.

c. One non-physician employee for the efficient operation of the Employee's practice.

d. License fees, membership dues in professional associations and reasonable subscriptions to professional journals, and professional medical textbooks.

e. Reasonable expenses incurred in connection with medical meetings, conventions, continuing medical education and business entertainment expenses.

f. Reasonable fees incurred in connection with computer hardware and software required for the practice. Prior approval of such expenses in required.

g. Reasonable fees for cellular phone service and beeper service.

h. Reimbursement for expenses associated with moving Employee's personal belongings and travel, meals and lodging expenses incurred during his move to the Daytona Beach area. Reimbursement will be made upon the presentation of proper documentation to the Company.

i. A monthly automobile allowance not to exceed $900.00 per month.

2

CONFIDENTIAL/FOIA EXEMPT

HAL-1 0045257

In the event the Employee shares office space with another physician or physicians, the Company shall be responsible only for the Employee's pro rata share of items "a" and "b" above.

6. **Sovereign Immunity.** In all respects pursuant to this Agreement, the Employee shall be acting as an agent of the Halifax Hospital Medical Center special tax district. As such, the Employee is entitled to sovereign immunity, pursuant to this Agreement, Florida Statutes 768.28 and all other applicable law. In addition to Sovereign Immunity, the Company will provide additional medical malpractice insurance coverage for the Employee with limits of $250,000/750,000, including tail coverage. It shall be the Employee's responsibility to obtain liability coverage for any actions taken beyond the scope of this Agreement.

7. **Patient Billing.** The Employee shall assign to the Company, in writing, his professional fee for all services rendered pursuant to this Agreement. The Company shall accept responsibility for billing patients and third party payors for such services, and all payments received shall accrue to the Company without exception.

8. **Professional Policies and Procedures.** Employee agrees to comply with the policies and procedures of the Company so long as they are reasonable and do not violate any law or professional ethics and do not impede the Employee from exercising his own medical professional judgment. No policy shall prohibit the Employee from displaying his name at the Employee's practice location. The Employee may not relocate his practice without the consent of both parties, unless this Agreement is terminated.

Employee shall notify the Company as follows, in writing, after any of the following events:

(i) a malpractice claim or any similar legal proceeding against the Employee is threatened or is actually filed within three (3) business days of notice of the claim or proceeding;

(ii) an event occurs or an illness or other situation develops that substantially interrupts all or a portion of the Employee's professional practice or that will in all likelihood within the next ninety (90) days materially adversely affect the Employee's ability to perform his/her duties under this Agreement, within three (3) business days of the event; or

(iii) the occurrence of an incident which the Employee knows or should know is likely to give rise to a malpractice claim if all the facts were known to the patient or patient's family, within three (3) business days of the incident.

3

CONFIDENTIAL/FOIA EXEMPT

HAL-1 0045258

The Employee shall comply with those provisions of law that affect reimbursement for professional services rendered by the Employee. Furthermore, the Employee will not, either by action or inaction, do or cause anything that would adversely affect reimbursement payment to the Company or which would adversely affect the Company's Medicare provider status.

9. **Personal Leave and Benefits.** Employee shall be entitled to up to four (4) weeks Personal Leave each year of this Agreement. Time spent at permitted continuing medical education shall not be counted against Personal Leave. The Company shall maintain a life insurance policy for the Employee in the amount of the Employee's annual salary, with the beneficiary of said policy to be designated by the Employee. The Company shall provide a health and dental plan for the Employee. Such coverage shall be in accordance with similar policies available to all Company employees. The Employee shall be entitled to all other standard benefits as are available to other Company employees, including a pension plan, and any other benefits as set forth in the Company's Employee Handbook.

10. **Continuing Medical Education.** Employee shall be entitled to attend approved seminars for Continuing Medical Education. Time spent in CME activity may not exceed two (2) weeks per year, without prior written consent of the Company.

11. **Termination of Agreement.**

   a. Either of the parties may voluntarily elect to terminate this Agreement at any time provided that the party electing to terminate must deliver to the other party written notice of such intention to terminate not less than ninety (90) days prior to the date upon which termination is desired.

   b. The Company may terminate this Agreement at any time if Employee becomes unfit to properly practice medicine on behalf of the Company because of any good and sufficient cause, including but not limited to commission of any felony, or any misdemeanor involving moral turpitude; failure to take call or provide timely coverage; neglect of patients; behavior which discredits the Company; abuse of alcohol or drugs; any violations of the Medical Practice Act; or if Employee becomes legally disqualified to render professional services as a physician or loses Staff privileges in neurosurgery at our facility. Such termination shall be effective upon the delivery of written notice thereof to Employee or at such later time as may be designated in said notice.

   c. All terms and conditions of Employee's employment with the Company are provided in this Agreement. Employee's fair hearing rights under the Bylaws of any hospital medical staff of which Employee is a member continue to apply to Employee's medical staff and clinical privileges at said facility but are not applicable to the termination or renewal of this Agreement. Any dispute arising from this Agreement shall be handled by a court of competent jurisdiction.

CONFIDENTIAL/FOIA EXEMPT

HAL-1 0045259

d.  This Agreement shall terminate upon the death of the Employee. Notwithstanding termination as a result of such death, however, the Company shall continue to carry out any provisions under this Agreement which contemplate performance subsequent to such termination. Furthermore, such termination shall not affect any liability or other obligation of any party hereto, which accrued prior to such termination. In the event of death of the Employee resulting in termination of this Agreement, patients then under the care of the Employee shall be cared for by other physician employees of the Company, if such patients so elect.

12. **Limitations of Authority.** Without the express written consent from the Company, Employee shall have no apparent or implied authority to:

a.  Pledge the credit of the Company or any of its other Employees;

b.  Bind the Company under any contract, agreement, note, mortgage or otherwise;

c.  Subject to policies adopted by the Companies, release or discharge any debt due the Company unless the Company has received the full amount thereof;

d.  Sell, mortgage, transfer or otherwise dispose of any assets of the Company.

13. **Invalid Provisions.** The invalidity or unenforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. **Modification.** No change or modification of this Agreement shall be valid unless the same be in writing and signed by the parties hereto. Notwithstanding any other provisions of this Agreement, if the governmental agencies which administer or enforce Medicare or Medicaid or if any other federal or state regulatory body or agency passes, issues, interprets or promulgates any law, rule, regulation, standard, guideline or interpretation while this Agreement is in effect which prohibits, restricts, limits or in any way materially adversely affects the rights or obligations hereunder of either the Company or the Employee then either party may give the other party notice of intent to amend this Agreement to the satisfaction of the noticing party, to compensate or adjust for

CONFIDENTIAL/FOIA EXEMPT

HAL-1 0045260

such prohibition, restriction, limitation, or materially adverse effect; provided, however, that the reduction in Medicare or Medicaid reimbursement rates instituted by the agencies administering such programs shall not give the Company the right to send any such notice of intent to amend.

If the parties are unable to mutually agree to amend this Agreement in writing within thirty (30) days after such a notice is given, then either party may terminate this Agreement without further liability. However, if the implementation of any law, rules, regulation, standard, guideline or interpretation which gave rise to the perceived need to amend this Agreement is stayed on account of any administrative appeal or any suit filed in a court of competent jurisdiction, then the right to amend or terminate as set in this section above shall also be stayed during the period of such administrative or court ordered stay.

15. **Applicable Law and Binding Effect**.  This Agreement shall be construed and regulated under and by the laws of the State of Florida, and shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns. Venue shall be with the appropriate court having jurisdiction in Volusia County, Florida.

16. **Attorney's Fees**.  In the event any litigation is brought to enforce the terms of this Agreement, the prevailing party in such action shall recover from the non-prevailing party all the prevailing party's reasonable costs and attorneys' fees incurred in such action.

17. **Confidentiality**.  The parties agree that the terms of this contract are to be kept confidential and may not be disclosed to any third party without the prior written consent of both parties, except as required by law. This paragraph shall survive the termination of this Agreement.

18. **Notices.**  All notices provided for in this Agreement shall be made by certified mail, return receipt requested to the Employee at his/her primary place of business, and to the Company at Post Office Box 2830, Daytona Beach, Florida 32120-2830, Attention: Chief Executive Officer, or such other address as requested in writing by the parties.

CONFIDENTIAL/FOIA EXEMPT

HAL-1 0045261

IN WITNESS WHEREOF, the undersigned have hereunto caused this Agreement to be executed the day and year first above written.

| **PHYSICIAN** | **HALIFAX STAFFING, INC.** |
|---|---|
| FEDERICO VINAS <br> Name Printed | DAN LANG <br> Name Printed |
| _signature_ <br> Signature | _signature_ <br> Signature |
| Date: 2/09/2000 | Date: 2-2-00 |
| Witness: _signature_ | Witness: Marie Huber |
| MARIA J. DUCHENE <br> Notary Public, Wayne County, MI <br> My Commission Expires Mar. 21, 2000 | I recommend execution |

7

CONFIDENTIAL/FOIA EXEMPT                                   HAL-1 0045262

ADDENDUM TO THE EMPLOYMENT AGREEMENT
FOR
FEDERICO VINAS, M.D.

## CALL SCHEDULE

The Employee agrees to participate in a regular call schedule at Halifax Medical Center with the other neurosurgeons practicing in the area. For a period of one-year commencing the day Employee begins practicing, Employee agrees to the following call schedule:

(a)   Employee will be on-call for twelve (12) days per month. Included in these twelve days will be two (2) weekends per month.

(b)   Employee will be eligible to participate in all reimbursement programs that are offered to neurosurgeons taking call.

(c)   Should circumstances allow for a reduction in this call schedule during the first year, Employee may seek a reduction in call days if approved by the other neurosurgeons also taking call and by the Company. Employee may not reduce the above stated call days without the approval of the other neurosurgeons taking call and the Company.

(d)   The call schedule will be reviewed prior to the end of the first year of Employee's practice in order to make appropriate plans for call in the second year of employment.

IN WITNESS WHEREOF, the undersigned have hereunto caused this Addendum to be executed on the date(s) indicated.

FEDERICO VINAS, M.D.                                    HALIFAX STAFFING, INC.

_[signature]_                                          _[signature]_

Date: 2/9/2000                                          Date: 2-2-00

Witness: _[signature]_                                  Witness: _[signature]_

MARIA J. DUCHENE
Notary Public, Wayne County, MI
My Commission Expires Mar. 21, 2000

"I recommend execution".

CONFIDENTIAL/FOIA EXEMPT                                                HAL-1 0045263

## AMENDMENT TO EMPLOYMENT AGREEMENT

THIS AMENDMENT to Employment Agreement is by and between HALIFAX STAFFING, INC., hereinafter referred to as the "Company", and FEDERICO VINAS, M.D., hereinafter referred to as "Employee".

The Employment Agreement between the parties effective July 10, 2000 is hereby amended as follows:

1. The current Section 3(d) is renumbered to Section 3(e). A new Section 3(d) is created to read as follows:

    d. An amount equal to 200% of the then current Medicare rate for all Trauma Stat services provided at Halifax Medical Center.

    The remaining provisions of Section 3 shall remain the same.

2. The effective date of this Amendment is July 10, 2000.

All terms and conditions of the Agreement not specifically amended hereinabove remain the same.

IN WITNESS WHEREOF, the parties have executed this Amendment on the date(s) indicated below.

HALIFAX STAFFING, INC.                     FEDERICO VINAS, M.D.

By: _____                _____

Title: ADMINISTRATOR

Date: 10-27-00                             Date: 11/02/00

Witness: _____                   Witness: _____

CONFIDENTIAL/FOIA EXEMPT                                           HAL-1 0045264

## SECOND AMENDMENT TO EMPLOYMENT AGREEMENT

THIS SECOND AMENDMENT to Employment Agreement is by and between HALIFAX STAFFING, INC., hereinafter referred to as the "Company", and FEDERICO VINAS, M.D., hereinafter referred to as "Employee".

The Employment Agreement between the parties effective July 10, 2000 is hereby amended as follows:

1. Section 4, Term of Agreement, is amended to read as follows:

   The term of this Agreement shall commence on the 10th day of July, 2000, and shall continue in full force and effect through the 9th day of July, 2003.

3. The effective date of this Second Amendment is _April 19_, 2002.

All terms and conditions of the Employment Agreement not specifically amended hereinabove remain the same.

IN WITNESS WHEREOF, the parties have executed this Second Amendment on the date(s) indicated below.

HALIFAX MEDICAL CENTER                FEDERICO VINAS, M.D.

By: _[signature]_                      _[signature]_
Title: _Administrator_
Date: _1/30/02_                        Date: _4/15/02_
Witness: _[signature]_                 Witness: _[signature]_

## THIRD AMENDMENT TO EMPLOYMENT AGREEMENT

THIS THIRD AMENDMENT to Employment Agreement is by and between HALIFAX STAFFING, INC., hereinafter referred to as the "Company", and FEDERICO VINAS, M.D., hereinafter referred to as "Employee".

The Employment Agreement between the parties effective July 10, 2000 is hereby amended as follows:

1. Section 4, *Term of Agreement*, is amended to read as follows:

    "The term of this Agreement shall commence on the 10th day of July, 2003 and shall continue in full force and effect through the 9th day of July, 2004. Thereafter, unless otherwise terminated as provided for in Section 11, this Agreement shall automatically renew for additional one year terms."

2. The effective date of this Third Amendment is July 10, 2003.

All terms and conditions of the Employment Agreement not specifically amended hereinabove remain the same.

IN WITNESS WHEREOF, the parties have executed this Third Amendment on the date(s) indicated below.

| HALIFAX STAFFING, INC. | FEDERICO VINAS, M.D. |
|---|---|
| By: [signature] | By: [signature] |
| Title: Administration | |
| Date: 7-3-03 | Date: 7/2/03 |
| Witness: [signature] | Witness: [signature] |