# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKLID-KUNZ, | § § § § | Civ. Act. No. 6:09-CV-1002-ORL-31GAP TBS |
| Plaintiff, | § § § | |
| v. | § § | JUDGE Gregory A. Presnell |
| HALIFAX HOSP. MED. CTR, et al. | § § | |
| Defendant. | § § | |

## PLAINTIFF UNITED STATES OF AMERICA'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DONALD W. MORAN

The United States files this motion pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), and its progeny, to exclude the expert testimony of Donald W. Moran at trial. The United States alleges that Halifax Hospital Medical Center and Halifax Staffing, Inc. (collectively, Halifax) violated the Stark Law by having improper financial relationships with physicians who referred designated health services to Halifax without meeting one of the exceptions to the Stark Law and violated the False Claims Act by knowingly submitting claims for payment to Medicare in violation of the Stark Law. Mr. Moran is offering testimony about whether claims forms identify referring physicians within the meaning of the Stark Law. Mr. Moran's proposed testimony should be excluded because: he seeks to offer testimony on pure questions of law; his testimony is not reliable; his testimony is based on his lay opinion; and the limited testimony which would otherwise be admissible is cumulative of the testimony provided by the United States' expert.

## LEGAL STANDARD

Pursuant to Federal Rule of Evidence 702, expert testimony is only admissible if: (1) the expert's scientific, technical, or other specialized knowledge will assist the fact finder in either understanding the evidence or determining a fact in issue; (2) the expert's testimony is based on sufficient facts or data; (3) the expert's testimony is the "product of reliable principles and methods"; and (4) those principles and methods were applied to the facts of the case. Fed. R. Evid. 702.

The district court judge serves as a "gatekeeper" who determines the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert*, 509 U.S. 579; *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The party offering the expert testimony has the burden of establishing each of the required elements of Rule 702. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); *Rink*, 400 F.3d at 1292. The Eleventh Circuit applies a three-part test to determine whether the expert testimony is admissible: "(1) the expert must be qualified to testify competently regarding the matters he intends to address, (2) the methodology must be reliable under *Daubert*, and (3) the testimony must assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence or determine a fact in issue." *Sumner v. Biomet, Inc.*, 434 Fed. Appx. 834, 841 (11th Cir. 2011); (*citing Hendrix*, 609 F.3d at 1194; *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). These three elements are referred to as qualifications, helpfulness, and reliability. *R&R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234, at *6 (S.D. Fla. Sept. 12, 2010) (*citing United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2003); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

## ARGUMENT

Mr. Moran's proposed testimony should be excluded because it either seeks to offer opinions on clearly established questions of law, is unsupported by anything other than his own report and is therefore unreliable, is based solely on his lay opinion, or is not helpful to the jury because it would duplicate the counting of Medicare claims, which, by Mr. Moran's own admission, is the subject of the report of the United States' expert on claims analysis, Mr. Ian Dew.

### A.  Mr. Moran's Proposed Testimony Should be Excluded Because it Offers Legal Opinions.

It is well established that an expert may not testify as to questions of law.  *Cook v. Sheriff of Monroe Cty., FL*, 402 F.3d 1092, 1112 fn.8 (11th Cir. 2005) ("testifying experts may not offer legal conclusions").  The interpretation of a statute or regulation is a pure question of law.  *See Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 222 (5th Cir. 1979)[1] (including regulations and statutes in a list of issues of "pure law").  Part of the reason that an expert may not provide legal testimony is that such testimony invades the role of the district court judge in instructing the jury on what the law is.  *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.");  *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law").  As a result, such testimony is also impermissible under Federal Rule of Evidence 403 because any probative value of the evidence would be "substantially outweighed by its potential

---

[1] The Eleventh Circuit has adopted as precedent all Fifth Circuit decisions prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

to confuse or mislead the jury," particularly given the significance lay jurors may assign to expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (*citing United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)).

The Stark Law prohibits physicians who have financial relationships with healthcare providers from referring patients to that provider for designated health services. 42 U.S.C. § 1395nn. The statute defines "referral" as:

> Except as provided in subparagraph (c) [which relates to radiation oncology], . . . the request by a physician for the item or service, including the request by a physician for a consultation with another physician (and any test or procedure ordered by, or to be performed by (or under the supervision of) that other physician), constitutes a "referral" by a "referring physician." . . . [Also] the request or establishment of a plan of care by a physician which includes the provision of designated health services constitutes a "referral" by a "referring physician."

42 U.S.C. § 1395nn(h)(5)(A)-(B). The accompanying regulations interpreting the statute also broadly define "referral" as, among other things, "a request by a physician that includes the provision of any designated health service for which payment may be made under Medicare, the establishment of a plan of care by a physician that includes the provision of such a designated health service, or the certifying or recertifying of the need for such a designated health service . . . ." 42 C.F.R § 411.351. A referring physician is defined as "a physician who makes a referral as defined in this section or who directs another person or entity to make a referral or who controls referrals made to another person or entity." *Id.*

Interpretation of laws and regulations, such as these, are pure questions of law. *See Coca-Cola Co.*, 608 F.2d at 222. In considering and applying the Stark Law and its associated regulations, courts have found that facility fees associated with inpatient and outpatient hospital services are referrals for designated health services and that physicians identified by providers as

attending or operating physicians on claims submitted to the Medicare program are referring physicians. *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 407 (4th Cir. 2012) (facility fee is a referral); *United States v. Rogan*, 459 F. Supp. 2d 692, 713-14 (N.D. Ill. 2006) (attending and operating physicians on institutional claims are referring physicians); *aff'd* 517 F.3d 449 (7th Cir. 2008).

The United States intends to introduce evidence at trial that Halifax submitted institutional inpatient and outpatient claims where one of the neurosurgeons or medical oncologists was listed as either the attending or operating physician, and that each of these claims was for a facility fee. The *Tuomey* opinion established that facility fees are referrals for designated health services within the meaning of the Stark Law, and the *Rogan* opinion established that physicians identified as either the attending or operating physician on an institutional claim form are referring physicians under the terms of the Stark Law. As a result, the United States intends to submit a proposed jury instruction to the Court explaining these two legal issues, so that the Court may explain to the jury what the applicable law is.

Halifax proffers Mr. Moran to testify about whether physicians identified as attending or operating physicians on institutional claims forms generated referrals. He would provide opinions that "claim forms do not provide enough evidence to state that those services were performed pursuant to a referral by a physician to Halifax." Moran Report (exhibit 1) at 2. Mr. Moran explained: "I was engaged to conduct my own evaluation of the [claims data] evidence that was relied on by Mr. Dew in preparing his report and to form an opinion about what that event did and didn't say about whether or not certain impermissible referrals had taken place." Moran Dep. (exhibit 2) 32:5-10. While Mr. Moran claims that he is not being offered as an expert on the definitions of terms used in the Stark Law (Moran Dep. 33:5-8), he is in fact doing

exactly that.  The definitions of referring physician and referral are questions of law and Mr. Moran, by testifying that claims data does not reflect referrals and referring physicians, is offering new definitions of those terms—definitions contrary to those established by statute, regulation, and the Fourth Circuit and the Northern District of Illinois.

This testimony would confuse the jury and invade the role of the Court in instructing the jury on the law.  Mr. Moran's proposed testimony would improperly substitute his personal judgment for the Court's instruction to the jury on the question of whether the attending and/or operating physician identified on an institutional claim form for a facility fee is a referring physician for identified designated health services.  This is a question of law for which the United States will submit a jury instruction for the Court to read to the jury, and Mr. Moran's testimony should therefore be excluded as improper legal testimony.

### B.  Mr. Moran's Proposed Testimony Should be Excluded Because it is Not Reliable.

Rule 702 requires that an expert be qualified through knowledge, skill, experience, training, or education.  Fed. R. Evid. 702.  An expert's sole basis of expertise may be experience, but the expert "must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Frazier*, 387 F.3d at 1261 (emphasis in original).  Furthermore, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express."  *Frazier*, 387 F.3d at 1261 (emphasis in original).  All expert opinions must be based on more than just the expert's own statements.  In fact, one of the very gatekeeping functions that the Supreme Court established is for district courts to exclude "opinion evidence

that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To the extent that Halifax argues Mr. Moran's lay opinion is informed by his experience in the healthcare industry, which qualifies Mr. Moran to offer expert testimony, that argument must fail because Mr. Moran does not demonstrate any of the elements established by *Frazier*: how his experience leads to his conclusion, why his experience is a sufficient basis for his opinion, and how his experience is reliably applied to the facts of this case. *Frazier*, 387 F.3d at 126. Mr. Moran cannot point to any experience that forms the basis for his opinion in this case. Mr. Moran has never filled out claims forms to comply with the Stark Law and has never worked with a provider on Stark Law compliance. Moran Dep., 167:12-168:10. In fact, Mr. Moran can point to nothing more than vague general statements about his field to support his conclusion in this case:

> Q Well, I'm not trying to link anything. I'm just asking, since--you seem to be making statements that there are external referring physicians out there, based on your anecdotal evidence, is that right?
> A Based on my personal professional experience, yes.
> Q Have you read any articles that would support that?
> A Not specifically.
> Q Have you ever seen any material supporting your expert opinion in this case?
> A Well, the diversity of what does and doesn't get collected in a report, it is widely known among the expert community in which I operate.
>     But I don't think the community in which I operate spends a whole lot of time attempting to fill the journals of America with journal articles on the subject of claims processing. It's not considered to be everybody's favorite cup of tea.
>     So there's not a lot of literature on the technical points you're raising. In fact, I can't think of anything specifically on point to what I just--what we've been discussing.
>     But it is, in my judgment, well known among people who work with this stuff.

Moran Dep., 193:10-194:13. Nor can Mr. Moran point to any information published by the Centers for Medicare and Medicaid Services (CMS) that would support his view—in part

because such materials don't exist and in part because he did not review any CMS materials beyond the claims processing manuals cited in his report. Moran Dep., 194:14-195:20.

In short, Mr. Moran points to nothing outside of his own expert report to support his conclusion. Nothing in Mr. Moran's experience in the healthcare field explains how he reached his conclusion; why his experience is a sufficient basis to reach his conclusion; or how he applied his experience to the facts of this case. This is the very *ipse dixit* testimony that should be excluded.

### C. Mr. Moran's Proposed Testimony Should be Excluded Because He is not Offering Expert Opinions.

Except for his vague and general experience in the healthcare field, the only other basis Mr. Moran offers for his testimony is his lay opinion. If an expert offers opinions that "arguably lie within the understanding of the average lay person," then such expert testimony should be excluded because it would not be helpful to the jury. *Cook v. Sheriff of Monroe Cty., FL*, 402 F.3d 1092, 1111 (11th Cir. 2005).

Here, Mr. Moran purports to apply his common sense understanding of terms in light of his vague healthcare-related experience to formulate the opinions he is proffering:

> Q What information did you rely on to draw that conclusion that you just expressed?
> A My own common sense understanding of the meaning of the language of the statute in light of the work I've conducted over the last 35 years in and around the healthcare system as to what effective reality is.

Moran Dep., 62:11-17. Mr. Moran further testified:

> Q Oh, I thought you just said that you were interpreting the law.
> Mr. Sidhu: Objection to form.
> The Witness: What I'm saying is that I was--it's impossible for an individual in this world to be able to administer and conduct business in the system without having some common sense understanding of what these various things mean. That is not the same thing as forming a legal opinion about what they mean.

The clear issue here is what's the standard of evidence that one would apply in determining what evidence you need to decide that a particular claim meets this. That's largely a legal question, and I can't reach that and, of course, from the basis of my expertise.

I can, however look at the common sense understanding of what an intelligent layperson reading the statute might conclude about its practical meaning for the day-to-day world. And it's in that spirit that I'm reaching the conclusions that I'm reaching.

Moran Dep., 64:22-65:21. Mr. Moran admits that any testimony he has to offer beyond mere legal conclusions, on which he cannot opine, is based on his common sense interpretation of the facts as a lay person. This testimony is the antithesis of expert testimony and if permitted would usurp the role of the jury.

### D. Mr. Moran's Proposed Testimony on Claims Data Should be Excluded Because it is Cumulative.

The only portion of Mr. Moran's testimony that qualifies as appropriate expert testimony is his proposed testimony as to the number of claims at issue. But this testimony is properly excluded as cumulative. To be admissible, proffered expert testimony must be helpful to the trier of fact. Fed. R. Evid. 702(a). Expert testimony that is cumulative is not helpful and should be excluded. *Frazier*, 387 F.3d at 1263 (*citing Hull v. Merck & Co.*, 758 F.2d 1474, 1477 (11th Cir. 1985); *United States v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991)).

Mr. Moran purports to testify about the number of claims included in the data sets compiled by the United States' claims processing expert, Ian Dew. Moran Rep. at 12. Mr. Moran validated the data set of Mr. Dew to within 0.11 percent for claim counts and -0.66 percent for claim dollars, an amount that Mr. Moran determined to be "typical and not an area for concern." *Id.* Mr. Moran himself took no steps to verify or validate Mr. Dew's code. Moran Dep., 101:20-102:3 ("Q You personally did not do anything to verify the code or confirm that it was appropriately written? Mr. Sidhu: Objection. The Witness: I have not written a line of SAS

code since 1977.").  In fact, Mr. Moran volunteered in deposition that if there were questions

about the accuracy of the table and attachments those questions should be addressed to Mr. Dew:

> Q  So if we wanted to talk to -- if we wanted to obtain testimony about the
> accuracy of the tables and attachments, we would have to talk to Mr. Watson[,
> your associate]?
> Mr. Sidhu:  Objection to form.
> The Witness:  Let me put it to you this way.  You can also talk to Mr. Dew,
> because we essentially replicated his data.  So, in fact, the claims that we pulled
> were exactly identical to the claims that he pulled.  And so any analysis that we
> subsequently performed on that should be within the same wheelhouse.

Moran Dep., 102:5-16.

In short, Mr. Moran's proposed testimony on claims counts and dollar figures is, by the

witness's own admission, whole redundant of Mr. Dew's proposed testimony.  Because

cumulative expert testimony should not be admitted, Mr. Moran's proposed testimony on claims

amounts and associated payments should be excluded.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the proffered

expert testimony of Donald W. Moran be excluded.

Respectfully submitted,


STUART F. DELERY
Acting Assistant Attorney General

ROBERT E. O'NEILL
United States Attorney

RALPH E. HOPKINS
Assistant United States Attorney
501 W. Church Street, Suite 800
Orlando, FL 32805
(407) 648-7562
Fla. Bar # 0972436

Email: ralph.hopkins@usdoj.gov

/s *Patricia M. Fitzgerald*
MICHAEL D. GRANSTON
ADAM J. SCHWARTZ
PATRICIA M. FITZGERALD
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 305-3173
Facsimile:  (202) 514-0280
Email: Patricia.M.Fitzgerald@usdoj.gov


Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2013, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which will send an electronic notice of the filing to all counsel of record.

/s *Patricia M. Fitzgerald*
PATRICIA M. FITZGERALD
Trial Attorney


## CERTIFICATION

Undersigned counsel certifies, pursuant to Local Rule 3.01(g), that the United States and Defendants had a meet and confer on the filing of this motion on June 18, 2013.  Defendants oppose this Motion.

/s *Patricia M. Fitzgerald*
PATRICIA M. FITZGERALD
Trial Attorney