UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKLID-KUNZ, | Civ. Act. No. 6:09-CV-1002-ORL-31GAP-TBS |
| Plaintiffs, | |
| v. | JUDGE Gregory A. Presnell |
| HALIFAX HOSP. MED. CTR, et al. | |
| Defendants. | |

**PLAINTIFF UNITED STATES OF AMERICA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

The undisputed facts and the applicable law support the United States' Motion for Partial Summary Judgment (Dkt. No. 272). Nothing in the Opposition (Dkt. No. 313) filed by Defendants Halifax Hospital Medical Center and Halifax Staffing, Inc. (Halifax) undermines the well-supported bases for granting the United States' Motion.

**I.      HALIFAX VIOLATED THE STARK LAW**

As set forth in the parties' briefings, there is no dispute that the Stark Law is applicable here and prohibits Medicare from paying claims for designated health services (DHS), including inpatient and outpatient hospital services, that were referred by a physician who has a financial relationship with a hospital that does not meet all the terms of a statutory or regulatory exception. 42 U.S.C. §§ 1395nn(a)(1), (g)(1).

**A.      Halifax's Oncologist Bonus Pool Violated the Stark Law**

There is no dispute as to the terms of the oncologists' contract. U.S. SUMF ¶¶ 23, 25.[1]

---

[1] Halifax only disputes a handful of material facts in the United States' Motion. The disputed facts are (by U.S. SUMF paragraph number): 10, 16, 17, 18, 21, 24, 30, 31, 40, 45, 50, 51, 52, and 53. Halifax

-1-

There is no dispute that this contract was effective and that the oncologists were paid a bonus based on the contract from October 1, 2005 through September 30, 2008. U.S. SUMF ¶ 23; Halifax Opp., 7 fn. 8. There is no dispute that the contractual bonus pool included DHS revenue (specifically, outpatient oncology services and outpatient pharmacy charges), not just personally performed physician services. U.S. SUMF ¶ 26; Halifax Opp., 10. There is no dispute that the dollar value of the bonus pool varied based on the financial performance of the oncology program, including designated health services revenues. U.S. SUMF ¶ 43. There is no dispute that the bonus pool was distributed based on each physicians' share of work personally performed. U.S. SUMF ¶ 42.

The United States has explained why this compensation structure violates the Stark Law in its opening brief, at 25-26, and its Opposition to Halifax's Motion for Summary Judgment, at 16-19. In summary, the compensation pool, and, accordingly, the compensation the physicians received from that pool was determined in a manner that took into account the volume or value of DHS referrals. For example, if an oncologist prescribed a more expensive chemotherapy drug instead of an equally effective generic, the amount of the bonus pool could increase, and the physician's compensation from the pool may therefore increase, even though the physician would expend no greater effort in providing the chemotherapy service. As a matter of law, the oncologists' compensation pool failed to meet any Stark Law exception.

Halifax raised the Bona Fide Employee exception and the Indirect Compensation exception. The Bona Fide employee exception states that the compensation may "not [be] determined in any manner that takes into account directly or indirect the volume or value of referrals," 42 C.F.R. § 411.357(c). Under the indirect compensation arrangements exception,

---

Opp., 6-7, at n.8. Because Halifax does not dispute the remaining facts, the United States requests that the Court treat all other facts except those listed above as undisputed pursuant to Federal Rule of Civil Procedure 56(e)(2).

-2-

physician compensation must be "for services actually provided and not determined in any manner that takes into account the volume or value of referrals or other business generated." 42 C.F.R. § 411.357(p).  As explained above, neither exception applies because the oncologists' compensation unquestionably included DHS referral revenue and thus took into account DHS referrals.

Under a separate exception, Congress allowed for physicians in qualified "group practices" to participate in the overall profits of the group, including certain DHS.  42 U.S.C. § 1395nn(h)(4)(B)(i); *see also* § 1395nn(b)(2) and 42 C.F.R. § 411.355(b) (In-Office Ancillary Services exception for qualified group practices).  To qualify as a group practice, the physicians must, among other things, be a separate legal entity, obtain and use a separate Medicare billing number and distribute <u>all</u> the overhead expenses and income of the group according to a previously determined method.  *See* 42 U.S.C. § 1395nn(h)(4)(A).  As the agency observed, "[i]n effect, group practices receive favored treatment with respect to physician compensation: they are permitted to compensate physicians in the group . . . for 'incident to' services and indirectly for other DHS referrals.  This preference is statutory." 69 Fed. Reg. at 16066.  The oncologists did not meet the requirements for the "statutory preference" accorded to group practices, nor has Halifax ever alleged that they did.  Halifax is nevertheless attempting to avail itself of the special profit-sharing rule without meeting the qualifications for this "statutory preference."  If Congress had intended to extend the profit-sharing rules to apply to productivity bonuses generally, it would have done so.

Nor has the agency ever allowed employee productivity bonuses that, like Halifax's, amount to DHS profit-sharing.  *See* 69 Fed. Reg. at 16067-68 (table).  Indeed, as the agency made clear:

"[P]roductivity," as used in the statute, refers to the quantity and intensity of a

> physician's own work, but does not include the physician's fruitfulness in generating DHS performed by others (that is, the fruits of passive activity). "Incident to" services are not included in productivity bonuses under the statute unless the services are incident to services personally performed by a referring physician who is in a *bona fide* group practice.

66 Fed. Reg. at 876. Because the oncologists were not in a group practice, the productivity bonus paid to them could not, under the Stark Law, include DHS performed by others. The bonus pool here included DHS profits, and, therefore, violated the Stark Law.

### B. The Claims Forms Halifax Submitted Clearly Identify Referring Physicians

Halifax fails to raise any genuinely disputed factual issue regarding the identification of the Medicare claims referred by the oncologists during their improper compensation arrangement. As Halifax admits (Halifax Opp. at 26), the term "referral" is defined in the statute. 42 U.S.C. § 1395nn(h)(5); *see also* 42 C.F.R. § 411.351. A facility fee (which is reflected on an institutional inpatient or outpatient claim record) is a referral for DHS as a matter of law. *U.S. ex rel. Drakeford v. Tuomey Healthcare Sys.*, 675 F.3d 394, 407 (4th Cir. 2012), applying 66 Fed. Reg. 856, 941. The United States fully addressed Halifax's arguments on the identification of the referring physician on the claims forms, the lack of any need for a review of the underlying medical records, and the relevance of transfer and emergency department patients in its Motion for Partial Summary Judgment at 17-19; Opposition to Halifax's Motion for Summary Judgment at 8-13; Motion to Exclude Donald Moran (Dkt. No. 305) at 4; and Opposition to Halifax' Motion to Exclude Ian Dew (Dkt. No. 320) at 3-4, 7-9.

### III. HALIFAX IS LIABLE UNDER THE FCA

Halifax is liable under the FCA because it knowingly (as defined in 31 U.S.C. § 3729(b)(1)) submitted claims to Medicare in violation of the Stark Law. Halifax's arguments

to the contrary lack merit.[2]

First, Halifax mischaracterizes the Bona Fide Employment exception as "ambiguous." CMS has unequivocally stated that "the employment exception contains a provision that expressly permits productivity bonuses to be paid to employed physicians for services they personally perform." 69 Fed. Reg. 16054, 16066. Halifax's chief compliance officer understood this clear guidance, and in March 2004 cautioned Halifax management that CMS specifically prohibited bonuses based on referrals for ancillary services. *See* HAL-1_0013352 (Ex. 1). Ignoring its chief compliance officer, Halifax created a bonus pool that included referred DHS. Not surprisingly, for the fiscal years that included a bonus based on the operating margin, the profitability of the oncology program (and, thus, the dollar value of the bonus pool) increased between 253 percent and 329 percent over the year before the bonus provision became effective. *Compare* HAL-10054566 (Ex. 2), *with* HAL-1 0325436, 0325344, 0325269, 0325216 (Ex. 3).

Second, Halifax claims it relied on the advice of its counsel, and therefore is not liable under the FCA. However, prior to February 2009, the sole basis for Halifax's argument is the testimony of its general counsel, David Davidson, that he reviewed a portion of either the Stark Law or regulations prior to drafting the contract amendment. Davidson Depo. Tr., at 60:1-9; 156:9-161:24; 163:25-168:25; 174:23-175:4; 179:2-25; 209:7-20 (Ex. 4). Mr. Davidson could not describe the analytical steps he took, never consulted any CMS commentary or guidance prior to drafting the contract amendment, and apparently never made any record of his analysis. *Id.* Nor did Mr. Davidson ever consult any materials after drafting the contract amendment to make sure it complied with the Stark Law. *Id.* This "analysis" is therefore insufficient to form the basis of an advice of counsel defense. *See, e.g.*, *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6

---

[2] The United States renews its position that Halifax cannot rely on an advice of counsel defense because that defense was neither timely asserted, nor has the United States had a sufficient opportunity for discovery regarding the alleged factual support for this defense. *See, e.g.*, United States Opp. to Halifax's Motion for Summary Judgment (Dkt. No. 310), at 31-32.

F.3d 1523, 1531 (Fed. Cir. 1993); *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1259-1260 (Fed. Cir. 1997); *Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear*, 909 F. Supp. 896, 907 (S.D.N.Y. 1995). Far from vindicating Halifax, the patent lack of diligence by Halifax's in-house counsel further demonstrates that Halifax acted with deliberate ignorance or reckless disregard in failing to comply with the Stark Law.

Halifax's reliance on a February 2009 "Stark Law Analysis" performed by outside counsel as the basis for its advice of counsel defense is equally unavailing. The memo is only relevant to Halifax's state of mind after receiving the memo. The analysis purports to set forth a "reasonable argument" that the contract was legal, but concedes that counsel "cannot provide any assurances that CMS or a court would more likely than not concur with that analysis." Melvin Memo, Ex. 5. Given this remarkable caveat, Halifax cannot claim outside counsel offered a legal opinion that the contract amendment was legal. Indeed, shortly after receiving the analysis, Mr. Davidson decided it was necessary to change the contract "[b]ecause the enforcement risk was greater than I was comfortable with." Davidson Depo. (Ex. 4), at 244:14-248:7.

## IV.  THE UNITED STATES IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS COMMON LAW THEORIES

As set forth in its motion, the United States is entitled to summary judgment on its payment by mistake and unjust enrichment theories, as well as on its FCA claims.[3] Halifax ignores those arguments, and similarly ignores the binding authority of *United States v. Wurts*, 303 U.S. 414, 415-16 (1938), which makes clear that the United States can recover public moneys that have been "wrongfully, erroneously, or illegally paid." Halifax also ignores decades

---

[3] If the Court grants our motion for summary judgment under the FCA, any damages awarded under the alternative payment by mistake and unjust enrichment theories would be subsumed within the FCA award. However, we respectfully request entry of judgment on the non-FCA theories as an alternative award until the FCA judgment becomes final. *See United States v. Fadul*, 2013 WL 781614, at \*\*12-14 (D. Md. Feb. 28, 2013); *United States v. Khan*, 2009 WL 2461031, at \*5 (E.D. Mich. Aug. 5, 2009).

of authority applying that precedent. *See United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970) (if the government fails to prove FCA knowledge, the alternate theory of recovery is payment by mistake); *United States v. Borin*, 209 F.2d 145, 148 (5th Cir. 1954)[4]; *Stone v. United States*, 286 F.2d 56, 58–59 (8th Cir. 1961); *United States v. Indep. Sch. Dist. No. 1 of Ok-Mulgee County, Okl.*, 209 F.2d at 580-81. The obligation to refund to the Treasury money paid in error or without legal authorization will not be excused even if the recipient acted in "good faith" and could suffer "hardship" if required to return the funds. *See, e.g.*, *Weiss v. United States*, 296 F.2d 648, 649-50 (5th Cir. 1961) (collecting cases). The government is not required to show "that the recipient was unjustly enriched or that the balance of equities otherwise lies in its favor." *Mt. Vernon Coop. Bank v. Gleason*, 367 F.2d 289, 291 (1st Cir. 1966).

     The principle underlying this long line of cases derives from the Appropriations Clause of the Constitution, Art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."); *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). The Stark Law and regulations make clear that Halifax was not entitled to receive Medicare funds for any claims filed in violation of the Stark Law, and that Halifax is required to refund any money it improperly received, regardless of whether Halifax provided services. 42 U.S.C. §§ 1395nn(a)(1), (g)(1); 42 C.F.R. § 353(d); *Tuomey,* 675 F.3d at 397-98. This condition was reiterated in the Provider Agreement Halifax signed and certified. Quite simply, Halifax is not permitted to retain public money that it was never entitled to have in the first place. Thus, if the Court concludes, as it should, that Halifax's arrangements with the oncologists violated the Stark Law, then Halifax must return all the money it received from

---

[4] The Eleventh Circuit has adopted as precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Medicare for the tainted claims it submitted while the improper arrangements were in effect.[5]

Halifax erroneously argues that the Provider Agreement it signed constituted a "contract" with the government. This argument misconstrues the nature of the Medicare program. The program is a social benefit program for eligible individuals, and the Provider Agreement is the hospital's certification that it will comply with all applicable program requirements, including the Stark Law. As explained by the Seventh Circuit in *Rogan*, 517 F.3d. at 453, the government does not receive any benefit from the services provided to Medicare beneficiaries; no "service" or "product" is provided directly to the government. By contrast, courts have routinely entertained payment by mistake and unjust enrichment causes of action in cases brought by the government to recover improperly paid Medicare and Medicaid funds. *E.g.*, *Mead*, 426 F.2d 118; *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1 (1st Cir. 2005); *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999); *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, 2008 WL 2945946 (W.D. La. July 25, 2008); *United States v. Stevens*, 605 F. Supp. 2d 863, 870 (W.D. Ky. 2008); *Rogan*, 459 F. Supp. 2d at 727-28; *United States v. Fadul*, 2013 WL 781614, at 12-14 (D. Md. Feb. 28, 2013); *United States v. Khan*, 2009 WL 2461031, at *5 (E.D. Mich. Aug. 5, 2009).[6]

---

[5] Thus, Halifax's contention that the Government's damages are the amount of the bonus payments made to the oncologists has no legal support. Halifax's alternative argument that the Government incurred no actual damages in this case because Medicare beneficiaries received services is incorrect and unsupported by the governing law. Under the FCA, "[t]he measure of damages the United States is entitled to recover under the FCA is the amount of money the government paid out by reason of the false claims over and above what it would have paid out if the claims had not been false or fraudulent." *United States ex rel. Doe v. DeGregorio et al.*, 510 F. Supp. 2d 877, 890 (M.D. Fla. 2007) (*citing United States ex rel. Marcus v. Hess*, 317 U.S. 537); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008); *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003). The United States accepts for purposes of this motion only Halifax's arguments on the non-institutional (Form 1500) and fiscal year 2009 claims. These claims are not included in the damages number reflected in this brief.

[6] The two Northern District of Illinois cases cited by Halifax involved contracts, which this case does not. *Compare United States v. Job Resources for the Disabled*, 2000 WL 562444 (N.D. Ill. May 9, 2000), *and United States v. Hydroaire, Inc.*, 1995 WL 86733 (N.D. Ill. Feb. 27, 1995), *with Rogan*, 459 F. Supp. 2d at 727-28, *and United States ex rel. Klaczak v. Consolidated Med. Transp., Inc.*, 2002 WL 31010850, at *5 (N.D. Ill. Sept. 9, 2002). Halifax also relies on *United States v. Buckley*, 2005 WL 164287 (D. Mass.

## V. THE UNITED STATES' CLAIMS FOR DAMAGES AND PENALTIES COMPORT WITH CONSTITUTIONAL REQUIREMENTS

The United States' single damages in this case are the amount of Medicare money that Halifax received in violation of the Stark Law. Halifax not only argues that the FCA's treble damages and penalties provisions constitute "excessive fines," but even argues that the United States' single damages are "excessive fines." These arguments are without merit.

Halifax bases its constitutional challenge on *Vermont Agency of Natural Res. United States ex rel. Stevens*, 529 U.S. 765 (2000), Halifax Opp., at 32-33, but ignores other relevant Supreme Court decisions. The Court has long recognized that some liability beyond the amount of the fraud is needed to fully compensate the government. *United States v. Bornstein*, 423 U.S. 303, 315 (1976); *see also United States v. Halper*, 490 U.S. 435, 445 (1989). The damages multiplier is intended to ensure that the government is made completely whole, *Bornstein*, 423 U.S. at 314-15, and has numerous compensatory features, including paying a relator share, covering investigative costs, and consequential damages and prejudgment interest. *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130-31 (2003). All of these factors show that more than double damages are required to make the United States whole for its losses here.

Halifax improperly received $27,102,793 in Medicare oncology claims that violated the Stark Law. Under the FCA, the United States is entitled to treble the amount of Medicare's damages, as well as civil penalties. Halifax has failed to demonstrate that such an award would be "grossly disproportional" to the harm caused to the United States by Halifax's receipt and retention of public moneys it was never entitled to have. *See State Farm Mutual Auto. Insur. Co. v. Campbell*, 538 U.S. 408 (2003) (damages multiplier of less than 4 is not "grossly excessive").[7]

---

2005), a case in which the district court did not supply any analysis and the massive volume of contrary authority cited in this brief were not brought to that court's attention.

[7] Because the Court has not yet determined the scope of Halifax's liability, Halifax's excessive fines challenge to the imposition of civil penalties is premature. The United States respectfully suggests that if

## VI. **HALIFAX DID NOT OPPOSE THE UNITED STATES' REQUEST FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES NOS. 1-3, 5-7, AND 9**

Halifax failed to address the United States' arguments for summary judgment on certain of Halifax's affirmative defenses. The Court should therefore treat the motion on those defenses as unopposed, and, for the reasons set out in our opening brief, grant summary judgment on those defenses. Fed. R. Civ. P. 56(e)(3).

## VII. **CONCLUSION**

The United States respectfully asks the Court to grant the United States' Motion for Partial Summary Judgment and: (1) Award the United States $27,102,793 in damages under its payment by mistake and unjust enrichment causes of action; (2) Award the United States treble damages of $81,308,379 under its FCA count; and (3) Dismiss Halifax's Affirmative Defenses Nos. 1-3, 5-7, and 9.

Respectfully submitted,

| | |
|---|---|
| A. LEE BENTLEY, III | STUART F. DELERY |
| Acting United States Attorney | Acting Assistant Attorney General |
| | |
| | /s *Patricia M. Fitzgerald* |
| RALPH E. HOPKINS | MICHAEL D. GRANSTON |
| Assistant United States Attorney | ADAM J. SCHWARTZ |
| 400 W. Washington Street, Suite 300 | PATRICIA M. FITZGERALD |
| Orlando, FL 32801 | KAVITHA J. BABU |
| (407) 648-7562 | Attorneys, Civil Division |
| Fla. Bar # 0972436 | United States Department of Justice |
| Email: ralph.hopkins@usdoj.gov | P.O. Box 261, Ben Franklin Station |
| | Washington, DC 20044 |
| | Telephone: (202) 305-3173 |
| | Facsimile: (202) 514-0280 |
| Attorneys for the United States | Email: patricia.m.fitzgerald@usdoj.gov |

---

the Court grants the United States' motion for summary judgment, the Court should request additional briefing from the parties on the appropriate number and size of the penalties to be imposed. The Government has discretion to reduce the number of penalties it seeks, and the Court has discretion (within the range set forth in the False Claims Act) with respect to the amount to impose for each penalty requested by the United States. Subsequent briefing would allow the parties to address both of these issues.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on July 22, 2013, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which will send an electronic notice of the filing to all counsel of record.

               /s *Patricia M. Fitzgerald*
               PATRICIA M. FITZGERALD
               Trial Attorney