**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| ELIN BAKLID-KUNZ, | § | |
| | § | CIVIL ACTION FILE NO. |
| Plaintiffs, | § | 6:09-CV-01002-ORL-31GAP-TBS |
| | § | |
| v. | § | Judge Gregory A. Presnell |
| | § | |
| HALIFAX HOSPITAL MEDICAL | § | |
| CENTER, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

**RELATOR ELIN BAKLID-KUNZ'S REPLY BRIEF IN SUPPORT OF**
**HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

Relator Elin Baklid-Kunz ("Relator") files this Reply Brief in Support of her Motion

for Partial Summary Judgment (Relator's "MPSJ") and would show the Court as follows:

**I.     DEFENDANTS WAIVED THE "BONA FIDE EMPLOYMENT EXCEPTION"**
**AFFIRMATIVE DEFENSE TO RELATOR'S CLAIMS.**

This Court unequivocally ruled the Bona Fide Employment Exception was an

affirmative defense which Defendants must plead in their answers or it would be waived.

Doc. 109 at 8-9 (citing *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992 (11th Cir.

1982)). Defendants have not pled such defense. Doc. 47. Despite their purported "intent to

seek leave of Court to amend [their] Answer," Doc. 314 at 15 (all citations will be to the

docket page number, not the actual brief page number), the record shows Defendants have

never sought to amend their Answer. Defendants' failure to assert the Bona Fide

Employment Exception as an affirmative defense and this Court's Order require a finding

that Defendants have waived such defense. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224,

1

1240 (11th Cir. 2010); *see also F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1187 (N.D. Ga. 2008) ("A party may not revive an available defense that he failed to assert in his answer by arguing it on summary judgment.").[1]

## II.   THE 15% OPERATING MARGIN INCENTIVE BONUS PAID TO THE ONCOLOGISTS VIOLATED THE ANTI-KICKBACK STATUTE.

Even if the Court entertains Defendants' never-pled affirmative defense of bona fide employment, that defense simply does not apply to the undisputed facts. Defendants violated the AKS by paying the 15% Operating Margin Incentive Bonus to the Oncologists, who were not employees of Halifax Hospital, entitling Relator to summary judgment.

### A.   The "Bona Fide Employment Exception" to the AKS Does Not Apply.

The general common law of agency applies to determine whether the Oncologists are "bona fide" employees of Halifax Hospital for purposes of the AKS and Section 3121(d)(2) of the Internal Revenue Code. 42 U.S.C. 1320a-7b(b)(3)(B); 42 C.F.R. § 1001.952(i); *U.S. v. Robinson*, 505 F. App'x 385, 387 (5th Cir. 2013) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S. Ct. 1344, 117 L.Ed.2d 581 (1992)); *Hospital Resource Personnel, Inc. v. U. S.*, 68 F.3d 421, 424 (11th Cir. 1995); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir. 1993)). The factors enumerated in *Darden* are not exhaustive and the Court may consider additional factors, including the plain text of the contracts. *U.S. ex rel. Watson v. Connecticut Gen. Life Ins. Co.*, 87 F. App'x 257, 262 (3d Cir. 2004); *see also Joint Technology, Inc. v. Weaver*, CIV-11-846-M, 2013 WL 257075 (W.D. Okla. Jan. 23, 2013)

---

[1] Defendants' unsupported argument that the "statutory Employment Exception is an independent, complete defense" that does not need to be pled as an affirmative defense fails. Doc. 314 at 14. The *Jackson* case involved a statutory exception, rather than a regulatory exception. *Jackson*, 678 F.2d at 1000.

(applying the common law agency test as interpreted by *Darden* and finding no bona fide employment relationship for purposes of the AKS); *U.S. v. Job*, 387 F. App'x 445, 455-56 (5th Cir. 2010); *U.S. v. Robinson*, 505 F. App'x 385, 388 (5th Cir. 2013).

The evidence Defendants cited in their response brief confirms the Oncologists were not employees of Halifax Hospital for AKS purposes during the 2004-2010 time frame when Halifax Hospital paid them the 15% Operating Margin Incentive Bonus.  Doc. 314 at 10-11. Oncologist Walter Durkin testified: "In 1992, as I recall, we became employees of Halifax through an employment agreement, and they purchased our charts for, I believe, $10,000 at the time."  Doc. 314-3, Ex. 3, Durkin Dep., at 26:21-24.  That employment agreement was assigned to Halifax Staffing by written agreement dated February 28, 1994:  "As of the effective date of this Agreement, [Halifax Hospital] shall terminate all its employer/employee relationships, and permit [Halifax Staffing] to assume all such employment relationships." Doc. 312-3 at 36-40, Ex. 13.  The evidence clearly establishes that, from 1994 on, the Oncologists were employed by Halifax Staffing, not Halifax Hospital.

The IRS Ruling Letter relied upon by Defendants actually hurts their argument and supports Relator's MPSJ.  For AKS purposes, the employer is the entity that bears the obligation to withhold FICA taxes under Section 3121(d)(2) of the Internal Revenue Code. 42 C.F.R. § 1001.952(i).  The IRS Ruling Letter squarely puts that obligation on Halifax Staffing, where it provides: "[Halifax Staffing is] liable for the social security and medicare taxes under the Federal Insurance Contributions Act (FICA) on remuneration of $100 or more you pay to each of your employees during a calendar year."  Doc. 314-11 at 2, Ex. 11 (I.R.S. Letter dated Dec. 13, 1995).  Further, the evidence shows Halifax Hospital did not

withhold FICA taxes on the Oncologists.  Doc. 312-4, Ex. 16.

Halifax Hospital's 30(b)(6) representative, Chief Financial Officer Eric Peburn, testified that Halifax Hospital has zero employees for purposes of filing W-2s with the Internal Revenue Service which are used to reflect withholding of FICA taxes under Section 3121(d)(2) of the Internal Revenue Code.  Doc. 295-1, Ex. 1, Peburn Dep. at Ex. 17 at 239:9-240:2.  The evidence shows: (i) Halifax Hospital did not withhold FICA taxes on the Oncologists (Doc. 312-4, Ex. 16); (ii) all written agreements between Halifax Hospital and Halifax Staffing state the Oncologists are independent contractors of Halifax Hospital (Doc. 312-3 at 28-32, Ex. 12; Doc. 312-3 at 36-40, Ex. 13), (iii) Halifax Hospital's  own general counsel testified Halifax Hospital did not employ the Oncologists after February 28, 1994; (Doc. 312-3 at 41-46, Ex. 14, Davidson Dep. at 26:7-27:24), (iv) Halifax Hospital did not provide retirement benefits to the Oncologists  (Doc. 312-3 at 41-46, Ex. 14, Davidson Dep. at 21:19-23:24; Doc. 312-5 at 4-10, Ex. 18); (v) Halifax Hospital did not have a legal right to terminate employment of the Oncologists (Doc. 312-3 at 41-46, Ex. 14, Davidson Dep. at 27:25-30:11); (vi) Halifax Staffing is the employer of the Oncologists under IRS Guidelines for leased employees (Doc. 312-5 at 15, Ex. 19, IRS Publication 15-A at p. 4); and (vii) Defendants' own analysis by its Chief Compliance Officer and inside counsel shows Halifax Hospital had no employees for Stark purposes (Doc. 312-5 at 82-87, Ex. 20 Davidson Dep. at 215:18-225:24; Doc. 312-5 at 88-126, Ex. 21 at p. 19).

Defendants' final argument that "[c]ritically, the Medical Oncologists believe that Halifax Hospital is their employer," Doc. 314 at 16, has been rejected by the Eleventh Circuit Court of Appeals. *U.S. v. Starks,* 157 F.3d 833, 839 (11th Cir. 1998) ("even if Starks and

4

Siegel believed they were bona fide employees, they were not providing 'covered items or services.' As the government has shown, Starks received payment from Siegel and Future Steps only for referrals and not for any legitimate service for which the Hospital received any Medicare reimbursement.").

**B.** **Defendants' Payments of Profit-Sharing Bonuses to the Oncologists Constitute AKS Violations Regardless of Who Employed the Oncologists.**

While Defendants have valiantly attempted to distract the Court by mischaracterizing the issue as a mere technicality regarding which Halifax entity employed the Oncologists, the Bona Fide Employment Exception does not provide a "blank check" for employers to pay kickbacks to employees.  As very aptly stated by U.S. District Judge Moran:

> The Anti–Kickback Act does not prohibit hospitals from acquiring medical practices, nor does it preclude the seller-doctor from making future referrals to the buyer-hospital, **provided there are no economic inducements for those referrals**.

*U.S. ex rel. Obert–Hong v. Advocate Health Care,* 211 F. Supp. 2d 1045, 1049 (N.D. Ill. 2002) (emphasis supplied); *see also U.S. ex rel. Perales v. St. Margaret's Hosp.*, 243 F. Supp. 2d 843, 851 (C.D. Ill. 2003).

The Bona Fide Employment Exception to the AKS "only protects payments 'for employment in the provision of covered items or services * * * .'" 56 Fed. Reg. 35952, 35975 (July 29, 1991).  It covers only "services provided pursuant to employment for the provision of items or services." *Id.*  Such exception does not protect payments (like those made to the Oncologists) which are disassociated from the individual's rendering of services, nor does it protect kickbacks that did not raise the overall level of compensation to commercially unreasonable levels above fair market value.  Payments for referrals are illegal kickbacks under the AKS, no matter the amount or whether the payor employed the payee.

It is undisputed that the 15% Operating Margin Incentive Bonus pool from which the Oncologists received their bonuses was comprised of Halifax Hospital's profit from its Medical Oncology program, which profit included facility fees, prescription drugs, and other designated health services which had no relation whatsoever to services actually rendered by the individual physicians.  Doc. 313 at 2-3.  These were, indisputably, illegal kickbacks.

Defendants counter the "real" purpose of the 15% Operating Margin Incentive Bonus was to "provide fair compensation."  Doc. 314 at 20.  However, no defense under the AKS exists which would render an illegal kickback "legal" based on fairness or reasonableness of the kickback. Overall fair market value and commercial reasonableness are not elements of the statutory or regulatory employment exceptions to the AKS; even if they were, they would provide no defense to blatant kickbacks like the 15% Operating Margin Incentive Bonus Halifax paid to the Oncologists.  *U.S. v. Starks, supra*, 157 F.3d at 839.

Only *one* purpose of the remuneration must be shown to be improper under the AKS in order to show an AKS violation.  *United States v. Borrasi*, 639 F.3d 774, 782 (7th Cir. 2011) (only one purpose, which need not be the primary purpose, needed for AKS violation); *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 09-22253-CIV, 2013 WL 1289260 at *9 (S.D. Fla. Mar. 27, 2013).  Defendants do not deny, nor could they, one purpose for the Oncologists' 15% Operating Margin Incentive Bonus was to induce the Oncologists to refer patients to Halifax Hospital's oncology centers, instead of opening a competing private practice as prior Halifax doctors had done in November 2003.  Doc. 295 at 6; *see also* Doc. 312-7 at 64-67, Ex. 25, Davidson Dep. at 102:1-104:2; Doc. 292-4 at 29 (¶14), 34 (¶14), 39 (¶14) and 44 (¶14)).  Thus, even assuming, *arguendo*, that another purpose of the 15%

6

Operating Margin Incentive Bonus was to provide "fair compensation" to the Oncologists, the bonuses still constituted illegal remuneration in violation of the AKS.[2]

Thus, Defendants' payments to the Oncologists violated the AKS even if the Oncologists had been employees of Halifax Hospital, and even if the eventual overall compensation the Oncologists received was, in fact, commercially reasonable and within fair market value.  The 15% Operating Margin Incentive Bonus payments **still** constituted illegal remuneration prohibited by the AKS, because the payments were derived from a bonus pool that was comprised of profits from the Oncologists' referrals to Halifax Hospital's outpatient services and not on the physicians' "furnishing of any item or service for which payment may be made in whole or in part under Medicare."  42 C.F.R. § 1001.952(i).

All claims for goods and services provided pursuant to kickback-induced referrals from the Oncologists are false claims. *United States ex rel. Freedman v. Suarez-Hoyos*, 781 F. Supp. 2d 1270, 1279 (M.D. Fla. 2011); *see also McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1260 (11th Cir. 2005).[3]

## III.   DEFENDANTS' CONSTITUTIONAL ARGUMENTS REGARDING DAMAGES ARE BOTH PREMATURE AND UNSUPPORTED.

Defendants, apparently realizing the imminent probability that judgment is due to be

---

[2] Defendants also argue against willful intent based on "legal review by the General Counsel, later reviewed by outside counsel," Doc. 314 at 21, despite the express representation of Defendants' counsel that no advice of counsel defense has been or would be raised to Relator's non-intervened claims.  Doc. 295-16 at 8-9, Ex. 22.  Relator objects to this argument as made in bad faith contrary to the express representation of counsel and lacking foundation. Fed. R. Civ. P. 56(c)(2).

[3] Defendants' attempt to distinguish *McNutt* based on the United States' intervention decision is without merit.  Doc. 314 at 25.  The United States' intervention decision has no impact whatsoever on the legal merit of Relator's FCA claims. 31 U.S.C. § 3730(a)(4)(B).

granted against them, have now advanced two constitutional arguments on the type and level of damages that may be assessed.  Defendants' arguments regarding the constitutionality of (i) the application of civil monetary penalties ("CMPs") as to Relator's claims, and (ii) the amount of damages are both premature and unsupported by law.  These are subjects for a post-judgment motion;  Relator has moved for partial summary judgment on liability only.  *See U.S. ex rel. Doe v. DeGregorio*, 510 F. Supp. 2d 877, 892 (M.D. Fla. 2007) ("[T]he [Excessive Fines Clause] issue is not ripe for determination…No penalties have been imposed against [defendant]…at this stage of the proceedings.").

Even if Defendants' arguments were not premature, their arguments regarding the application of CMPs as to Relator's claims are unsupported – and are in fact contradicted – by the opinions of the four circuit courts of appeal which have addressed the Appointments Clause issue.  *See* Doc. 314 at pp. 26-31.  Relator respectfully submits this court should follow those courts and deny Defendants' arguments should the court make a determination on them at this time.  *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) (en banc) ("the FCA's qui tam provisions do not violate the Appointments Clause").

Regarding Defendants' Excessive Fines Clause argument (Doc. 314 at 31), Defendants have only themselves to blame for the large – but constitutionally sound – fines they now face.  In 1986, Congress established rather substantial new FCA penalties to deter the "conspiracy of silence."  *U.S. ex rel. Falsetti v. S. Bell Tel. & Tel. Co.*, 915 F. Supp. 308, 312 (N.D. Fla. 1996).  Congress also enacted an exception, as the penalty is limited to "not less than 2 times the amount of damages" if the person committing the violation self-reports the violation within 30 days after the date on which the defendant first obtained the

information.  *Id.*; *see* 31 U.S.C. § 3729(a)(2).

Relator reported the violation to Halifax management in October 2008 and in-house counsel confirmed the violation in November 2008.  Doc. 295-8 at 50-53, Ex. 10A.   Rather than self-report on a timely basis as required by law, Defendants chose to invoke the "conspiracy of silence," requiring Relator and the United States to pursue judicial resolution of these known violations.  Far from excessive, the resulting fines Defendants suffer from purposefully invoking the "conspiracy of silence" are necessary for the United States to effectively investigate and enforce the False Claims Act.  *Id.*

## IV. RELATOR IS ENTITLED TO SUMMARY JUDGMENT AS TO ALL OF DEFENDANTS' AFFIRMATIVE DEFENSES, AS DEFENDANTS FAILED TO ESTABLISH THE ELEMENTS OF SUCH DEFENSES.

Defendants have failed to meet their burden of establishing there is a genuine issue of material fact as to any of their affirmative defenses, as they advance no facts or evidence to support any such defenses (except, insufficiently as discussed below, "good faith").  As such, the court need not even reach their legal arguments, and Relator is entitled to summary judgment on all such affirmative defenses.  *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991).

Regarding Defendants' "good faith" affirmative defense, they rely on just two comments by Mr. Peburn to purportedly establish such defense.  Doc. 314 at 35.  His self-serving testimony regarding "personally performed work" was obviated when Defendants admitted in their Response Brief to the United States' Motion for Partial Summary Judgment the 15% Operating Margin Incentive Bonus included fees for "services that were not personally performed by the Oncologists."  Doc. 313 at 2-3.

Defendants have pointed the Court to no evidence the payments they made to the Oncologists "inadvertently" violated the AKS. *United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996) (inadvertent conduct is not "willful" in the context of the AKS). Rather, the evidence shows Defendants were tracking physician referrals (*see, e.g.*, Doc 310-6 at Ex. 14) and *knew* the payments were illegal before they paid the Oncologists in March 2009. Doc. 295-8 at 50-53, Ex. 10A. Defendants have not met and cannot meet the elements necessary to establish a good faith affirmative defense, and Relator is entitled to summary judgment on such defense.

Even if it were necessary to reach the legal arguments of Defendants' affirmative defenses, Defendants' analysis of the law is plainly incorrect. *See, e.g., U.S. ex rel. Liotine v. CDW Gov't, Inc.*, 05-33-DRH, 2012 WL 2807040 at *15 (S.D. Ill. July 10, 2012) (granting relator summary judgment on defendant's affirmative defenses of waiver, estoppel, and laches, as the same are not available against the United States, who is the real party in interest in an FCA case, as a matter of law). Despite Defendants' assertions, Relator may seek the Court's ruling to dispense with affirmative defenses on a motion for summary judgment rather than a motion to strike. *Id.* at *14. Relator is entitled to summary judgment as to all affirmative defenses which Defendants have raised.

## V.     CONCLUSION.

WHEREFORE, Relator respectfully requests that the Court GRANT her Motion for Partial Summary Judgment, and ENTER judgment in Relator's favor as to liability regarding her FCA claims regarding the Oncologists and judgment in her favor as to all affirmative defenses which Defendants have or could have asserted.

Respectfully submitted this 22nd day of July, 2013.


s/ L. Lin Wood
L. Lin Wood (admitted *pro hac vice*)
Katherine V. Hernacki (*pro hac vice*)
Amy M. Stewart (admitted *pro hac vice*)
WOOD, HERNACKI & EVANS, LLC
1180 West Peachtree Street N.W.
Suite 2400
Atlanta, GA 30309
Tel.: (404) 891-1402
Fax: (404) 506-9111
Email: lwood@whetriallaw.com
Email: khernacki@whetriallaw.com
Email: astewart@whetriallaw.com

s/ Marlan B. Wilbanks
Marlan B. Wilbanks (admitted *pro hac vice*)
Susan S. Gouinlock (admitted *pro hac vice*)
WILBANKS & BRIDGES, LLP
3414 Peachtree Road N.E.
Suite 1075
Atlanta, GA 30326
Tel.: (404) 842-1075
Fax: (404) 842-0559
Email: mbw@wilbanks-bridges.com
Email: ssg@wilbanks-bridgeslaw.com


s/ Terrence McQuade
Scott C. Withrow (admitted *pro hac vice*)
Terrence McQuade (admitted *pro hac vice*)
Jeffrey T. Holm (admitted *pro hac vice*
WITHROW, MCQUADE & OLSEN, LLP
3379 Peachtree Road N.E.
Suite 970
Atlanta, GA 30326
Tel.: (404) 814-0200
Fax: (404) 814-0009
Email: swithrow@wmolaw.com
Email: tmquade@wmolaw.com
Email: jholm@wmolaw.com

s/ Christopher C. Casper
Christopher C. Casper
Florida Bar No. 048320
JAMES, HOYER, NEWCOMER, SMILJANICH &
YANCHUNIS, P.A
One Urban Centre
Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609-2589
Tel.: (813) 286-4109
Fax: (813) 286-4174
E-mail: ccasper@jameshoyer.com


*Attorneys for (Relator) Elin Baklid-Kunz*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the

United States District Court for the Middle District of Florida using the CM/ECF system,

which will automatically serve a copy to counsel for all other parties in this case.

This 22nd day of July, 2013.

<div style="margin-left: 45%;">

s/ Scott C. Withrow

Scott C. Withrow (admitted *pro hac vice*)
WITHROW, McQUADE & OLSEN, LLP
3379 Peachtree Road N.E.
Suite 970
Atlanta, GA 30326
Tel.: (404) 814-0200
Fax: (404) 814-0009
E-mail: swithrow@wmolaw.com

*Attorney for (Relator) Elin Baklid-Kunz*

</div>

12