IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, and ELIN BAKLID-KUNZ, Relator, <br><br>  Plaintiffs, <br><br> v. <br><br> HALIFAX HOSPITAL MEDICAL CENTER, ET AL. <br><br>  Defendants. | CASE NO.: 6:09-CV-1002-ORL-31TBS <br><br> JUDGE GREGORY A. PRESNELL <br><br> [FALSE CLAIMS ACT – QUI TAM] <br><br> DISPOSITIVE MOTION <br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

In her Response in Opposition to Defendants' Motion for Summary Judgment ("Relator's Opp."), Relator Elin Baklid-Kunz misinterprets law and fact in an attempt to bolster her allegations that Halifax Hospital Medical Center ("Halifax Hospital") violated the Anti-Kickback Statute ("AKS"), False Claims Act ("FCA"), and the Stark Law. First, Relator's AKS claims are precluded entirely by the AKS *Bona Fide* Employment Exception. Second, the evidentiary record is devoid of the required clinical evidence to support Relator's broad-sweeping FCA medical necessity claims – namely that certain "short-stay" inpatient admissions lacked medical necessity. Third, Relator's FCA claims derived from her AKS and Stark Law allegations fail because the underlying claims fail. Last, Relator has no evidence to support her claims that Halifax Hospital violated the Stark Law through its services and medical directorship agreements with the Psychiatrists.

## II. RELATOR'S ANTI-KICKBACK STATUTE ALLEGATIONS REGARDING ALL PHYSICIANS FAIL AS A MATTER OF LAW

The *Bona Fide* Employment Exception to the AKS (the "Employment Exception") is a statutory bar to Relator's allegations, and Halifax has shown that it meets the criteria for the Employment Exception's protection for all Physician[1] agreements in this case.[2] 42 U.S.C. § 1320a-7b(b)(3)(B). The Employment Exception is not an "affirmative defense" that has been waived by Halifax Hospital.[3] Further, when the statutory Employment Exception applies, the regulatory "safe harbor" is not needed as an affirmative defense. 42 C.F.R. § 1001.952(i). Relator's claims must, therefore, be dismissed.[4]

In an analogous case regarding the statutory Discount exception to the AKS (which, like the Employment Exception, also has a regulatory safe harbor), a district court held that the statutory Discount exception "may be presented during trial" as it serves as "a framework around which arguments of the parties regarding the evidentiary issues" may be made. *United States v. Shaw*, 106 F. Supp. 2d 103, 122 (D. Mass. 2000). The *Shaw* court noted that the fact that a safe harbor is an independent basis for exclusion from criminal liability "does

---

[1] For purposes of this Motion, the term "Physicians" includes the Medical Oncologists, Neurosurgeons, and Psychiatrists listed in the Second Amended Complaint.

[2] In its Motion for Summary Judgment, Halifax inadvertently included an incorrect statement that the Employment Exception applies to contracted individuals. Halifax corrected this assertion in its Opposition.

[3] Halifax will seek leave of court to amend its Answer to include the regulatory "safe harbor" as an affirmative defense. Halifax's Answer reserved the right to "assert all affirmative defenses under Fed. R. Civ. P. 8(c) and any other defenses . . . that may be available now or may become available based on discovery or other factual investigations."

[4] *See, e.g., U.S. ex rel. Obert-Hong v. Advocate Health Care,* 211 F. Supp. 2d 1045, 1050-51 (N.D. Ill. 2002) (granting defendants' motion to dismiss after finding that the AKS is "designed to remove economic incentives from medical referrals, not to regulate typical hospital-physician employment relationships," and that "payments based on personally performed services are permissible").

not mean, of course, that a defendant is precluded from raising both the [statutory] 'discount exception' and one of the safe harbors as a defense." *Id.* at 113. The *Shaw* court never identified the statutory or regulatory exception as an affirmative defense. As such, Relator has no basis to preclude Halifax from raising these AKS exceptions in its defense.

> A. <u>Halifax's Physicians Are Employees Of Halifax Hospital</u>
>> 1. *The Definition Of "Employee" For Purposes Of The Employment Exception Is Undisputed*

Relator and Halifax agree that the definition of "employee" under the AKS is that found at 26 U.S.C. § 3121(d)(2). Halifax's Opp., at 6-7; Relator's Opp. at 16-17. Section 3121(d)(2) cites to common law rules in determining the employer-employee relationship.

>> 2. *Under The IRS Test, Halifax Hospital Is The Physicians' Employer*

The Relator's Opp. misstates how the Internal Revenue Service ("IRS") determines employment. Under the IRS regulations, a common law employer-employee relationship exists when the person for whom services are performed has the right to "control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished." Treas. Reg. § 31.3121(d)-1(c)(2). The key inquiry for identifying a physician's employer should be "whether the institution has the right to direct and control the manner and means of the *business aspects* of the physician's medical practice." I.R.S. Proposed Coordinated Issue Paper, Employee Status of Hospital-Based Physicians and on Student Nurse Exclusion from Definition of Employment (Mar. 26, 1993) (emphasis added) (the "Proposed Coordinated Issue Paper"). Halifax Hospital performs all of those functions for the Physicians.

Although the Treasury Regulation cited by the Relator characterizes physicians and

other professionals as independent contractors, the IRS has applied the 20-factor test in holding that a hospital-based physician may qualify as a hospital employee.[5] Rev. Rul. 87-41, 1987-1 C.B. 296, 298-99; *see also James v. Comm'r*, 25 T.C. 1296 (1956) (finding pathologist was a hospital employee because of the integration of his work to the hospital).[6] The Eleventh Circuit has adopted the IRS's 20-factor test. *Hosp. Res. Pers., Inc. v. United States*, 68 F.3d 421, 427 (11th Cir. 1995) (citing Rev. Rul. 87-41). Under Relator's interpretation, no hospital could ever be found to be the employer of a physician.

>   3.   *Applying The Relevant Eleventh Circuit Authority, Halifax Hospital Is The Employer Of The Physicians Because It Controls The Business Of Their Services*

While Relator correctly states the Supreme Court's clarification that an employer-employee relationship is defined under the "general common law of agency," she does not correctly apply common law factors test. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323 n.3 (1992) (quoting *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 740 (1989)); *see also* Relator's Opp., at 17. Courts in this District have noted the test focuses primarily "on the 'hiring party's right to control the manner and means by which the product is accomplished.'" *Bell v. Atl. Trucking Co.*, No. 3:09-cv-406-J-32MCR, 2009 U.S. Dist. LEXIS 114342, at *15 (M.D. Fla. Dec. 7, 2009) (quoting *Reid*, 490 U.S. at 751). This is the IRS' "right to control" factor. Among the factors used to assess the "right to control" are:

---

[5] In fact, the Treasury Regulation cited by Relator spoke to the fact that a physician could not serve as an employee of a patient, not with respect to employment of physicians by hospitals.
[6] In the Proposed Coordinated Issue Paper, the IRS uses the 20-factor test to analyze "the employee status of physicians practicing medicine in a hospital setting." I.R.S. Proposed Coordinated Issue Paper, Employee Status of Hospital-Based Physicians and on Student Nurse Exclusion from Definition of Employment (Mar. 26, 1993).

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; the tax treatment of the hired party.

*Bell*, 2009 U.S. Dist. LEXIS 114342, at *15-16 (quoting *Gagnon v. Serv. Trucking, Inc.,* 266 F. Supp. 2d 1361, 1366 (M.D. Fla. 2003)). In the context of employment discrimination statutes, the Eleventh Circuit utilizes the common law to define employment. *See Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir. 1982). The Eleventh Circuit has embraced a "hybrid" test, which considers the agency factors above and the economic realities of the arrangement to determine if an employee-employer relationship exists. *Id.*

Here, Halifax is the employer because it maintains "the control involved in deciding when a doctor performs his services, the number of hours he performs them, and the administrative details incident to his professional services." *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997), *cert. denied*, 522 U.S. 1049 (1998); *see also Maimon v. Comm'r*, No. 8008-07S, 2009 Tax Ct. Summ. LEXIS 53, at *15 (T.C. 2009) ("The threshold level of control necessary to find employee status is lower when applied to professional services than when applied to nonprofessional services."). "While a physician, like any professional, must be given latitude in which to choose a course of action . . . the mere existence *vel non* of that latitude is not dispositive of the manner-and-means test." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228-29 (2d Cir. 2008).

### B. Under The Employment Test, The Physicians Are Halifax Hospital Employees

#### 1. *Halifax Hospital Is The Employer Of The Medical Oncologists And Neurosurgeons*

As noted in Halifax's Opposition to Relator's Motion for Partial Summary Judgment, incorporated here by reference, Halifax meets the IRS test because it undisputedly controls every aspect of running the medical practices of the Medical Oncologists and Neurosurgeons. *See* Halifax Opp. to Relator's MSJ (Dkt. 314), at 10-11; Ex. 1, Sorathia Dep., Sept. 25, 2012, at 165:17-20; Ex. 2, Durkin Dep., Sept. 20, 2012, at 56:12-16; Ex. 3, Dr. Khanna Agreement, at p.3 § 7. The *Joint Tech., Inc. v. Weaver* case, cited by Relator, is distinguishable from the facts here because, there, the purported employer did not exercise control. No. CIV-11-846-M, 2013 U.S. Dist. LEXIS 8763, at *6-7 (W.D. Okla. Jan. 23, 2013).

Relator further counters with the assertion that "all written agreements state the physicians are independent contractors of Halifax Hospital." Relator's Opp., at 21. This is pure fiction as the contracts for the medical oncologists and neurosurgeons contain no such statement. Under the relevant common law tests – which all focus on the level of control – Halifax Hospital is the employer of the medical oncologists and neurosurgeons.

#### 2. *Halifax Hospital Is The Employer Of The Psychiatrists*

Applying the IRS test, Halifax Hospital is the employer of the Psychiatrists. Halifax Hospital controlled the billing for the psychiatrists' professional services. Ex. 4, Dr. Frick Agreement, p. 2 § 4. Halifax Hospital maintained supervision over the psychiatrists by subjecting their activities "to review by Halifax's compliance and audit services program." *Id*. The factors cited by Relator, such as withholding of FICA taxes, are inconsequential to the

analysis of which entity exercised control over the Psychiatrists' business practices. The contractual provision labeling them as independent contractors cannot alone raise a genuine dispute of material fact when weight against the substantive factors demonstrating that Halifax Hospital managed, controlled, and supervised their medical practice at the hospital.[7] Halifax Hospital is, therefore, entitled to judgment as a matter of law.

### III. RELATOR'S SHORT STAY FCA ALLEGATIONS DO NOT RAISE A GENUINE DISPUTE OF MATERIAL FACT

In addition to the flawed report of her expert, Jessica Schmor, Relator's only evidence of the lack of medical necessity of Halifax patient admissions remains the exhibits to her original Complaint filed in 2009. Both Ms. Schmor's report and the Complaint exhibits suffer from the same defect: no determinations of medical necessity were made applying the judgment of a physician regarding the clinical aspects of the care provided. Ex. 5, Baigelman Report at 3; Ex. 6 Duval 30(b)(6) Dep., at 61:5-62:19.

Relator points to 18 "quality reviews" conducted by MaryAnn Norvik through Halifax Hospital's voluntary participation in a Florida Medical Quality Assurance Initiative ("FMQAI") study as evidence of the lack of medical necessity, but these quality reviews were not clinical medical necessity reviews relevant to assessing whether Medicare overpayments had occurred. *See* Ex. 7, Rousis Dep., Oct. 31, 2012, at 62:1-63:13; Ex. 8, Rousis Dep., Feb. 20, 2013, at 219:7-12; Ex. 9, Lewis Dep., Nov. 1, 2012, at 197:25-198:10. Relator's assertion is wrong that "[a]n expert is not required to demonstrate that claims are

---

[7] Halifax Hospital, not Halifax Staffing, is listed as the party to these agreements. *Id.*

false . . . ." Relator's Opp., at 10.[8] Relator's own witness, Pat Aramayo, agreed that a quality review, alone, would not be sufficient to establish a "known overpayment." Halifax MSJ Ex. 24 (Dkt. 292-5), Aramayo Dep., at 151:14-152:2.

Relator points to 212 individual claims identified in her Complaint that she asserts did "not meet medical necessity," but her expert Ms. Schmor only reviewed a non-random sample of 33 claims and did not employ a physician's medical judgment for the clinical review. This limited review cannot create a genuine dispute of material fact as to either these 212 alleged false claims or any unidentified larger pool of claims. *See, e.g.*, Ex. 10, Expert Report of Matthew G. Mercurio, Ph.D., at 3-4, and 6. Ms. Schmor admitted that a non-random sample is not suitable for extrapolation to a larger universe. Ex. 11, Schmor Dep., at 72:7-73:4. *See* Ex. 12, Lewis Dep., Mar. 19, 2013, at 299:1-302:2. And Relator's failure to have a qualified expert perform a retrospective clinical review in support of her allegations leaves her with no evidence that the claims were false.

### IV. RELATOR HAS TAKEN NO DISCOVERY TO FIND EVIDENCE SUPPORTING HER NON-INTERVENED STARK LAW ALLEGATIONS

Summary judgment for Halifax is justified because Relator has taken no discovery to obtain evidence supporting her non-intervened Stark Law allegations against the Psychiatrists. Where no evidence is produced by the moving party, summary judgment is proper. *Tana v. Dantanna's*, 611 F.3d 767, 783 (11th Cir. 2010) (granting summary judgment where plaintiff

---

[8] 42 U.S.C. § 1320c-5(a) provides, in full, that "any health care practitioner and any other person (including a hospital or other health care facility, organization, or agency) who provides health care services" to assure that services or items ordered "will be supported by evidence of medical necessity and quality *in such form and fashion and at such time as may reasonably be required by a reviewing quality improvement organization in the exercise of its duties and responsibilities*." 42 U.S.C. § 1320c-5(a) (emphasis added).

"fails to present any material evidence."); *Mann v. Taser Int'l., Inc.*, 588 F.3d 1291, 1301 (11th Cir. 2009) (same). Summary judgment is appropriate where "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Id.* at 1303. Relator offers nothing but inaccurate legal arguments and therefore does meet her burden to present a genuine dispute of material fact.

A.   Relator Has Presented No Evidence To Establish Her Stark Law Allegations

Halifax's undisputed evidence shows the services and medical directorship contracts satisfy the Stark Law *Bona Fide* Employment Exception (42 U.S.C. § 1395nn(e)(2)). In the alternative, even if this Court holds the Psychiatrists are not employees of Halifax, these arrangements meet the personal services exception (42 U.S.C. §1395nn(e)(3)). Relator has offered no contrary evidence. *See* Halifax Mtn. for S.J. (Dkt. 292), at 27-33. Lacking evidence, Relator spins out of whole cloth a tale about alleged payments that resulted in improper compensation through facility fees. Relator's Opp., at 31-32 (citing *U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394 (4th Cir. 2012)). Regardless of whether there were facility fee referrals, the arrangements meet the *Bona Fide* Employment Exception or, alternatively, the Personal Services Exception.

Relator adds the AKS-based "one purpose test" as purported proof Halifax violated the Stark Law. *See, e.g.*, Relator's Opp., at 29. AKS arguments regarding an entity's intent are not relevant to a Stark Law analysis. If the *Bona Fide* Employment Exception or Personal Services Exception is satisfied, employed or contracted physicians may make referrals to their employer or contracted hospital, regardless of the party's intent. The Stark Law only prohibits the billing of certain Designated Health Services ("DHS") referred by a physician

in a financial relationship when a Stark Law exception does not apply. Relator has offered no evidence Halifax improperly billed for any DHS by the Psychiatrists or Medical Directors or that a Stark Law exception does not apply. As such, her Stark Law claims must fail.

        B.    <u>Relator's Objection To The Three Psychiatry Declarations Is Meritless And Procedurally Improper</u>

Relator's attempt to discredit the declarations of Drs. Caliendo, Dr. Moore, and Mr. Chuck Flavio in a Motion to Strike (Dkt. 311) is meritless and procedurally improper. Relator's Opp., at 15 n.4.[9] Halifax incorporates by reference its Opp. to Relator's Mtn. to Strike and Objection to the Declarations of Flavio, Caliendo, and Moore (Dkt. 334).

## V. CONCLUSION

For the foregoing reasons, Halifax respectfully requests that its Motion for Summary Judgment be granted in full.

| | |
|---|---|
| Dated: July 22, 2013 | Respectfully submitted, |
| T. Reed Stephens (admitted *pro hac vice*) | s/ Amandeep S. Sidhu |
| David O. Crump (admitted *pro hac vice*) | Anthony N. Upshaw |
| Amy H. Kearbey (admitted *pro hac vice*) | Fla. Bar. No. 0861091 |
| Amandeep S. Sidhu (admitted *pro hac vice*) | MCDERMOTT WILL & EMERY LLP |
| Emre N. Ilter (admitted *pro hac vice*) | 333 Avenue of the Americas |
| Brandon H. Barnes (admitted *pro hac vice*) | Suite 4500 |
| MCDERMOTT WILL & EMERY LLP | Miami, FL 33131 |
| 500 North Capitol Street NW | Tel: (305) 358-3500 |
| Washington, DC 20001 | Fax: (305) 347-6500 |
| Tel: (202) 756-8000 | Email: aupshaw@mwe.com |
| Fax: (202) 756-8087 | |
| Email: trstephens@mwe.com | |

*Counsel to Defendants Halifax Hospital Medical Center and Halifax Staffing, Inc.*

---

[9] Relator's Motion to Strike (Dkt. 311) is procedurally improper method for challenging a declaration filed in support of a motion for summary judgment where the motion serves to circumvent the page limits set by this Court. *See Judson v. Allstate Life Ins. Co.*, No. 3:06-cv-17-J-33HTS, 2007 WL 45674, at *1-2 (M.D. Fla. Jan. 5, 2007) ("A motion to strike is not the proper method for challenging affidavits.").

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Middle District of Florida using the CM/ECF system on July 22, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Amandeep S. Sidhu
Amandeep S. Sidhu
