IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, and ) <br> ELIN BAKLID-KUNZ, Relator ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> HALIFAX HOSPITAL MEDICAL CENTER, ) <br> et ano., ) <br> ) <br> Defendants ) <br> ) | CASE NO.: 6:09-CV-1002-ORL-31TBS <br><br> JUDGE GREGORY A. PRESNELL <br><br> [FALSE CLAIMS ACT – QUI TAM] |

## HALIFAX'S REPLY IN SUPPORT OF SUMMARY JUDGMENT[1]
### (on U.S. Claims – Oncology and Neurosurgery Employment Contracts)

The United States ("U.S.") sues Halifax under the False Claims Act ("FCA") based on allegations it submitted claims to Medicare knowing that its compensation arrangements with employed oncologists and neurosurgeons did not comply with the Stark Law. Both parties have moved for summary judgment (D.E. 272, 277, 310 & 313) (the U.S., on oncology only). After considerable briefing, what this Court has before it to decide is now clearly identified:

(A) With respect to the <u>productivity bonus provision of the oncology contracts</u>, the Court must decide whether there is any material dispute as to:

(1) whether the bonus complied with Stark, i.e., whether the bona fide employment or indirect exception applies (bonus for personally performed services), or if not, whether there were Stark-prohibited referrals; if so,

(2) whether Halifax acted knowingly.

(B) With respect to the <u>compensation provisions of the neurosurgery contracts</u>, the Court must decide whether there is any material dispute as to:

(1) whether compensation comported with Stark, i.e., whether the bona fide employment or indirect exception applies (fair market value and commercial reasonableness), or if not, whether there were Stark-prohibited referrals; if so,

(2) whether Halifax acted knowingly.

As set forth below, each question can be decided as a matter of law – in favor of Halifax.

---

[1] The United States attached a summary of disputed facts in a 15-page Addendum to its response (D.E. 310). Because the Addendum exceeded the page limits, the Court may choose to disregard it. However, in the event the Court wishes to consider it, Halifax has responded in Addendum A to this reply.

## A. Oncology Contract Claims

1. **The Stark Law Exceptions Apply as a Matter of Law.**

<u>Employment Exception Applies</u>: The Stark employee exception adopts the IRS definition to identify the "employer." 42 C.F.R. § 411.351. The guidance cited by the U.S. does not suggest otherwise.[2] Whether Halifax meets the IRS definition is a purely legal question; it is undisputed that Halifax Hospital (not affiliate Halifax Staffing) controls all aspects of the physicians' employment. General Counsel and outside counsel told Halifax that the Stark employee exception applied. Davidson Dep. at 133-79, 181-213;[3] McDermott Memo 2/9/09 at 1-4 (Ex. 1). The best the U.S. can do to try to present a triable issue is refer to a presentation made by Halifax's compliance director; but the presentation did not provide legal advice, and Davidson testified that he would not have approved the statement in the presentation. Davidson Dep. at 215:20-25. Thus, the employee exception applies.

<u>Incentive Complied with Stark</u>: The U.S. persists in summarizing the key Stark Law requirements, in their own words, instead of quoting the actual words of statutes, and in doing so misstates the law.[4] The employee exception permits "a productivity bonus <u>based on</u> services performed personally by the physician." 42 C.F.R. § 411.357(c)(4) (emphasis added). The plain language of the employee exception *excepts* from the value-or-volume requirement productivity bonus payments based on personally performed services. 42 C.F.R § 411.352(c)(2)(ii); 42 U.S.C. § 1395nn(e)(2). It is undisputed that the bonus pool, however funded, was divided among the oncologists and paid <u>based on</u> the oncologists' personally performed services only. U.S. MPSJ at 11, ¶42 (D.E. 272). The incentive thus complied with the plain language of the employee exception as a matter of law.

---

[2] As discussed in Halifax's reply to Relator's motion for summary judgment, which is incorporated here.
[3] The deposition excerpts cited herein are attached as Composite Exhibit 7 in alphabetical order.
[4] As discussed in Halifax's opposition to the U.S.'s Motion for Partial Summary Judgment (D.E. 313).

The U.S. argues that Halifax's interpretation of the employee exception is unreasonable because the plain language of the exception does not distinguish whether the term "based on personally performed services" refers to the *composition* as opposed to the *distribution* of the incentive pool and because Halifax lacks legal support. However, the U.S. offers no support for its position either. Halifax's interpretation is no less reasonable, and is supported by an independent review by outside counsel. Where a statute or regulation is ambiguous and multiple interpretations are reasonable, there can be no false claim as a matter of law. *U.S. ex rel. Williams v. Renal Care Group, Inc.*, 696 F.3d 518, 530 (6th Cir. 2012).

The indirect exception was also satisfied. In order for an indirect relationship to exist, the total compensation *must* vary with the value-or-volume of services. HHS addressed the conflict between the definition of an indirect relationship, which includes a value-or-volume requirement, and the indirect exception itself, which prohibits compensation "<u>determined</u> in a manner that takes into account (directly or indirectly) the volume or value of any referrals" as follows:

> For purposes of determining whether an indirect compensation arrangement exists under the definition at § 411.354(c), the inquiry is whether the <u>aggregate</u> compensation to the referring physician reflects the volume or value of DHS referrals or other business generated by the referring physician... However, in determining whether these arrangements fit into the indirect compensation arrangements exception at § 411.357(p), which does not include an aggregate requirement, the relevant inquiry is whether <u>the individual payments</u> are fair market value not taking into account the volume or value of referrals or other business generated by the referring physician (and do not change after inception). ... <u>In short, the definition looks to the aggregate compensation (that is, compensation that combines each individual payment under the arrangement), whereas the exception looks at individual payments without aggregating them</u>.

72 Fed. Reg. 51012, 51029 (Sept. 12, 2007) (emphasis added). The U.S. wrongly focuses on the *aggregate* incentive pool, not the *individual* payments to the oncologists. The individual payments did not vary based on the value-or-volume of personal referrals; an oncologist seeing 30% of the patients would receive 30% of the bonus pool, even with *no* referrals.

3

Further, there is no evidence that the aggregate incentive in fact varied with value-or-volume of any referrals. In fact, the operating margin of a department can go up or down for many reasons unrelated to the value-or-volume of referrals. Rousis Dep. (2/19/13) at 446-48; Davidson Dep. at 160:10-12. The U.S. claims Halifax has the burden to prove compliance with a Stark exception. However, once Halifax shows that its incentive falls within the plain language of a Stark exception, the U.S. has the burden to prove that a claim is false, and the U.S. produced no evidence that the aggregate incentive in fact varied with the value-or-volume of referrals, much less the individual incentive bonuses actually paid. *U.S. v. McLaren Reg'l Med. Ctr.*, 202 F. Supp. 2d 671, 686 (E.D. Mich. 2002).

The U.S. cites HHS guidance discussing the value-or-volume requirement *inapplicable* to the Stark employee exception since the productivity bonus is expressly exempted from this requirement. Further, the HHS guidance on the definitions of set in advance and value-or-volume is ambiguous. Contrary to the United States claim, the employment and indirect exceptions do not include a "set in advance requirement." 42 C.F.R. §411.357(c)&(p). The U.S. suggests that all percentage compensation should be limited to a percentage of revenues directly resulting from the physician's services. However, HHS considered adopting such a rule, and rejected it. 73 Fed. Reg. 48433, 48711 (Aug. 19, 2008) (stating that Stark "does not require percentage-based formula used to determine physician compensation for personally performed services to be based on the revenues directly resulting from the physician's services <u>rather than based on some other factor</u>...") (emphasis added). HHS has adopted a "flexible" case-by-case approach. 72 Fed. Reg. 51012, 51030-31 (Sept. 5, 2007).

In a reply brief filed this evening on its motion for partial summary judgment on the oncology issue (D.E. 332, at p. 3), the U.S. raised a new argument referencing equally

ambiguous HHS guidance on group practices, interpreting it in a way that contradicts the language of the employee exception. The exception for group practices allows physicians in a group to get direct credit for their own "incident to" services through a productivity bonus. 42 CFR § 411.352(i)(1). The oncologists here did not get direct credit for their "incident to" services, and the guidance cited by the U.S. does not explain how a bonus pool for employees could be structured under the employee exception. As set forth above (at p. 2), the Stark statute explicitly allows a productivity bonus based on personally performed services, exempted from the value-or-volume requirement.

Finally, the U.S. claims Halifax did not comply with the employee and indirect exceptions because an unspecified portion of the oncologists' services were allegedly not in fact "personally performed." The U.S. does not dispute that the formula used to distribute and pay the incentive was based on the oncologists' personal services that were billed and paid, which meets the Stark requirement. U.S. MPSJ at 11, ¶42. Instead, the U.S. asserts that Halifax cannot comply with these Stark exceptions because it *suspects* (but cannot actually *prove*) that an undetermined portion of the oncologists' services were billed incorrectly. Nothing in the Stark Law or FCA supports the U.S. claim that Halifax's entire compensation arrangement with an employed physician does not comply with the Stark Law if one claim is improperly billed. And nothing supports The U.S.'s assertion that it can proceed based on allegations alone without proof that *any* claims were improperly billed.

Furthermore, the evidence cited by the U.S. is speculative, prejudicial and irrelevant; it is inadmissible and should not be considered. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (evidence inadmissible at trial may not be considered at summary judgment); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (same); *Lloyd v. Card*, 283 Fed.

5

Appx. 696, 701 (11th Cir. 2008) (conclusory and speculative statements inadmissible); *XL Ins. Am., Inc. v. Ortiz*, 673 F.Supp.2d 1331, 1343 (S.D. Fla. 2009) (same); Fed. R. Evid. 404(a), 403 & 401. The U.S. has not identified any specific claims, sought repayment of claims it paid or demonstrated how the allegations would impact the oncologists' compensation. The oncologists testified they billed for their own services, and the U.S. presented no evidence to the contrary. Decs. of Chew at ¶10, Deveras at ¶8, Durkin at ¶8, Favis at ¶8, Sorathia at ¶8 & Weiss at ¶8 (Comp. Ex. 6); Durkin Dep. at 222:1-5, 224:14-18; Sorathia Dep. at 181-183; Weiss Dep. at 217-19. The admissible evidence establishes compliance with Stark, as a matter of law.

2.     **There Is *No* Admissible Evidence of Any Alleged Referrals.**

The U.S. has the burden to prove that the neurosurgeons and oncologists made referrals in order to establish a FCA claim. 31 U.S.C. § 3731(d). Based on the definition of referral, only the medical record can establish if there is an order, request for services or care plan. 69 Fed. Reg. 16054, 16063. The U.S. conceded the medical records would verify who made the referral. Sandlin Dep. at 153:19-24. The U.S. never looked at or cited a single medical record to support its allegations, relying solely on claims forms and general testimony. The Stark Law does not prohibit claims for payment where there has been no referral. The relevant inquiry is whether a physician directs the patient *to* a covered entity. 66 Fed. Reg. 856, 873 (Jan. 4, 2001). This does not occur where a patient presents at an emergency room or self refers; these patients should not be included within the definition of "referral." *Id.*

This Court should not rely on the *Rogan* decision because the *Rogan* court misunderstood the regulatory guidance regarding inpatient claims forms and there was no testimony from a corporate representative or an expert on the claims forms. FCA claims have been dismissed as a matter of law where the U.S. fails to meet its burden to identify the amount of its alleged

damages. *U.S. ex rel. Hays v. Hoffman*, 325 F.3d 982, (8th Cir. 2003); *U.S. ex rel. Whitten v. Community Health Sys., Inc.*, Case No. CV202-189, 2009 WL 5214308, at *2 (S.D. Ga. July 1, 2009). Courts have also disallowed efforts to prove damages by statistical sampling when it is unreliable, as argued in Halifax's *Daubert* motion on Ian Dew (D.E. 298). *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 49 (D.D.C. 2008); *U.S. ex rel. Barron v. Deloitte & Touche, LLP*, Case No. SA-99-CA-1093, 2008 WL 7136869, at *2-4 (W.D. Tex. Sept. 26, 2008).

### 3. There is No Evidence that Halifax Acted Knowingly.

The undisputed facts establish that Halifax did not act knowingly. General Counsel Davidson approved the oncology incentive prior to implementation. Davidson Dep. at 133-79, 197-202, 282:15-283:2; Peburn Dep. at 73:6-84:11, 104:9-113:12; 201:22-202:2; Cason Dep. at 112:21-116. Halifax sought an opinion from outside counsel after concerns were raised in 2008. Outside counsel confirmed that Halifax's interpretation of Stark was reasonable. Davidson advised Halifax that it could rely on this opinion. Davidson Dep. at 181-213, 220:12-259:20, 296, 299-304; Pike Dep. (2/25/13) at 133:18-137:16; Pike Dep. (5/20/13) at 164-216:17, 232:12-236:9, 246:13-247:20 & 275-295:3; Memo (Ex. 1); 2009 emails (Exs. 2 & 3).

Courts have held that there is no knowledge as a matter of law where an FCA defendant relies on a reasonable interpretation of an ambiguous contract or regulation. *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *U.S. ex rel. Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1273-79 (M.D. Fla. 2008). The undisputed facts establish that Halifax relied on a reasonable interpretation of Stark – one made initially by General Counsel during the initial contract review process and again by outside counsel in an entirely independent

7

and detailed review.[5] The U.S. attacks the advice itself, asserting it was not correct, which is irrelevant to the issue of knowledge. *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996); *U.S. ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 768-69 (8th Cir. 2002). The issue is what Halifax knew at the time it submitted claims or made certifications. Davidson advised Halifax it was permissible to pay the incentives. Davidson Dep. at 133-79, 197-202, 242-259:20, 296, 299-304; 2009 emails (Exs. 2 & 3). Halifax relied on this advice in good faith, and the U.S. cites no evidence to the contrary. There is no evidence to create any factual dispute requiring resolution by a jury.

### B. Neurosurgery Contract Claims

**1. The Stark Law Exceptions Apply, as a Matter of Law.**

Irrespective of which of the Stark exceptions applies – for employees or indirect compensation - both require that compensation is FMV and commercially reasonable. The U.S.'s sole objection is that the compensation was not FMV, commercially reasonable or "based on personally performed services." U.S. Resp. at 19.

Halifax employees confirmed FMV and commercial reasonableness. Peburn Dep. at 38:12-39:8, 67:5-9, 73:6-84:11, 103:4-17 & 104:9-113:12; Lang Dep. 19:11-20:5; Cason Dep. 32:17-33:23. Halifax also provided expert opinions that compensation was both FMV and commercially reasonable. Kevin O'Brien (Ex. 4); Ronald Vance (Ex. 5). The compensation was commercially reasonable because, among other things, call coverage is required for the trauma center, there is a community need and the compensation is FMV. *See* O'Brien & Vance Report (Ex. 4&5); Peburn Dep. at 82:4-83:10, 103:12-17; 110:20-113:5, 118:2-8; 141:13-143:19.[6]

---

[5] Davidson's analysis was substantive, thorough and documented. Davidson Dep. at 133-79. Halifax executives relied on the contract review process. Cason Dep. at 112:21-116.

[6] Contrary to the U.S.'s claims, other physicians at Halifax are also paid for call coverage where the market so requires. Davidson Dep. at 277; U.S. Resp. Exhibit 35 (HAL-I 0139700-701).

The U.S. does not cite any admissible evidence to the contrary, relying solely on its own FMV expert, McNamara, whose testimony is inadmissible for the reasons cited in Halifax's *Daubert* motion (D.E. 299). McNamara refused to provide an FMV analysis based on productivity, and her testimony that she refused to consider the neurosurgeons' productivity is based on inadmissible, unsubstantiated allegations that cannot be considered on summary judgment. Fed. R. Evid. 702 & 703; *Royale Green*, 2009 WL 2208166, at *2; *Daubert*, 509 U.S. at 590; *Corwin*, 475 F.3d at 1249. McNamara erroneously calculated the payor mix, barring her FMV analysis comparing compensation to collections. O'Brien Dep. at 275:22-282:9; McNamara Dep. at 377:2-381:21.

McNamara's commercial reasonableness analysis is inadmissible because she used standards that are different from what is required by Stark, and that were contradicted by the U.S.'s own corporate representative. McNamara suggests it was unreasonable to pay the neurosurgeons more than it collected for their professional services, essentially comparing Halifax to a for-profit hospital. This is contrary to HHS guidance that says Halifax must be compared to similarly situated hospitals. 69 Fed. Reg. 16,054, 16,093 (Mar. 26, 2004) Halifax is a public hospital tasked with providing charity care. It is not only reasonable, but essential that Halifax pay fair market salaries to employed doctors despite a poor payor mix and charity care.

The U.S. asserts that the neurosurgeons' compensation did not comply with the employee and indirect exceptions based on unsubstantiated *allegations* that Drs. Khanna and Vinas inappropriately billed for services provided by others. First, the U.S. concedes the physicians were paid a salary and bonus composed of their personally performed services plus a car allowance. U.S. Resp. at 25 (D.E. 310). This is a permissible compensation structure, based on personally performed services billed and collected. The U.S. provides no support for its

attempt to collaterally attack the entire compensation arrangement based on allegations that some unidentified claims were billed incorrectly.

Finally, as noted above, the U.S. merely cites inadmissible, unsubstantiated allegations both irrelevant and prejudicial. The physicians testified that they billed for their own services. Decs. Vinas at ¶15, Khanna at ¶10 & Kuhn at ¶10 (Comp. Ex. 6); Vinas Dep. at 186-191; Khanna Dep. at 145-148. The U.S. presented no evidence to the contrary, and failed to identify any specific claims or seek refunds. The U.S. relies only on speculative and inadmissible statements of its FMV expert. For example, the U.S. asserts Dr. Vinas worked more than 24 hours a day based on *estimates* extrapolated from billing codes. U.S. Resp. at 22 (D.E. 310). The estimates are inaccurate, and the surgical schedules prove this claim is false. O'Brien Report at 16-18. Finally, the U.S. has not shown how these allegations would impact an FMV analysis or apply to Dr. Kuhn. O'Brien concluded that, even if you accept the allegations as true, the neurosurgeons were paid FMV, and the U.S. cites no evidence to the contrary. O'Brien Report at 12-20 (Ex. 4).

2.     **There Is *No* Admissible Evidence of Any Alleged Referrals.**

As noted above, based on the evidence, a jury cannot identify referrals with any certainty.

3.     **There is No Evidence that Halifax Acted Knowingly.**

The U.S. claims that Halifax acted knowingly because it only referred to survey data to determine FMV. However, the record shows Halifax considered many factors to confirm FMV and commercial reasonableness. Peburn Dep. at 73:6-84:11 & 104:9-113:12. Halifax had a permissible compensation structure and believed in good faith the compensation was reasonable. Davidson Dep. at 266:9-270:17; Peburn at 67:10-69; Cason Dep. at 22:5-24:10, 27:22-37:8. Thus, there is no evidence Halifax knowingly submitted false claims.

## Conclusion

According to its last, supplemental disclosure, the U.S. seeks up to $1.1 *billion* from Halifax for claim forfeitures, treble damages and penalties, for supposedly knowing miscertifications of Stark Law compliance on Medicare claim forms, all of them unquestionably submitted for otherwise properly performed services. But there is no evidence to create a triable issue of fact on any of the U.S. claims, which should now be dismissed, as a matter of law.

Dated: July 22, 2013

Respectfully submitted,

/s/ *Bruce J. Berman*
Bruce J. Berman
Fla. Bar No. 159280
Adam P. Schwartz
Fla. Bar No. 83178
Carlton Fields
100 SE Second Street, Suite 4200
Miami, FL 33131
Email: bberman@carltonfields.com
Email: aschwartz@carltonfields.com

*Co-Counsel to Defendants Halifax Medical Center and Halifax Staffing, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Middle District of Florida using the CM/ECF system on July 22, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Bruce J. Berman*
Bruce Berman