UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKLID-KUNZ, | § § § § | Civ. Act. No. 6:09-CV-1002-ORL-31GAP-TBS |
| Plaintiffs, | § § | |
| v. | § § | JUDGE Gregory A. Presnell |
| HALIFAX HOSP. MED. CTR, et al. | § § § | |
| Defendants. | § § § | |

**PLAINTIFF UNITED STATES OF AMERICA'S SUPPLEMENTAL
OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT BRIEF**

Pursuant to the Court's Orders of October 7 and 9, 2013 (Dkt Nos. 356 and 361), Plaintiff United States of America respectfully submits this supplement to its July 3, 2013 Opposition to defendants' Halifax Hospital Medical Center and Halifax Staffing, Inc.'s ("Halifax") Motion for Summary Judgment ("Halifax's MSJ") (Dkt No. 310). This supplement sets forth additional factual bases to reject Halifax's arguments that it is entitled to summary judgment with respect to some of the United States' claims based on the defense of advice of counsel.[1]

**LEGAL BACKGROUND**

As noted in the United States' initial opposition to Halifax's MSJ, a defense of advice of counsel requires a showing that: (1) the party asserting the defense fully disclosed all material facts relevant to the advice sought; and (2) the party relied in good faith on that advice. *United*

---

[1] Halifax's MSJ only asserts an advice of counsel defense to False Claim Act violations regarding contracts with medical oncologists. Because Halifax is not presently asserting an advice of advice of counsel with respect to violations of the Stark Law, the common law, or false claims stemming from its contracts with the neurosurgeons at issue in this matter, the United States only addresses the advice of counsel defense as it relates to the medical oncologists.

*States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011); *United States v. Miles*, 290 F.3d 1341, 1354 (11th Cir. 2002).  For reliance on advice of counsel to be in good faith, the opinion must be thorough and pertain directly to the issue being litigated.  *See LNC Invs., Inc. v. First Fid. Bank, N.A.*, 1997 U.S. Dist. LEXIS 12858, *78 (S.D.N.Y. Aug. 27, 1997).  In other words, competent legal advice must follow the analytical steps "normally considered to be necessary and proper in preparing an opinion." *Underwater Devices v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983), *overruled on other grounds by In re Seagate Tech.,* LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Legal opinions that are superficial and conclusory cannot provide the basis for good faith reliance.  *See, e.g.*, *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1259-1260 (Fed. Cir. 1997).  Oral advice, therefore, is generally not considered to be competent or complete.  *See, e.g.*, *American Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1531 (Fed. Cir. 1993).

## I.   HALIFAX CANNOT ASSERT A VALID ADVICE OF COUNSEL DEFENSE

From 2005 through 2008, Halifax's assertion of the defense of advice of counsel is based on the alleged actions of its general counsel in drafting and approving an amendment to the contracts between Halifax and each medical oncologist.  Beginning in 2009, Halifax bases its advice of counsel defense on a February 2009 memorandum authored by outside counsel analyzing the legality of the contracts pursuant to the Stark Law.  As set forth below, neither action contains the elements required to successfully assert an advice of counsel defense.

### A. Halifax Did Not Act In Good Faith In Relying On Advice Of Its General Counsel From 2005 Through 2008

The sole basis for Halifax's advice of counsel defense from 2005 through 2008 is a statement from Halifax's general counsel, David Davidson, that he "prepared and approved the proposed contract amendment, concluding that the oncology incentive complied with the Stark

2

Law because the bonus pool was divided up based solely on personally performed services."

Halifax's MSJ, at 21. When asked to identify the steps he took to reach this conclusion, Mr.

Davidson testified that he simply reviewed the bona fide employment exception, and undertook

no other analysis.

> Q. Other than the exception, did you look at anything else?
> A. I don't believe so.
> Q. Did you consult with anybody at Halifax regarding the language of the exception?
> A. Not in regards to the Stark Law.
> Q. Not in regards to the Stark Law. Did you look at any other materials that you gathered over the course of your legal career to determine whether this provision violated the Stark Law?
> A. I don't remember.
> Q. Did you talk to anybody, anyone from another law firm perhaps, regarding the provision you drafted?
> A. No, not when I was drafting it, no.
> Q. Did you seek an advisory opinion from CMS regarding the language in Deposition Exhibit 17?
> A. No.
> Q. Do you remember any other steps that you took to determine whether or not this complied with the Stark Law, Deposition Exhibit 17?
> A. No.
> Q. So the only thing you recall doing is looking at the bona fide employment exception to the Stark Law?
> A. Yes.
> Q. And based on your reading of that, you made a determination that what?
> A. That this complied with the Stark Law.
> Q. Did you memorialize your understanding anywhere?
> A. Not other than by crafting the amendment.
> Q. You didn't create a file showing the work that you'd done?
> A. No.

Davidson Depo. Tr. (attached as Ex. 1), at 160:17-161:24. *See also id.*, at 179:2-25.

Based on Mr. Davidson's testimony, Halifax's reliance on his action for its advice of

counsel defense is deficient for two reasons. First, he does not appear to have conveyed any

substantive advice to Halifax. Instead, Halifax is relying on his mere approval of the contractual

provision itself to suggest that Mr. Davidson provided legal advice. Secondly, even if this can be

construed as advice, it does not meet the good faith standard because it lacks any indicia of

3

reliability. Mr. Davidson did not reasonably examine the issue (if at all), did not memorialize his findings, and apparently did not even orally convey his analysis to Halifax. At most, it appears Mr. Davidson made a cursory determination that is neither explained nor supported. As such, it does not satisfy the standard for an advice of counsel defense and should be rejected as a basis for concluding that Halifax did not act with the requisite scienter to have violated the False Claims Act during this time period.

### B. Outside Counsel's 2009 Stark Law Analysis Does Not Provide The Basis For An Advice Of Counsel Defense

Halifax relied on the incomplete analysis of its general counsel until November 2008, when the relator questioned the legality of the medical oncology contracts. In response, and in contrast to the undocumented legal advice previously provided by Mr. Davidson, Halifax's associate general counsel drafted three memoranda (attached as Ex. 2) in November 2008 stating that the contract was "not permitted under the STARK regulations." Apparently unhappy with this result, Mr. Davidson contacted the law firm of McDermott, Will & Emery ("MWE") for assistance. After three months of "poking around" and "looking for grey area" (HAL-1 0692259 (attached as Ex.3)) to legitimize Halifax's contracts with the medical oncologists, MWE in February 2009 authored a seven page "Stark Law Analysis" (attached as Ex. 4) of the medical oncologists' contracts. This analysis did not conclude that Halifax's medical oncology contracts were legal, and MWE never provided any additional assurances to that effect. Therefore, Halifax cannot claim it relied in good faith on MWE's advice in deciding to pay the medical oncologists' bonuses in 2009.

Halifax incorrectly characterizes the MWE Stark Law Analysis as providing a legal opinion that the medical oncology contracts complied with the Stark Law. But, nowhere in the MWE Stark Law Analysis does it ever advise Halifax that the medical oncology agreements

comply with the Stark Law.  While the MWE Stark Law Analysis offered an argument under which the medical oncology contracts could qualify for a Stark Law exception, MWE specifically stated that "given the preamble language set forth above, we cannot provide any assurances that CMS or a court would more likely than not concur with that analysis." Ex. 4, at 7.  Thus, far from endorsing the medical oncologists' contracts, the opinion put Halifax on notice that it was "more likely than not" that a court would conclude that the contracts would not pass muster.  Halifax therefore cannot in good faith rely on the MWE Stark Law Analysis to advance an advice of counsel defense.

Perhaps recognizing the problem with its reliance on MWE's written analysis, Halifax also claims that MWE orally advised it that the medical oncology agreements did not violate the Stark Law.  As noted, however, oral opinions generally cannot support an advice of counsel defense.  *See, e.g.*, *American Med. Sys., Inc.*, 6 F.3d, at 1531.  More importantly, Halifax's claim that MWE orally endorsed the medical oncologists' contracts is belied by the evidentiary record.

Halifax has provided a declaration from Mr. Davidson referencing a conversation with MWE partners Daniel Melvin and Ira Coleman, in which one or both allegedly advised Halifax that "payment of the incentive bonus would be fine." Davidson Decl. (attached as Ex. 5), at ¶ 21.  In his deposition, however, Mr. Davidson described the conversation differently:

> Q. Did McDermott, Will & Emery ever tell you it was okay to pay the bonus?
> A. I think they agreed with my decision, my – yes, my – I think they agreed to – with my decision to pay it, or my desire to pay it.
> Q. On what are you basing that conclusion, that they agreed with your desire to pay the bonus?
> A. Because if they'd said no, I wouldn't have?
> Q. So if McDermott had told you that you could not pay the bonus, you would not have paid it?
> A. Correct.
> Q. So based on that, you're assuming that they told you it was okay to pay the bonus?
> A. I remember discussing it with them.  I remember discussing our desire to pay the bonus and satisfy our contractual obligations.

5

Ex. 1, at 251:6-252:6.

Mr. Davidson's declaration is further undermined by his admission in his deposition that after talking with Messrs. Coleman and Melvin he decided to change the medical oncology agreements and terminate future bonus payments based on the operating margin of the medical oncology program because "the enforcement risk was greater than I was comfortable with." *Id*., at 244:24-25.

Finally, Mr. Davidson's declaration is contradicted by the testimony of Messrs. Melvin and Coleman. Mr. Melvin testified that he had no recollection of providing any analysis beyond what was in the MWE Stark Law Analysis. Melvin Depo. Tr. (attached as Ex. 6), at 76:4-78:15. When asked specifically if he advised Halifax that the medical oncology agreements were legal, Mr. Melvin denied providing any such advice:

> Q. Did you ever tell Halifax that it was legal for Halifax to pay the bonus in calendar year 2009 for the medical oncologist work in fiscal year 2008?
> MR. STEPHENS: Objection as to form.
> A. No. I do not recall saying that.

Ex. 6, at 85:2-85:12. Similarly, Mr. Coleman stated multiple times during his deposition that he never provided any such advice to Mr. Davidson. For example, Mr. Coleman testified:

> Q. Did you offer any advice outside of the advice that's given in the memo at Exhibit 4 [MWE Stark Law Analysis]?
> A. No.
> Q. Did anyone else at McDermott give any advice outside of the advice that's given in the memo at Exhibit 4?
> A. I don't know.
> . . . .
> Q. (By Ms. Babu): Okay. Did you ever tell Halifax that the contingent bonus that's referred to in the last paragraph of the memo at Exhibit 4 was compliant with the Stark Law?
> A. No.

Coleman Depo. Tr. (Ex. 7), at 55:12-15; 56:3-7. *See also id.*, at 58:14-17.

6

At a minimum, therefore, there is conflicting testimony regarding the nature of the oral legal advice provided by the MWE lawyers to Halifax. The conflicting testimony draws into question Mr. Davidson's credibility, and determining the credibility of a witness is an issue squarely within the purview of the fact-finder and not appropriate for disposition on summary judgment. *Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir.2011). Instead, if anything, the fact that Messrs. Coleman and Melvin deny that they told Mr. Davidson that the agreements were legal supports the conclusion that Halifax lacked any good faith basis to pay the bonus in 2009 and, at a minimum, recklessly disregarded whether that payment violated the Stark Law.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in the United States' Opposition to Halifax's MSJ, the United States renews its request that the Court deny Halifax's MSJ in its entirety.

Respectfully submitted,

A. LEE BENTLEY, III  
Acting United States Attorney

STUART F. DELERY  
Assistant Attorney General

/s *Adam J. Schwartz*

RALPH E. HOPKINS  
Assistant United States Attorney  
400 W. Washington Street, Suite 300  
Orlando, FL 32801  
(407) 648-7562  
Fla. Bar # 0972436  
Email: ralph.hopkins@usdoj.gov

MICHAEL D. GRANSTON  
ADAM J. SCHWARTZ  
PATRICIA M. FITZGERALD  
KAVITHA J. BABU  
Attorneys, Civil Division  
United States Department of Justice  
P.O. Box 261, Ben Franklin Station  
Washington, DC 20044  
Telephone: (202) 514-6831  
Facsimile: (202) 514-0280  
Email: Adam.Schwartz2@usdoj.gov

Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2013, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which will send an electronic notice of the filing to all counsel of record.

/s *Adam J. Schwartz*
ADAM J. SCHWARTZ
Trial Attorney