**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, and ELIN BAKLID-KUNZ, Relator<br><br>    Plaintiffs<br><br>v.<br><br>HALIFAX HOSPITAL MEDICAL CENTER, et ano.,<br><br>    Defendants | CASE NO.: 6:09-CV-1002-ORL-31TBS<br><br>JUDGE GREGORY A. PRESNELL<br><br>[FALSE CLAIMS ACT – QUI TAM] |

## HALIFAX'S RESPONSE TO THE U.S.'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION

The U.S. asked to file a supplemental opposition to Halifax Hospital Medical Center's and Halifax Staffing, Inc.'s ("Halifax") motion for summary judgment because it claimed that the testimony of attorneys Daniel Melvin and Ira Coleman conflicts with the prior testimony of Halifax General Counsel, David Davidson. However, *none* of that testimony, including that cited in the U.S.'s supplement, conflicts with Mr. Davidson's testimony. Thus, Halifax is entitled to summary judgment.

### THERE IS NO DISPUTED ISSUE OF FACT AS TO HALIFAX'S GOOD FAITH DEFENSE

**1. Halifax's Good Faith Defense, Including Use and Advice of Counsel, Applies to Both the Oncologists' and Neurosurgeons' Contracts.**

In order to establish an FCA violation, the U.S. has the burden to prove that Halifax knowingly submitted false claims. 31 U.S.C § 3729(b). Contrary to the U.S.'s claim in footnote 1 of its supplement, and as this Court has expressly recognized (Tr. Hr'g on 7/23/13 at 29) (Comp. Ex. 1), Halifax has consistently asserted a good faith defense based on use or advice of counsel as to all claims premised on the oncologists' and neurosurgeons' contracts. The evidence as to this defense is undisputed.

1

**2.     The Undisputed Evidence Demonstrates Halifax's Good Faith Reliance on General Counsel Davidson's Advice From 2005 Through 2008.**

The U.S. asserts that Halifax cannot meet the requirements of a traditional advice of counsel defense because Mr. Davidson did not communicate or document his advice that the oncologists' and neurosurgeons' compensation complied with the law. The assertion is factually incorrect and mischaracterizes Halifax's defense.

Halifax's defense is a "good faith" defense as to the knowledge requirement under the FCA, which is different from a traditional advice-of-counsel defense (although the evidence would also establish the latter).[1] Courts have analyzed a lack of knowledge and good faith separately from the traditional elements of an advice-of-counsel defense. *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *U.S. ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 767-69 (8th Cir. 2002); *U.S. ex rel. Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1273-79 (M.D. Fla. 2008).

Mr. Davidson's advice is documented in the record. Mr. Davidson, a board certified health lawyer, drafted and approved the oncologists' and neurosurgeons' employment contracts, concluding that their compensation complied with exceptions to both Stark and Anti-kickback Statute ("AKS") for employees. Davidson Dep. at 52:13-76:20, 141-162:8, 266:11-281:7, 299:9-305 (Comp. Ex. 1). Mr. Davidson's advice was based on his review of the federal statutes and on his professional experience. *Id.* at 32-36, 141:15-162:8, 169:12-179:1, 299:9-305. Mr. Davidson and others explained the contract review process and that his advice was communicated and documented in the form of the contract itself and coversheet. Davidson Dep.

---

[1] This "good faith" defense applies equally to the U.S.'s common law claim for unjust enrichment, which requires the U.S. to prove defendants reasonably should not have expected payment under the circumstances, and payment by mistake, which is not applicable where there was a mistake of law as opposed to fact. *See United States ex rel. Roberts v. Aging Care Home Health, Inc. et al.*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007); *United States v. Medica Rents Co. Ltd.*, Case Nos. 03-11297, 06-10393, 07-10414, 2008 WL 3876307, at *2-5 (5th Cir. Aug. 19, 2008).

at 52:13-76:20, 141-162:8, 299:9-305; Cason Dep. at 26-27, 77-81, 114:6-116:25; Peburn 30(b)(6) Dep. at 14:23-15, 17:25-51, 53-69:20, 73-84:11, 109:7-113:12, 120:8-121 (Comp. Ex. 1). Halifax management relied on Mr. Davidson's advice in good faith. As evidenced by the testimony of Halifax Administrator Laura Cason, who developed the oncology incentive and sought Mr. Davidson's input, and was "stunned" by the Relator's and U.S.'s allegations that the contracts were improper:

> Q. And you said you were stunned to learn about it. Why were you stunned?
> A. **Because I had such certainty that we were doing something that was appropriate and proper and not subject to questions of the kind that had been raised.**
> Q. Well, you weren't involved in the process at all; correct? Other than creating the idea.
> A. Well, yes; that's right.
> Q. So if you had no basis for understanding what went into it, how would you be stunned at the result? …
> A. **Well, here's how it would have happened. If you knew that there were capable people in various fields of expertise, including attorneys and those in Compliance and those in Finance, who by virtue of established policy and process would have all been involved in such review, you might have, as I felt, completely confident that any final outcome of that work would be appropriate and proper and legal.**
> Q. Okay.
> A. And that's how.
> Q. So based on Mr. Lang's involvement, Mr. Peburn's involvement and Mr. Davidson's involvement?
> A. And whomever else would have been involved. I believe there were other signatures on those documents as well.
> Q. But based on the signatures of the people involved, you formulated the opinion that it seemed okay, and you were surprised when it was --
> A. Well, you're restating what I've just stated. I think -- I feel like I've answered your question.
> Q. And I appreciate that.
> A. I know it's not convincing to you; it's not maybe the way you would see it. But I think I've answered your question.
> Q. No. And your job today is not to convince me one way or another. Your job is to simply be truthful, and I have no reason to doubt that you have been truthful.
> A. And I have been.

Cason Dep. 11/20/12 at 114:6-116:25, 26-27, 77-81 (emphasis added) (Comp. Ex. 1). Simply put, Halifax acted in good faith, and the U.S. cites no evidence to the contrary.[2]

### 3. Halifax Relied in Good Faith on Advice of Outside Counsel and Davidson in 2009.

It is undisputed that Halifax sought an opinion from outside counsel at McDermott, Will & Emery, including attorneys Daniel Melvin and Ira Coleman, after concerns were raised about the oncology compensation in late 2008. November 2008 Email (Ex. 2). Several months later and after extensive legal and factual research, McDermott confirmed in a memo: (1) that "there is a reasonable argument that the Contingent Bonus qualifies for the Stark employment exception" (in reference to the oncologists) (Memo at 7 (Ex. 3)); and (2) that the oncologists would be considered employees of Halifax (equally applicable to the neurosurgeons). *Id*.; Davidson Dep. at 181:18-215:16, 220:12-259:20, 296, 299-305 (Comp. Ex 1). This was fully consistent with Mr. Davidson's prior advice to Halifax regarding the oncologists and neurosurgeons. Further, it is undisputed that Mr. Davidson advised Halifax that it could rely on the memo, and that Halifax relied on Mr. Davidson's advice. 2009 emails (Exs. 4 & 5); Davidson Dep. at 181-213, 220:12-259:20, 296, 299-304; Pike Dep. (2/25/13) at 133:18-137:16; Pike Dep. (5/20/13) at 164-216:17, 232:12-236:9, 246:13-247:20 & 275-295:3 (Comp. Ex. 1).

The U.S. asserts that Halifax cannot rely on this memo as part of a good faith defense because the memo also stated that "we cannot provide any assurances that CMS or a court would more likely than not concur with that analysis." Memo at 7 (Ex. 3). However, the issue is what Halifax knew at the time it submitted claims or made certifications. It is undisputed that Mr.

---

[2] The U.S. wants to discredit the Mr. Davidson's advice by examining it through deposition inquiry years after the fact and characterizing it as based upon an "incomplete analysis." But the good faith defense goes to the subjective state of mind of Halifax management, illustrated by the quoted Cason testimony, among others. There is no evidence that anyone in Halifax had reason to suspect that General Counsel's approval was anything but considered and well founded, and thus no evidence to establish the intent required to support the U.S.'s claims.

Davidson advised Halifax it was permissible to pay the incentives based on the memo because Mr. Davidson reaffirmed that his interpretation was reasonable. Davidson Dep. at 133-79, 197-202, 242-259:20, 296, 299:9-304; 2009 emails (Exs. 4 & 5). Halifax relied on this advice in good faith, and the U.S. cites no evidence to the contrary.

**4.      There is No Conflicting Testimony to Create Any Issue of Material Fact.**

The U.S. also asserts that Mr. Davidson's recollection of a conversation with attorneys Daniel Melvin and Ira Coleman about the memo conflicts with their testimony about the same conversation, creating an issue of fact. The U.S. selectively cites Messrs. Melvin's and Coleman's testimony. Their testimony in its entirety reveals that neither witness has *any* recollection of the conversation with Mr. Davidson well over four years ago; although Melvin testified he likely discussed the "implications" of paying the bonus with Halifax. Melvin Dep. at 86; *See also id*. at 17-26, 55-56, 76-87; Coleman Dep. at 16-28, 54:16-58 (Comp. Ex. 1). The absence of memory creates no conflict. *Dickey v. Baptist Mem'l Hosp.-N. MS*, 146 F.3d 262, 266 n.1 (5th Cir.1998). Moreover, Mr. Davidson's recollection was documented shortly after the conversation occurred. 2009 emails (Exs. 4 & 5). This is undisputed. Furthermore, it is undisputed that Mr. Davidson advised Halifax that it could rely on the McDermott memo, and Halifax relied on Mr. Davidson's advice. Davidson Dep. at 181-213, 220:12-259:20, 296; Pike Dep. (2/25/13) at 133:18-137:16; Pike Dep. (5/20/13) at 164-216:17, 232:12-236:9, 246:13-247:20 & 275-295:3 (Comp. Ex. 1); 2009 emails (Exs. 4 & 5). The testimony of Messrs. Melvin and Coleman does not contradict the documented advice that Mr. Davidson ultimately provided to Halifax, and upon which Halifax relied in good faith. Nor is it inconsistent with his testimony. Because the supplemental memorandum identifies no conflicting testimony, or indeed, any evidence giving rise to a disputed issue of fact, Halifax is entitled to summary judgment.

Dated: November 4, 2013            Respectfully submitted,

/s/ *Bruce J. Berman*
Bruce J. Berman
Fla. Bar No. 159280
Adam P. Schwartz
Fla. Bar No. 83178
100 SE Second Street, Suite 4200
Miami, FL 33131
Email: bberman@carltonfields.com
Email: aschwartz@carltonfields.com

*Co-Counsel to Defendants Halifax Medical Center and Halifax Staffing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Middle District of Florida using the CM/ECF system on November 4, 2013. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Bruce J. Berman*
Bruce Berman