## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively the "United States"), Halifax Hospital Medical Center and Halifax Staffing, Inc. (collectively "Halifax"), and Elin Baklid-Kunz ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Defendant Halifax Hospital is a special Taxing District organized under the laws of the State of Florida which owns and operates hospitals and medical facilities in Volusia County, Florida and surrounding counties.

B. On June 16, 2009, Relator filed a qui tam action in the United States District Court for the Middle District of Florida captioned *United States ex rel. Baklid-Kunz v. Halifax Hospital Medical Center and Halifax Staffing, Inc.*, Case 6:09-cv-01002-GAP-TBS (M.D. Fla.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). The United States intervened, in part, in the Civil Action on October 4, 2011, and filed the United States' Complaint in Intervention on November 4, 2011.

C. The United States contends that Halifax submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1, and as a result, has certain civil

1

claims against Halifax arising from the conduct described in the United States' Complaint in Intervention. That conduct is referred to below as the Covered Conduct.

D. This Settlement Agreement is neither an admission of liability by Halifax nor a concession by the United States that its claims are not well founded, except that Halifax admits that it violated the Stark Law as set forth in the November 13, 2013 Order of the United States District Court for the Middle District of Florida in the Civil Action (Dkt. No. 396).

E. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Halifax agrees to pay the United States the sum of eighty-five million dollars ($85 million), hereinafter "the Settlement Amount," no later than ten days from the Effective Date of this Agreement, pursuant to written instructions to be provided by the United States Department of Justice.

2. Conditioned upon the United States receiving the Settlement Amount from Halifax, the United States shall pay Relator by electronic funds transfer to Relator's counsel, Wilbanks & Bridges, LLP, pursuant to written instructions provided by Marlan Wilbanks, counsel for Relator, 24.5 percent of the Settlement Amount received from Halifax as soon as feasible after receipt of the payment. No amounts shall be due to the

2

Relator on any portion of the Settlement Amount until and unless a payment is actually received by the United States.

3. Conditioned upon Halifax's full payment of the Settlement Amount, and subject to the exceptions in Paragraph 6 below (concerning excluded claims), the United States releases Halifax, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, components and divisions (collectively, the Affiliated Companies); current or former owners; and officers, directors, agents, servants, and employees; and the successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the civil money penalty provisions of the Physician Self-Referral Law, 42 U.S.C. §§ 1395nn(g)(3) and (4); or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Conditioned upon Halifax's full payment of the Settlement Amount, and subject to the exceptions in Paragraph 6 below (concerning excluded claims), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Halifax, its Affiliated Companies; current or former owners; and officers, directors, agents, servants, and employees; and the successors and assigns of any of them from any claim the Relator has on behalf of the United States or herself, whether in law or equity or otherwise, arising out of the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, except with respect to all claims asserted by Relator in the Civil Action in which the United States did not intervene (except for those claims already dismissed by the Court or

3

otherwise abandoned by Relator in the Parties' Joint Pretrial Statement for the non-intervened claims, and any claims for any Relator's share and compensation for any other qui tam action filed by or on behalf of Relator now or in the future), Relator's claims against Halifax for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d), Relator's claims for retaliation pursuant to 31 U.S.C. § 3730(h), and Relator's pending Motion for Sanctions against Halifax in the Civil Action.

5. In consideration of the obligations of Halifax in this Agreement and the Corporate Integrity Agreement (CIA) entered into between OIG-HHS and Halifax, and conditioned upon Halifax's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Halifax under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 6 below (concerning excluded claims), and as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Halifax from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 6 below.

6. Notwithstanding the releases given in paragraphs 3, 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States and/or Relator are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals (including current or former directors, officers, employees, agents, or shareholders of Halifax) who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are indicted or charged, or who enter into a plea agreement, related to the Covered Conduct; and

    g. All claims asserted by Relator in the Civil Action in which the United States did not intervene (except for those claims already dismissed by the Court or otherwise abandoned by Relator in the Parties' Joint Pretrial Statement for the non-intervened claims, and any claims for any Relator's share and compensation for any other

qui tam action filed by or on behalf of Relator now or in the future), Relator's claims against Halifax for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d), Relator's claims for retaliation pursuant to 31 U.S.C. § 3730(h), and Relator's pending Motion for Sanctions against Halifax in the Civil Action.

7. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payments owed in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action, subject to the exceptions in Paragraph 6 above (concerning excluded claims).

8. Halifax waives and shall not assert any defenses Halifax may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the

characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Halifax fully and finally releases the United States, its agencies, officers, agents, employees, and servants, and Relator, her heirs, successors, attorneys, agents, and assigns, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Halifax has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, and Relator, her heirs, successors, attorneys, agents, and assigns, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer, related to the Covered Conduct; and Halifax agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

11. Halifax agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Halifax, its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Halifax's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Halifax makes to the United States pursuant to this Agreement and any payments that Halifax may make to Relator, including costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to:

   (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and

   (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 11.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Halifax.

    b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Halifax, and

Halifax shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Halifax or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    Treatment of Unallowable Costs Previously Submitted for Payment: Halifax further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Halifax or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Halifax agrees that the United States, at a minimum, shall be entitled to recoup from Halifax any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Halifax or any of its subsidiaries or affiliates on the effect of inclusion of

Unallowable Costs (as defined in this Paragraph) on Halifax or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Halifax's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

    12.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 3, 4, 5, and 9 above, and Paragraph 13 below.

    13.    Halifax agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

    14.    If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Halifax commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Halifax's debts, or seeking to adjudicate Halifax as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Halifax or for all or any substantial part of Halifax's assets, Halifax agrees as follows:

    a.    Halifax's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Halifax shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Halifax's obligations under this Agreement

10

may be avoided under 11 U.S.C. § 547; (ii) Halifax was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Halifax.

        b.     If Halifax's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Halifax for the claims that would otherwise be covered by the releases provided in Paragraphs 3, 4, and 5, above. Halifax agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Halifax shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Halifax shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 60 calendar days of written notification to Halifax that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on June 16, 2009; and (iii) the United States has a valid claim against Halifax in the amount of $343,198,915, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

  c. Halifax acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

15. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Motion for Dismissal with Prejudice of the United States' Complaint in Intervention in Civil Action pursuant to Rule 41(a)(1).

16. Except as set forth in Paragraphs 4 and 6(g) above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Halifax's successors, transferees, heirs, and assigns.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 3/10/14    BY: _____
Adam J. Schwartz
Patricia M. Fitzgerald
Kavitha J. Babu
Trial Attorneys
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: 3/10/14    BY: _____
Ralph E. Hopkins
Assistant United States Attorney
Middle District of Florida

13

DATED: 3/10/14      BY: /s/ Robert K. DeConti
                        Robert K. DeConti
                        Assistant Inspector General for Legal Affairs
                        Office of Counsel to the
                         Inspector General
                        Office of Inspector General
                        United States Department of
                         Health and Human Services

## HALIFAX

**Halifax Hospital Medical Center**

DATED: _____  BY: _____
                        T. Reed Stephens, Esq.
                        Anthony N. Upshaw, Esq.
                        McDermott Will and Emery LLP
                        Counsel for Halifax Hospital Medical Center
                         Halifax Staffing, Inc.,

DATED: _____  BY: _____
                        David J. Davidson
                        General Counsel, Halifax Hospital Medical Center

**Halifax Staffing, Inc.**

DATED: _____  BY: _____
                        T. Reed Stephens, Esq.
                        Anthony N. Upshaw, Esq.
                        McDermott Will and Emery LLP
                        Counsel for Halifax Hospital Medical Center
                         Halifax Staffing, Inc.,

DATED: _____      BY: _____
                    Robert K. DeConti
                    Assistant Inspector General for Legal Affairs
                    Office of Counsel to the
                    Inspector General
                    Office of Inspector General
                    United States Department of
                    Health and Human Services

### HALIFAX

Halifax Hospital Medical Center

DATED: 3/10/14     BY: _____
                    T. Reed Stephens, Esq.
                    Anthony N. Upshaw, Esq.
                    McDermott Will and Emery LLP
                    Counsel for Halifax Hospital Medical Center
                    Halifax Staffing, Inc.,

DATED: 3/10/14     BY: _____
                    David J. Davidson
                    General Counsel, Halifax Hospital Medical Center

Halifax Staffing, Inc.

DATED: 3/10/14     BY: _____
                    T. Reed Stephens, Esq.
                    Anthony N. Upshaw, Esq.
                    McDermott Will and Emery LLP
                    Counsel for Halifax Hospital Medical Center
                    Halifax Staffing, Inc.,

14

DATED: 3/10/14            BY: _____
                              Jeff Feasel
                              For Halifax Staffing, Inc.

### ELIN BAKLID-KUNZ

DATED: _____            BY: _____
                              Elin Baklid-Kunz


DATED: _____            BY: _____
                              Marlan Wilbanks, Esq.
                              Wilbanks & Bridges, LLP
                              Counsel for Elin Baklid-Kunz

15

DATED: _____  BY: _____
Jeff Feasel
For Halifax Staffing, Inc.

**ELIN BAKLID-KUNZ**

DATED: 3-10-14  BY: *Elin Baklid-Kunz*
Elin Baklid-Kunz

DATED: 3-10-14  BY: *[signature]*
Marlan Wilbanks, Esq.
Wilbanks & Bridges, LLP
Counsel for Elin Baklid-Kunz

15