# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ELIN BAKLID-KUNZ,**

                 **Relator,**

**v.**                                                   **Case No:   6:09-cv-1002-Orl-31TBS**

**HALIFAX HOSPITAL MEDICAL
CENTER,**

              **Defendant.**

_____

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 665) filed by the Defendant, Halifax Hospital Medical Center ("Halifax"), and the response in opposition (Doc. 665) filed by the Plaintiff, Elin Baklid-Kunz ("Baklid-Kunz" or the "Relator").

Halifax raises three issues in its motion:   (1) whether the Relator has provided sufficient evidence as to damages; (2) whether a failure to abide by certain Medicare "conditions of participation" can render Medicare claims "false" for purposes of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*; and whether some of the Relator's claims are barred by the statute of limitations.[1]

### I.      Background

The Relator filed the instant suit under seal on June 16, 2009, contending *inter alia* that Halifax regularly admitted Medicare patients whose admissions were not medically necessary.

---

[1] Although the motion is titled as one for summary judgment, the latter two issues raised by Halifax are more properly the subject of motions in limine, and the Court construes them as such.

The Relator alleged that, because hospitals are allowed to bill Medicare more for services performed on an inpatient basis than they are allowed to bill for the same services performed on an outpatient basis, such unnecessary admissions resulted in improperly inflated Medicare claims in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (henceforth, the "FCA").   The suit was unsealed on June 4, 2010.

## II.   Standards

### A.   Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.   Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.*   The party opposing a motion for summary

judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

B.   Motions in Limine

Broadly speaking, a motion in limine may be defined as a request, generally made before a trial has begun, "to exclude anticipated prejudicial evidence before it is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Although in limine rulings are not binding on a trial court and remain subject to reconsideration during the trial itself, *id.* at 41-42, motions in limine provide notice to the trial judge of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial, *Stewart v. Hooters of America, Inc.*, 2007 WL 1752873 (M.D.Fla. June 18, 2007). A pretrial motion in limine may also have the salutary effect of reducing the number of interruptions during the trial itself. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

While the list is not exhaustive, courts generally recognize that a motion in limine is proper where:

> (1) the trial court has directed that an evidentiary issue be resolved before trial; (2) the evidentiary material is highly prejudicial or inflammatory and would risk mistrial if not previously addressed by the trial court; (3) the evidentiary issue is significant and unresolved under the existing law; (4) the evidentiary issue involves a significant number of witnesses or substantial volume of material

> making it more economical to have the issue resolved in advance of
> the trial so as to save time and resources of all concerned; or (5) the
> party does not wish to object to the evidence in the presence of the
> jury and thereby preserves the issue for appellate review by
> obtaining an unfavorable ruling via a pretrial motion in limine.

75 Am. Jur. 2d Trial § 39.

Unless the evidence is clearly inadmissible on all possible grounds, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *See generally* 21 FED. PRAC. AND PROC. EVIDENCE § 5037.10 (2d ed.). A ruling in limine does not "relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987).

### C.    False Claims Act

The False Claims Act was enacted in 1863 as a means of combating frauds perpetrated by private contractors during the Civil War. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 781, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).[2] See *also Ragsdale v. Rubbermaid, Inc*., 193 F.3d 1235, 1237 n. 1 (11th Cir.1999) ("The purpose of the [FCA], then and now, is to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward.") (citation omitted); *and see United States ex rel. Williams v. NEC Corp*., 931 F.2d 1493, 1496–98 (11th Cir.1991) (tracing history of FCA).

The FCA permits private persons (called "relators") to file a form of civil action (known as *qui tam*) against, and recover damages on behalf of the United States from, any person who:

> (1) knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval; [or]

---

[2]See also *United States ex rel. Williams v. NEC Corp*., 931 F.2d 1493, 1496–98 (11th Cir.1991) (tracing history of Act).

> (2) knowingly makes, uses, or causes to be made or used, a false
> record or statement to get a false or fraudulent claim paid or
> approved by the Government.

31 U.S.C. § 3729(a)(1)-(2) (2003).

To prevail under the first of these two sections, a plaintiff must prove three things:   (1) a false or fraudulent claim (2) was presented, or caused to be presented, by the defendant to the United States for payment or approval (3) with knowledge that the claim was false.   *United States v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005).   When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the False Claims Act, for submission of those claims.   *McNutt ex rel. U.S. v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (holding that violation of Anti-Kickback Statute could form basis for qui tam action under FCA).   The violation of the regulations and the corresponding submission of claims for which payment is known by the claimant not to be owed make the claims false under 31 U.S.C. § 3729(a)(1).   *Id. See also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (stating that, in health care context, FCA liability does not arise from provider's disregard of Government regulations or failure to maintain proper internal policies unless those acts allow provider to knowingly ask Government to pay amounts it does not owe.)

To establish a claim under 31 U.S.C. §3729(a)(2), a plaintiff must demonstrate that

> (1) a "claim" was presented to the government by the defendant, or
> the defendant "caused" a third party to submit the "claim," (2) the
> claim was "false or fraudulent," (3) the defendant presented the
> claim knowing it was "false or fraudulent," and (4) the defendant
> made or used a false statement which the defendant knew to be
> false, and which was causally connected to the false claim.

*United States ex rel. Aakhus v. Dyncorp, Inc.*, 136 F.3d 676, 682-83 (10th Cir. 1998) (citing cases).

For purposes of the FCA, the terms "knowing" and "knowingly" mean that the person either had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information, or acted in reckless disregard of the truth or falsity of the information.   31 U.S.C. §3729(b)(1)(A).   However, proof of intent to defraud need not be shown.   31 U.S.C. §3729(b)(1)(B).   All essential elements of an FCA claim, including damages, must be proven by a preponderance of the evidence.   31 U.S.C. § 3731(d).

III.   **Analysis**

A.   Damages

As noted above, Medicare pays hospitals more for services that were provided on an inpatient basis than for the same services if they were provided on an outpatient basis.   Relator alleges that Halifax admitted thousands of patients whose admissions were not medically necessary and then billed Medicare, on an inpatient basis, for the services provided to those patients.[3]   If true, this resulted in claims that were inflated by the difference between what Medicare actually paid and what it would have paid if the services had been billed on an outpatient basis.

Anyone found to have violated the FCA is liable for a civil penalty "plus 3 times the amount of damages which the Government sustains because of the act of that person."   31 U.S.C. § 3729(a)(1).   The Relator contends that total amount of each inflated claim is the "damages" sustained by the Government; Halifax contends that the damages consist only of the amount by which any claims were inflated.

_____

[3] Halifax denies that any of the patients at issue were improperly admitted.

The Relator characterizes Halifax's argument on this point as one of setoff – *i.e.*, that Halifax is seeking to set off the amount that it could have properly billed against the amount it actually received, so as to reduce its liability – and characterizes its assertion at this late date as "an untimely affirmative defense." (Doc. 667 at 10). However, a true setoff arises from a transaction that is extrinsic to the plaintiff's cause of action, and is intended to avoid the situation where A is ordered to pay B even though B owes money to A. *See, e.g.*, *In re Smith*, 737 F.2d 1549, 1552 n. 8 (11th Cir. 1984). In this case, there are no such extrinsic transactions. Rather, the issue is simply the amount of harm allegedly suffered by the Government in each of the transactions put in issue by the Relator. There is no setoff here.[4]

The Relator also argues that Halifax has failed to produce any evidence that it could have billed Medicare, on an outpatient basis, for the services it actually billed on an inpatient basis, and therefore Halifax cannot raise this issue now. However, the burden of proof as to damages is on the Relator, not the Defendant. 31 U.S.C. §3731(d). Throughout this case, the Relator has never argued that Halifax failed to provide the services for which it submitted claims, or that the services provided were not medically necessary or otherwise should not have been billed to Medicare. The Relator's only argument on this point has been that the services should have been billed at the lower outpatient rate.

There is no set formula under the FCA for determining the government's actual damages. *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988). As a general rule, the measure of damages in this type of FCA case is the difference between what the government paid and the value of what it received. See, *e.g.*, *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1011 (5th Cir.

---

[4] As such, the Court does not address several arguments raised by the Relator – such as her argument that the amount of the claims should be tripled before subtracting any amount that could have been properly billed (Doc. 667 at 19) – that are based on the existence of a setoff.

1972) (stating that, in FCA cases involving an "overpricing for what was sold and delivered to the government," the damage sustained is "the difference between the reasonable cost of the goods sold and the price the government actually paid for the goods").   The Relator, however, points to FCA cases in which courts held that the full amount paid by the Government constituted damages, even though the defendant had provided some goods or services to the Government.

The cases relied upon by the Relator are distinguishable, however, in that they involve situations in which the Government would not have paid anything if the claimant had been entirely truthful.   *See, e.g.*, *United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003) (claimant was not eligible to bill Medicare for the physical therapy services provided because he was neither a doctor nor a physical therapist).   Here, even assuming the patients at issue should not have been admitted to the hospital, it is undisputed that Halifax could have legitimately billed Medicare for the services provided to them, so long as it did so at the outpatient rate.

Accordingly, the Court finds that, assuming Relator is able to prove that patients were improperly admitted, the proper measure of damages would be the difference between what Halifax billed Medicare for those claims and what Halifax could have billed on an outpatient basis.   As Relator has failed to produce evidence from which a reasonable jury could determine this amount, Halifax is entitled to summary judgment insofar as Relator is attempting to recover damages.

B.  Conditions of participation

Where a contractor participates in a certain government program in order to perform the services for which payments are eventually made—in this case, Medicare—courts are careful to distinguish between conditions of program participation and conditions of payment.   Conditions of participation, as well as a provider's certification that it has complied with those conditions, are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government

> program.   Conditions of payment are those which, if the
> government knew they were not being followed, might cause it to
> actually refuse payment.

*U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008)

(internal citations omitted).   Halifax argues that the Relator is improperly relying upon a violation

of a condition of participation – specifically, a requirement that patients not be admitted without a

physician's order[5] – to establish the falsity of some of the Medicare claims at issue here.[6]

Furthermore, Halifax argues that the failure to abide by any condition of participation is not even

relevant to the issue of a claim's falsity.

   The Relator analogizes claims involving a failure to abide by a condition of participation to

those cases in which someone who is ineligible to participate in a government program submits

claims to that program.   In the latter case, the ineligible claimant's claims are false claims for

purposes of the FCA.   *See McNutt ex rel. U.S. v. Haleyville Medical Supplies, Inc.*, 423 F.3d

1256, 1259 (11th Cir. 2005) (stating that "When a violator of government regulations is ineligible

to participate in a government program and that violator persists in presenting claims for payment

that the violator knows the government does not owe, that violator is liable, under the [FCA], for

its submission of those false claims".).   However, Relator's analogy fails, because an isolated

failure to abide by a condition of participation does not necessarily render a claimant ineligible to

participate in the Medicare program.   Furthermore, although the Relator cites numerous cases in

---

   [5] More specifically, 42 C.F.R. §482.24 sets forth numerous requirements for a
participating hospital's medical records service, including a requirement that the records "contain
enough information to justify admission."

   [6] Halifax also asserted that Relator was relying on the alleged violation of a different
Medicare condition of participation – an obligation to participate in "utilization review" – to
establish falsity, but the Relator denies that the falsity of any of the claims at issue is premised on
a lack of utilization review.

this portion of her brief, she has cited none in which a court has held that the absence of an admission order rendered false an otherwise valid Medicare claim.   The Relator also offers no argument as to why Medicare would refuse to pay an otherwise valid claim if it knew that the patient's medical record did not contain an admission order (or, along the same lines, an argument that the government would be damaged by paying an otherwise valid claim in the absence of such an order).

Subject to re-examination at trial, the Court concludes that Relator will not be permitted to argue that a claim is false solely on the basis of a lack of an admission order, or to present evidence in support of such an argument.[7]

### C.  Statute of Limitations

The FCA provides that no civil enforcement action may be brought more than six years after the date of the violation at issue.   31 U.S.C. 3731(d)(1).[8]   The Relator filed the instant suit on June 16, 2009, meaning that the statute of limitations, if applicable, would bar claims prior to June 16, 2003.

The Relator seeks to introduce evidence of false claims dating back to 2002.    Halifax did not assert a statute of limitations defense in its pleading.[9]   Rather, Halifax raised the issue for the first time in its proposed jury charge, submitted less than a month before trial.

---

[7] The Court reserves ruling until trial on the issue of whether Halifax's alleged failures in regard to utilization review may be relevant to the issue of knowledge under the FCA.

[8] The FCA also contains a tolling provision that can extend the cutoff date for up to an additional four years, but the Relator does not argue that the tolling provision applies in this case.

[9] In its answer, which was filed on June 20, 2011, Halifax did reserve the right to assert additional affirmative defenses.   (Doc. 47 at 21).   However, Halifax never attempted to amend its answer to add any such defenses.

According to Halifax, the Relator's pleadings never identified any allegedly false claims that occurred prior to 2007, and thus those pleadings were not sufficient to put it on notice that the statute of limitations might be at issue.   Halifax contends that the first time it received such notice was on October 16, 2013, when the Relator sought leave to amend the expert report of Jessica Schmor and to identify a statistical expert, Douglas Steinley.   According to Halifax, the reports from Schmor and Steinley -- which accompanied Relator's motion -- were the first to identify "thousands of new false claims dating back to 2002" and were the first "notice of these specific claims being part of Relator's claims".   (Doc. 665 at 23).   Accordingly, Halifax seeks to exclude all claims occurring more than six years before October 16, 2013 – *i.e.*, all claims earlier than October 16, 2007.

Halifax's assertion does not hold water.   While the Relator may not have identified, in her pleadings, any specific claims that occurred prior to 2007, she did spell out her theory -- that Halifax had improperly admitted Medicare patients, resulting in improperly inflated Medicare claims – and asserted that this had been going on "since at least 2000".   For example, Relator alleged in her initial complaint that "Defendant Halifax has unlawfully billed government payors for inpatient admissions which do not meet medical necessity criteria and has failed to disclose or return known overpayments resulting from such unlawful admissions."   (Doc. 1 at 23). Furthermore, Relator alleged in the same document that "Defendant has illegally and consistently admitted patients without establishing medical necessity since at least 2000 through the present date."   (Doc. 1 at 37).   Halifax cannot credibly assert that these allegations were not sufficient to put it on notice that claims predating 2007 were at issue.[10]

---

[10] This conclusion is reinforced by the fact that the parties engaged in a – to put it mildly – lengthy and contentious discovery dispute over the production of Halifax medical records dating back to 2002.   Despite the vigor with which the issue was litigated, the record is devoid of any

Beyond the lack of justification for the failure to raise it earlier, the nature of the evidence here precludes application of the statute of limitations at the eleventh hour.   Relator's statistical expert, Steinley, has calculated the number of false claims and their value based on a random sample of a universe constituting tens of thousands of relevant claims from 2002 to 2013. Steinley contends, and the Court agrees, that altering the size of that pool by simply removing all of the claims paid before June 16, 2003 would invalidate his calculations and require yet another do-over.   There is no time for that.   Accordingly, Halifax will not be permitted to assert a statute of limitations defense at trial.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 1, 2014.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

assertion by Halifax that a significant portion of the records at issue – *i.e.*, those from 2002-2006 – were not relevant because they were time-barred.

Moreover, even if one were to accept as true Halifax's assertion that it was first put on notice of the applicability of the statute of limitations by Relator's October 2013 motion to amend, Halifax offers no explanation for its failure to actually raise the defense until June 2014.